**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| NORTHEAST CONTROLS, INC.,<br>3 Enterprise Avenue<br>Clifton Park<br>New York, NY 12065<br><br>ST. PAUL MERCURY<br>INSURANCE COMPANY<br>385 Washington Street<br>St. Paul, MN 55102<br><br>Plaintiffs,<br><br>v.<br><br>FISHER CONTROLS INTERNATIONAL, LLC<br>205 S. Center Street<br>Marshalltown, Iowa 50158<br><br>Defendant. | **NO. 06-412**<br><br>**ANSWER TO AMENDED COMPLAINT and COUNTERCLAIM**<br><br>**JURY TRIAL DEMANDED** |

Defendant Fisher Controls International, LLC ("Fisher"), by and through its attorneys of record, answers plaintiffs' First Amended Complaint and asserts affirmative defenses as set forth below. Each allegation not specifically admitted shall be deemed denied:

**INTRODUCTION**

1. Responding to paragraph 1 of the Complaint, Fisher admits that this is a contractual indemnification action; admits that the actions identified were filed; and admits that the action filed by Great American Assurance Company was consolidated with actions filed by Motiva Enterprises, LLC and Praxair, Inc. Responding further, Fisher denies that it was

obligated to defend and/or indemnify Northeast Controls for its own negligence in any of those actions.

**PARTIES**

2. Fisher lacks knowledge or information sufficient to form a belief as to the allegations set forth in paragraph 2 of the Complaint and therefore denies the same.

3. Fisher lacks knowledge or information sufficient to form a belief as to the allegations set forth in paragraph 3 of the Complaint and therefore denies the same.

4. Admitted.

5. Admitted.

6. Admitted.

7. Fisher lacks knowledge or information sufficient to form a belief as to the allegations set forth in paragraph 7 of the Complaint and therefore denies the same.

**JURISDICTION AND VENUE**

8. Admitted.

9. Admitted.

**BACKGROUND RELEVANT TO THE CLAIM**

10. Answering paragraph 10 of the Complaint, Fisher admits that Northeast Controls, Inc. ("Northeast Controls") and Fisher entered into a Representative Agreement on or about January 1, 1998, but denies that the document attached as Exhibit "A" to the Complaint is the entire Representative Agreement. Responding further, Fisher states that the Representative Agreement speaks for itself.

11. Fisher admits that the Representative Agreement contains the passage set forth in paragraph 11 of the Complaint, but denies that the Representative Agreement contains the

emphasis added by plaintiffs. Responding further, Fisher states that plaintiffs have deleted language from the indemnity provision of the Representative Agreement and states that the Representative Agreement speaks for itself.

12. Admitted.

13. Admitted.

14. Admitted.

15. Responding to paragraph 15 of the Complaint, Fisher admits that Northeast Controls placed an order with Fisher for a control valve identified with the tag number "83HV0629." Fisher denies that Northeast Controls was acting "on behalf of Praxair." Responding further, Fisher states that Northeast Controls failed to place the order for that valve in accordance with specifications provided by Praxair to plaintiff. Northeast Controls' failure to do so breached its contract with Fisher and breached the duty of care owed by Northeast Controls to persons, including itself, who could foreseeably be injured by Northeast Controls' failure to place the order in accordance with the specifications provided by Praxair. Further, Northeast Controls' negligent performance of its obligations under the Representative Agreement caused the losses suffered by plaintiffs in the underlying actions.

16. Admitted.

17. Admitted.

18. Admitted.

19. Admitted.

20. Admitted.

21. Responding to paragraph 21 of the Complaint, Fisher admits that a fire occurred at the Delaware City Power Plant Repowering Project on or about May 20, 2000, but denies that the fire occurred "during re-powering of the ASU."

22. Admitted.

23. Responding to paragraph 23 of the Complaint, Fisher admits that, in the underlying actions, allegations were made that Praxair, Parsons Corporation ("Parsons"), and Motiva sustained property damage as a result of the May 20, 2000, fire. Responding further, Fisher states that, on information and belief, neither Praxair nor Parsons suffered property damage as a result of the fire that occurred on May 20, 2000, at the Delaware City Power Plant Repowering Project.

24. Fisher lacks knowledge or information sufficient to form a belief as to the allegations set forth in paragraph 24 of the Complaint and therefore denies the same.

25. Admitted.

26. Fisher admits that the Great American Complaint contains the passage set forth in paragraph 26 of the Complaint, but denies that the quoted passage constitutes the entirety of the Complaint. Responding further, Fisher states that Northeast Controls' characterization of the Great American Complaint is partial and misleading and that the Great American Complaint speaks for itself.

27. Denied. Responding further, Fisher states that Northeast Controls' characterization of the Great American Complaint is partial and misleading and that the Great American Complaint speaks for itself.

28. Fisher admits that the Great American Complaint "alleged that the defects, among other things, caused the fire and resulting damage," but states that Northeast Controls'

characterization of the Great American Complaint is partial and misleading and that the Great American Complaint speaks for itself.

29. Admitted.

30. Fisher admits that paragraph 43 of the Olsons' Complaint alleges defects in the Fisher valve and further alleges that those defects caused injuries to Ronald and Carol Olson, but states that Northeast Controls' characterization of the Olsons' Complaint is partial and misleading and that the Olsons' Complaint speaks for itself.

31. Denied.

32. Admitted.

33. Admitted.

34. Admitted.

35. Admitted.

36. Admitted.

37. Responding to paragraph 37 of the Complaint, Fisher states that the letter attached as Exhibit "J" speaks for itself and denies that the letter contains the emphasis added to the recitation of the letter in this paragraph.

38. Responding to paragraph 38 of the Complaint, Fisher admits that it would have been responsible for defending and indemnifying Northeast Controls on claims of a product defect, but states that all claims of product defect made in any and all of the Underlying Actions were based solely on Northeast Controls' negligent failure to ensure that the materials of construction for the valve at issue met the written specifications provided by Praxair.

39. Denied. Responding further, Fisher states that it fully defended the valve in the underlying actions; that it was not obligated to defend Northeast Controls for its negligence; and

that all of Northeast Controls' losses in the underlying actions were caused by Northeast Controls' breach of its contract and its negligent conduct in failing to provide Fisher with the specifications for the valve that Praxair had provided to Northeast Controls.

40. Responding to paragraph 40 of the Complaint, Fisher states that it lacks knowledge or information sufficient to form a belief as to whether "Rawle & Henderson LLP was initially retained to defend Northeast in any lawsuit filed related to this fire" and therefore denies the same. Fisher admits that Northeast Controls is represented in this matter by Marshall, Dennehey, Warner, Coleman & Goggin.

41. Denied. Responding further, Fisher states that the Representative Agreement speaks for itself.

42. Fisher admits that Great American and the Olsons both alleged the presence of defects in the Fisher valve, but states that Northeast Controls' characterization of those Complaints is partial and misleading and that those Complaints speak for themselves. Responding further, Fisher states that all allegations relating to the valve in the underlying actions focused solely on Northeast Controls' failure to place an order with Fisher for the valve that conformed with the specifications provided to Northeast Controls by Praxair, which failure constituted negligence on the part of Northeast Controls. Further, Fisher states that Great American voluntarily dismissed Fisher, but not Northeast Controls, from the Great American action. Fisher also states that the Olsons later agreed that there were no defects in the Fisher valve and therefore agreed to entry of judgment on behalf of Fisher in the Olson action, but did not agree to the dismissal of Northeast Controls from the Olson action.

43. Fisher admits that Praxair and Motiva both filed suits alleging that the Fisher valve was defective and that separate counsel appeared for Northeast Controls in the lawsuits

filed by those entities. Responding further, Fisher states that Northeast Controls' characterization of the Praxair and Motiva complaints is partial and misleading and that those Complaints speak for themselves. Fisher also states that the plaintiffs in the Praxair and Motiva actions alleged that Northeast Controls was negligent and that the evidence developed during the pendency of those actions confirmed that negligence.

44.   Admitted.

45.   Denied.

46.   Fisher admits that opinions of Dr. Robert. A. Mostello (Fisher's retained expert) are attached as Exhibit G to the Complaint. Those documents speak for themselves. Responding further, Fisher denies that Dr. Mostello's report "absolved Northeast from liability" and denies each and every other allegation set forth in paragraph 46 of the Complaint.

47.   Denied.

48.   Denied.

49.   Denied.

50.   Fisher lacks knowledge or information sufficient to form a belief as to the allegations set forth in paragraph 50 of the Complaint and therefore denies the same.

51.   Fisher lacks knowledge or information sufficient to form a belief as to the allegations set forth in paragraph 51 of the Complaint and therefore denies the same.

52.   Denied. Responding further, Fisher states that, based on documents obtained from plaintiffs, Northeast Controls entered into a settlement agreement with Great American because Great American had retained experts who had formed the conclusion that the fire at issue in the underlying actions was caused by Northeast Controls' negligence.

53. Fisher lacks knowledge or information sufficient to form a belief as to the allegations set forth in paragraph 53 of the Complaint and therefore denies the same.

54. Fisher lacks knowledge or information sufficient to form a belief as to the allegations set forth in paragraph 54 of the Complaint and therefore denies the same.

55. Denied.

56. Fisher lacks knowledge or information sufficient to form a belief as to the allegations set forth in paragraph 56 of the Complaint and therefore denies the same. Responding further, Fisher denies that it breached its contractual obligations.

57. Fisher lacks knowledge or information sufficient to form a belief as to the allegations set forth in paragraph 57 of the Complaint and therefore denies the same.

58. Denied.

## AFFIRMATIVE DEFENSES

1. Plaintiffs' damages, if any, should be barred or reduced proportionally under the doctrines of contributory negligence and/or comparative fault.

2. The various causes of action alleged in the Complaint are barred in whole or in part by the statute of limitations.

3. The various causes of action alleged in the Complaint are barred in whole or in party by the principles of issue and/or claim preclusion.

4. Northeast Controls failed to mitigate its damages, if any.

5. Fisher is entitled to recoupment in the form of a reduction in the amount of Plaintiff's recovery in this lawsuit, if any, in the amount of attorneys fees and costs Fisher incurred in defending the underlying actions, which fees and costs were incurred by Fisher as a

direct result of Northeast Controls' breach of contract and negligence in transmitting Praxair's specifications to Fisher.

6. Fisher reserves the right to assert additional affirmative defenses disclosed through discovery or otherwise.

**COUNTERCLAIM**

By way of counterclaim against plaintiff Northeast Controls, Inc., defendant Fisher Controls International, LLC ("Fisher"), by and through its counsel of record, Riddell Williams P.S., alleges as follows:

**JURISDICTION**

1. This Court has jurisdiction over plaintiffs' claims under 28 U.S.C. § 1332(a).

2. This Court has jurisdiction over Fisher's counterclaim against plaintiff Northeast Controls under 28 U.S.C. § 1367(a) and Fed. R. Civ. P. 13(a).

**PARTIES**

3. Based on allegations in plaintiffs' Complaint, plaintiff Northeast Controls is a New York corporation with its principal place of business in Clifton Park, New York.

4. Fisher is a Delaware limited liability company with a principal place of business in Marshalltown, Iowa.

**FACTUAL ALLEGATIONS**

5. At all times material to Fisher's counterclaims, Northeast Controls and Fisher were parties to a Representative Agreement. A true and correct copy of the Representative Agreement is attached as Exhibit 1 to this Answer and Counterclaim.

6. At all times material to Fisher's counterclaims, Fisher and Praxair, Inc. ("Praxair") were parties to a Worldwide Procurement Agreement. A true and correct copy of the

Worldwide Procurement Agreement is attached as Exhibit 2 to this Answer and Counterclaim. The president of Northeast Controls signed the Worldwide Procurement Agreement on behalf of Northeast Controls.

7. The Worldwide Procurement Agreement called for Fisher to manufacture its products supplied to Praxair in accordance with Praxair's specifications for those products.

8. Under the terms of the Representative Agreement, and in accordance with the Worldwide Procurement Agreement, Northeast Controls placed orders with Fisher for control valves ordered by Praxair through Northeast Controls.

9. Under the terms of the Representative Agreement, Northeast Controls was required to maintain documentation relating to the services that it provided in placing orders with Fisher for control valves ordered by Praxair through Northeast Controls.

10. In 1996, Northeast Controls placed orders with Fisher for control valves for an air separation unit ("the ASU") that was being constructed by Praxair as part of the Delaware City Power Plant Repowering Project.

11. The ordering and purchase of the control valves identified in paragraph 6 of this Counterclaim were governed by the Worldwide Purchasing Agreement between Fisher and Praxair.

12. Northeast Controls' work in ordering the control valves identified in paragraph 10 of this Counterclaim was governed by the Representative Agreement between Fisher and Northeast Controls.

13. On or about June 3, 1996, Praxair provided Northeast Controls with specifications for a 12" Type A11 valve that was to be identified or "tagged" as valve 83HV0629. Valve 83HV0629 is referred to hereafter as "the Valve."

14. As part of the order process for the Valve, Praxair provided specifications to Northeast Controls for the Valve. A true and correct copy of Praxair's specifications for the Valve is attached as Exhibit 3 to this Answer and Counterclaim.

15. Bert Cappellini was Northeast Controls' designated representative for purposes of Praxair's ordering of the Valve. In his capacity as representative of Northeast Controls, Bert Cappellini initialed Praxair's specifications for the Valve as set forth in Exhibit 3.

16. The document attached as Exhibit 3 to this Answer and Counterclaim was the only document relating to the purchase and sale of the Valve exchanged between Praxair and Northeast Controls that contained the initials of Bert Cappellini, as representative for Northeast Controls, and any representative for Praxair.

17. The specifications provided by Praxair, and initialed by Bert Cappellini, called for the Valve to have, among others, the following specifications: a disk manufactured of Monel; a shaft made of Monel; Monel bearings; and a seal manufactured of Monel/PTFE.

18. Acting as Northeast Controls' representative, Bert Cappellini transmitted specifications to Fisher for the Valve.

19. The specifications transmitted by Northeast Controls to Fisher for the Valve did not match the specifications provided to Northeast Controls in the only document signed by representatives for both Praxair and Northeast Controls. Specifically, the specifications that Northeast Controls transmitted to Fisher called for a disk manufactured of Hastelloy C; a shaft manufactured of Inconel 718; bearings manufactured of TFE composite; and a seal manufactured of Tefzel.

20. Northeast Controls did not inform Praxair that Northeast Controls had provided Fisher with specifications for the Valve that differed from the specifications Praxair provided to Northeast Controls and Bert Cappellini accepted on behalf of Northeast Controls.

21. Before the fire at issue in this matter, Northeast Controls never informed Fisher that Praxair had never agreed to purchase a Valve manufactured in accordance with the specifications provided by Northeast Controls to Fisher in relation to the Valve at issue.

22. After Fisher received Northeast Controls' specifications for the Valve, a Fisher representative telephoned Bert Cappellini and recommended that the specification for the Valve seat be changed from Tefzel to Kel-F.

23. Northeast Controls agreed that Fisher should change the material for the Valve seat from Tefzel to Kel-F.

24. Northeast Controls did not obtain Praxair's approval for the change in the material for the Valve seat from Tefzel to Kel-F. Nor did Bert Cappellini ever obtain Praxair's approval to use Kel-F in the Valve seat.

25. Northeast Controls never informed Fisher that Praxair had requested that the Valve be manufactured using a Monel disk; a Monel shaft; Monel bearings; and a Monel/PTFE seat.

26. Northeast Controls never informed Praxair that Fisher had manufactured the Valve using materials different from those specified by Praxair to Northeast Controls.

27. Fisher manufactured the Valve in accordance with the specifications set forth in the communications between Northeast Controls and Fisher.

28. On May 20, 2000, an incident ("the Incident") occurred at the Delaware City Power Plant Repowering Project.

29. The Incident involved the Fisher Type A11 valve tagged "83HV0629."

30. Following the Incident, four lawsuits ("the Underlying Actions") were filed against Fisher Controls International, Inc.

31. In each of the Underlying Actions, the allegations against Fisher rested on the alleged failure of the Fisher Valve to comply with the specifications provided by Praxair to Northeast Controls.

32. In the Underlying Actions, none of the parties ever adduced any evidence showing or tending to show that the Fisher Valve was defective in design or manufacture.

33. In response to Northeast Controls' demand that Fisher defend and indemnify Northeast Controls in regard to the Underlying Actions, Fisher informed Northeast Controls that Fisher would defend Northeast Controls against any claim that the Valve was defective in design or manufacture.

34. Fisher further informed Northeast Controls that it (Fisher) would not defend Northeast Controls against Northeast Controls' own negligence.

35. In the Underlying Actions, Fisher defended the design and manufacturing of the Valve.

36. Fisher filed motions for summary judgment in all four of the Underlying Actions.

37. In the four Underlying Actions, Fisher's counsel drafted the motions for summary judgment identified in paragraph 36 of this Counterclaim.

38. In the Underlying Actions, Fisher's counsel provided drafts of Fisher's motions for summary judgment to counsel for Northeast Controls before filing those motions.

39. Northeast Controls did not file any motions for summary judgment in any of the Underlying Actions.

40. After Fisher filed its motion for summary judgment as to all claims asserted by Motiva, Motiva voluntarily dismissed all of its claims.

41. After Fisher filed its motion for summary judgment as to all claims asserted by Great American, Great American voluntarily dismissed all of its claims against Fisher.

42. Great American did not voluntarily dismiss its claims against Northeast Controls.

43. The state court granted Fisher's motion for summary judgment as to all claims asserted by Praxair against Fisher.

44. After Fisher filed its motions for summary judgment in the Olson action, all of the parties to that action, including Northeast Controls, agreed to Fisher's dismissal from the Olson action.

**COUNTERCLAIM**

**BREACH OF CONTRACT**

45. Fisher hereby incorporates the allegations set forth in paragraphs 1-44 of its Counterclaim as if fully set forth herein.

46. The claims against both Northeast Controls an Fisher in the Underlying Actions were the direct result of Northeast Controls' failure to convey to Fisher the specifications provided for the Valve by Praxair to Northeast Controls.

47. In failing to convey to Fisher the specifications provided for the Valve by Praxair, Northeast Controls breached the Representative Agreement.

48. Northeast Controls' breach of the Representative Agreement caused Fisher damages, including but not limited to the costs incurred in defending the Olson, Praxair, Motiva, and Great American actions.

49. In defending the Underlying Actions, Fisher incurred attorneys fees and costs in an amount to be proven at trial.

50. In defending the Underlying Actions, Fisher incurred expert fees in an amount to be proven at trial.

51. The attorneys fees and expert fees incurred by Fisher were reasonable.

52. Fisher is entitled to recoupment in the form of a reduction in the amount of Plaintiff's recovery in this lawsuit, if any, in the amount of the attorney fees, costs and expert fees incurred in defending the underlying action.

WHEREFORE, Fisher demands judgment in its favor, reducing the amount of Northeast Controls' recovery, if any, in the amount of the attorney fees, costs and expert fees incurred in defending the underlying action, together with all costs and expenses for defending this action and any other such relief as the Court may deem equitable and just.

                RIDDELL WILLIAMS P.S.

                /s/ Daniel J. Gunter
                Patrick D. McVey
                *Pro hac vice*
                Daniel J. Gunter
                *Pro hac vice*
                Riddell Williams P.S.
                1001 Fourth Avenue Plaza, Suite 4500
                Seattle, WA 98154
                (206) 624-3600 (Tel.)
                (206) 389-1700 (Fax)
                pmcvey@riddellwilliams.com
                dgunter@riddellwilliams.com

Date: April 16, 2007

**MARON, MARVEL, BRADLEY & ANDERSON P.A.**

/s/ Paul A. Bradley
Paul A. Bradley (DE Bar ID #2156)
1201 N. Market Street, Suite 900
P.O. Box 288
Wilmington, DE 19899
(302) 425-5177 (phone)
(302) 428-0180 (fax)
pab@maronmarvel.com
Attorneys for Defendant
Fisher Control International LLC

Date: April 16, 2007

**CERTIFICATE OF SERVICE**

I, Paul A. Bradley, do hereby certify that on this 16th day of April 2007, a copy of the foregoing Answer to Amended Complaint and Counterclaim was electronically served, via CM/ECF, upon all counsel of record.

/s/ Paul A. Bradley
Paul A. Bradley (DE Bar ID #2156)