IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NORTHEAST CONTROLS, INC.,<br>3 Enterprise Avenue<br>Clifton Park<br>New York, NY 12065<br><br>ST. PAUL MERCURY<br>INSURANCE COMPANY<br>385 Washington Street<br>St. Paul, MN 55102<br><br>               Plaintiffs,<br><br>v.<br><br>FISHER CONTROLS INTERNATIONAL, LLC<br>205 S. Center Street<br>Marshalltown, Iowa 50158<br><br>               Defendant. | C.A. No.: 06-412 SLR<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL DEPOSITIONS OF MICHAEL PETERS AND ALBERT CAPPELLINI** |

**TABLE OF CONTENTS**

I.    Introduction    3

II.    Nature and Stage of the Proceedings    3

    A.    Northeast Controls Made a Significant Error in Processing the Order for the Valve at Issue    3

    B.    The Four State Court Lawsuits    5

    C.    The Current Action    7

III.    Summary of Argument    7

IV.    Statement of Facts    8

| | | | |
|---|---|---|---|
| V. | Statement of Compliance with Local Rule 7.1.1 | | 10 |
| VI. | Argument and Authorities | | 10 |
| | A. | Plaintiffs' Refusal to Produce Mr. Cappellini Rests on a False Assertion and Is Legally Insufficient | 10 |
| | B. | Plaintiffs' Excuse for Not Producing Mr. Peters Is Both Irrelevant and Insufficient | 13 |
| | C. | Sanctions Should Be Awarded Against Plaintiffs for Their Refusal to Produce the Witnesses | 14 |
| VI. | Conclusion | | 15 |

**TABLE OF CITATIONS**

| | |
|---|---|
| Blankenship v. Hearst Corp., 519 F.2d 418 (9th Cir. 1975) | 10 |
| Deines v. Vermeer Manuf. Co., 133 F.R.D. 46 (D. Kan. 1990) | 12 |
| Frideres v. Schlitz, 150 F.R.D. 153 (S.D. Iowa 1993) | 10 |
| Grinnell Corp. v. Hackett, 70 F.R.D. 326 (D.R.I. 1976) | 10 |
| Investment Props. Int'l., Ltd. v. IOS, Ltd., 459 F.2d 705 (2d Cir. 1972) | 10 |
| In re McCorhill Pub., Inc., 91 B.R. 223 (Bankr. S.D.N.Y. 1988) | 10 |
| O'Donnell v. Richardson-Allen Corp., 34 F.R.D. 214 (E.D. N.Y. 1964) | 11 |
| Fed. R. Civ. P. 37(a)(4)(A) | 14 |
| Wright, Miller & Marcus, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 2037 (1994 ed.) | 12 |

## I. INTRODUCTION

This Motion arises out of plaintiffs' unwarranted refusal to produce two witnesses for deposition. As set out at greater length below, Fisher duly noted the depositions of Northeast Controls employees Michael Peters and Albert Cappellini and worked with plaintiff's counsel to schedule those depositions at a time and place convenient to the witnesses. Plaintiffs' counsel then abruptly changed course and informed Fisher that plaintiffs would <u>not</u> produce those witnesses for depositions. Plaintiffs have not provided an adequate reason for their position.

Fisher therefore respectfully requests that the Court enter an order (1) compelling plaintiffs to produce Messrs. Peters and Cappellini for deposition at a time and place of Fisher's choosing (within reason) and (2) ordering plaintiffs and/or plaintiffs' counsel to pay Fisher's costs incurred in bringing this Motion, including reasonable attorneys' fees.

In support of this request, Fisher alleges the following:

## II. NATURE AND STAGE OF THE PROCEEDINGS

### A. Northeast Controls Makes a Significant Error in Processing the Order for the Valve at Issue

As set out in Fisher's recently filed Motion to Amend Counterclaim and the accompanying Affidavit of Daniel J. Gunter, this case arises out of the negligence of plaintiff Northeast Controls, Inc.

In June 1998, acting as Fisher's outside sales representative, Northeast Controls processed an order from Praxair, Inc., for a 12″ valve ("the Valve") intended for use in high-pressure, high-temperature, high-purity oxygen service—conditions that create significant risks

of a catastrophic fire.[1] On May 20, 2000, the Valve was first opened on oxygen service. An explosion immediately occurred, centered almost squarely on the Valve.[2] The explosion seriously injured one man and caused property damage later alleged to be in the millions of dollars.

The investigation of the incident revealed that Northeast Controls had mishandled the ordering of the Valve.[3] The purchase order sent by Praxair to Northeast Controls referred to a specification sheet prepared by a Northeast Controls employee, Albert Cappellini, and initialed by him and a Praxair employee (Bhim Bhakoo).[4] That specification sheet called for the Valve to have a Hastelloy C body and Monel "trim" (i.e., components inside the valve exposed to oxygen flow).[5]

Inexplicably, though, when Northeast Controls transmitted to Fisher information for the order, Northeast Controls gave Fisher information showing that the Valve would be manufactured using significantly different—and less robust—materials of construction.[6] Northeast Controls has never offered a satisfactory explanation for this discrepancy. Northeast Controls' employee Albert Cappellini, who worked with Praxair in preparing the specification sheet, later prepared a document—the "Order history regarding 12" Fisher A11 valve that was

---

[1] Most of the documents filed in support of this Motion may be found as exhibits to the Affidavit of Daniel J. Gunter in Support of Fisher Controls International, LLC's Motion to Amend ("Gunter Aff."), Dkt. # 37-6. Documents attached to the Gunter Affidavit are Bates-numbered consecutively throughout with a prefix "FCI/MOA" and referred to herein as "FCI/MOA xxx." Additional documents are attached as exhibits to the Affidavit of Daniel J. Gunter in Support of Fisher Controls International, LLC's Motion to Compel Depositions ("2d Gunter Aff."). The documents attached to the Second Gunter Affidavit are Bates-numbered consecutively throughout with the prefix "FCI/MOC" and referred to herein as "FCI/MOC xxx."
[2] FCI/MOA 55–56.
[3] FCI/MOA 23–24.
[4] FCI/MOA 11–19.
[5] FCI/MOA 6.
[6] FCI/MOA 21–23.

supplied to Praxair"—that confirmed that "[the as-ordered] construction does not match what was on the spec sheet for the 12" valve dated 6/3/[98]. **Not sure why the difference . . . .**"[7] At deposition Mr. Cappellini testified that he "assume[d]" that he had discussed the Valve's as-ordered materials of construction with Praxair's representative Bhim Bhakoo and that Mr. Bhakoo had approved those materials of construction.[8] Mr. Bhakoo denied any such discussion.[9] Moreover, Mr. Cappellini could not explain <u>why</u> the order placed with Fisher differed from the specification sheet that Praxair had sent to Northeast Controls.[10] And **Mr. Cappellini confirmed that the specification sheet and the information conveyed by Northeast Controls to Fisher should have matched.**[11]

In short, Mr. Cappellini's testimony established that Northeast Controls had made a serious error in processing the order for the Valve.

### B.      The Four State Court Lawsuits

In April 2002 Mr. Olson filed an action in Delaware state court to recover for his serious burns, injuries, and other damages sustained as a result of the explosion; Motiva, Praxair, and Great American Assurance (the insurer of the project's general contractor) filed three separate actions ("the Underlying Actions") seeking to recover for damage to the DCPPRP and lost

---

[7] FCI/MOA 23.
[8] FCI/MOA 257E–257F (Deposition of Albert Cappellini ["Cappellini Dep."] at 228:21–229:11, 232:22–233:22).
[9] FCI/MOA 201–02 (Deposition of Bhim Bhakoo at 124:21–125:4).
[10] FCI/MOA 257C–257D.
[11] FCI/MOA 255 (Cappellini Dep. at 137:7–22) (emphasis added).

profits.[12] All four complaints referenced the discrepancy in the Valve's materials of constructions[13] resulting from Northeast Controls' negligent processing of the Valve order.

Fisher and Northeast Controls executed a Joint Defense Agreement and cooperated in the defense of the four Underlying Actions.[14] Fisher and its attorneys elected not to attack its own sales representative and thus deliberately chose not to develop evidence that would have highlighted Northeast Controls' negligence. In particular, Fisher's counsel did <u>not</u> question Mr. Cappellini at deposition.

As set out in Fisher's Motion to Amend, Fisher eventually moved for summary judgment on all claims brought by the three corporate plaintiffs—specifically, Motiva, Great American, and Praxair.[15] All three of those actions were eventually dismissed as to Fisher, without any payment by Fisher to any of the plaintiffs. After Great American agreed to dismiss its claims against Fisher, Northeast Controls negotiated with Great American to obtain dismissal of the <u>Great American</u> and <u>Praxair</u> actions against Northeast Controls.[16] As part of that settlement, Northeast Controls bought the silence of Great American's expert consultants, Becht Engineering, who were prepared to testify that the explosion was caused by the actions of Northeast Controls.[17]

Despite the evidence of the material deviations caused by Northeast Controls' negligence, Fisher developed significant evidence of negligence on the part of other entities involved with

---

[12] FCI/MOA 31–52, 112–19,
[13] See, e.g., FCI 32 ¶ 10; 34 ¶ 20.a; 36 ¶ 30; 41 ¶ 7; 44 ¶¶ 21–22; 48 ¶ 12; 50 ¶ 26; 115 ¶ 20; 116 ¶ 39; 117 ¶ 45.
[14] 2d Gunter Aff. ¶ 3.
[15] 2d Gunter Aff. ¶ 4.
[16] FCI/MOA 91.
[17] FCI/MOA 75, 82, 88.

the overall project. In light of that information, the expert retained by Mr. Olson offered the opinion that the fire was not caused by the deviations in the Valve's materials of construction but was instead caused by the impingement of particles on a carbon steel flange immediately upstream of the Valve.[18] This opinion effectively exonerated both Fisher and Northeast Controls *from direct liability to Mr. Olson.*

Fisher subsequently moved for summary judgment on all of the claims brought against it in the Olson action, including Northeast Controls' claims for contribution and indemnification in that action. All parties eventually agreed to entry of Fisher's motion, and the court granted Fisher's motions for summary judgment. Northeast Controls subsequently contributed $100,000 to the settlement of the Olson matter.[19]

### C.    The Current Action

After the dismissal of the Olson action, Northeast Controls and its insurer, St. Paul, brought this suit, in which they allege that the Representative Agreement between the parties obligated Fisher to defend and indemnify Northeast Controls. Fisher contends that Northeast Controls' own negligence caused its "Losses"—a term defined under the Representative Agreement as "all claims, demands, actions, losses, damages, liabilities, costs and expenses." Under the Representative Agreement, Fisher was *not* "obligated to protect, defend, indemnify or hold harmless [Northeast Controls] from and against any Losses arising from . . . [any] [n]egligent acts or omissions by [Northeast Controls]." Because Northeast Controls' Losses were caused by its negligence, Fisher had no obligation to defend or indemnify it against those Losses.

---

[18] FCI/MOA 100–111.
[19] FCI/MOA 169 ¶ 9.

Further, Fisher claims that Northeast Controls breached its contractual obligations to Fisher, thus exposing Fisher to its legal fees and expenses in the underlying actions.

### III.    SUMMARY OF ARGUMENT

To defend itself against plaintiffs' claims, as well as to prosecute its affirmative claim, Fisher needs to depose both Albert Cappellini (the Northeast Controls salesperson) and Michael Peters (president of Northeast Controls). Peters and Cappellini have knowledge regarding the ordering of the Valve as well as the standards that Northeast Controls should observe in processing orders as Fisher's independent sales representative.

As set out below, Fisher duly noted those depositions and worked with plaintiffs' counsel to schedule them at a time and place convenient to the witnesses. After several cooperative email exchanges in which no issue was raised about those depositions, plaintiffs' counsel suddenly changed course and informed Fisher that plaintiffs would not permit the depositions. Plaintiffs have not provided an adequate reason for barring the deposition of either witness—and there is no adequate reason. Fisher is entitled to take these depositions.

Consequently, Fisher respectfully requests that the Court enter an order compelling plaintiffs to produce those witnesses for their depositions. Further, Fisher requests that the Court order plaintiffs to pay Fisher's costs in bringing this motion, including reasonable attorneys' fees.

### IV.    STATEMENT OF FACTS

On August 6, 2007, counsel for Fisher emailed counsel for plaintiffs, requesting dates for the depositions of Messrs. Peters and Cappellini during the week of August 27.[20] Fisher's

---

[20] FCI/MOC 6.

counsel offered to cooperate with plaintiffs' counsel on the location for the depositions.[21] On August 10, not having received any response from plaintiffs, Fisher's counsel advised plaintiffs' counsel that Fisher would set the depositions for the week of August 27.[22] Only then did plaintiffs' counsel respond, providing dates for both witnesses and suggesting Albany, New York, for the location.[23] Fisher suggested dates for the depositions, chosen from those provided by plaintiffs' counsel, and stated that Albany would probably work for the depositions.[24]

Despite this apparently cooperative exchange of emails, on August 16 plaintiffs' counsel abruptly changed course, sending a letter stating that they "decline to produce these witnesses for deposition."[25] Immediately on receipt of that letter on Monday, August 20, Fisher requested a Rule 37 conference to discuss this issue and further requested—given the short timeline—that plaintiffs respond by the end of the business day on Wednesday, August 22.[26] On Wednesday, plaintiffs' counsel responded by stating that they would discuss the issue with plaintiffs' representatives on Friday, August 24, and would respond "shortly thereafter."[27] Fisher requested a response by 5:00 p.m. EDT Friday, August 24.[28]

Fisher believes that plaintiffs do not have a good-faith basis for refusing to produce the witnesses. Further, plaintiffs have not worked in good faith to resolve this issue. Consequently, Fisher brings this Motion.

---

[21] FCI/MOC 6.
[22] FCI/MOC 7.
[23] FCI/MOC 10.
[24] FCI/MOC 11.
[25] FCI/MOC 15.
[26] FCI/MOC 16.
[27] FCI/MOC 17.
[28] FCI/MOC 19.

V.  **STATEMENT OF COMPLIANCE WITH LOCAL RULE 7.1.1**

Counsel for Fisher has made a reasonable effort to reach agreement with plaintiffs on the matter set forth in this motion.[29] Fisher's counsel emailed plaintiffs' counsel regarding the issue and requesting a Rule 37 conference.[30] Plaintiffs' counsel refused to provide a timely response.[31]

VI. **ARGUMENT AND AUTHORITIES**

As set out above, Fisher duly noted the depositions of two critical witnesses. Plaintiffs have refused to produce those witnesses. Fisher requests that the Court compel plaintiffs to produce those witnesses and to order plaintiffs to pay Fisher's costs, including reasonable attorneys' fees, incurred in bringing this motion.

The courts generally regard with disfavor a request to vacate a notice of deposition. Investment Props. Int'l., Ltd. v. IOS, Ltd., 459 F.2d 705, 708 (2d Cir. 1972); Frideres v. Schlitz, 150 F.R.D. 153, 156 (S.D. Iowa 1993); Grinnell Corp. v. Hackett, 70 F.R.D. 326, 333 (D.R.I. 1976). A party seeking to avoid a deposition must make a strong showing before the court will preclude a deposition. See, e.g., Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975) (reversing district court's order barring taking of a deposition); In re McCorhill Pub., Inc., 91 B.R. 223, 225 (Bankr. S.D.N.Y. 1988). Plaintiffs cannot sustain this heavy burden.

A.  **Plaintiffs' Refusal to Produce Mr. Cappellini Rests on a False Assertion and Is Legally Insufficient**

As set out above, Albert Cappellini is at the center of this case. He transmitted to Fisher a request for quotation that bore only a passing resemblance to the valve actually ordered by

---

[29] 2d Gunter Aff. ¶ 5.
[30] FCI/MOC 16.
[31] FCI/MOC 17.

Praxair. Despite the centrality of his testimony, plaintiffs have refused to make him available, offering the following assertion in support of that refusal:

> Mr. Cappellini was deposed extensively by all counsel, including you, in the underlying litigation. The parties in the current litigation have agreed that discovery taken in the underlying litigation can be used in this matter. Thus, we see no legitimate reason for you to take his deposition again. You already had an ample opportunity to do so.[32]

This statement is false. In the Underlying Actions, counsel for Fisher did not ask Mr. Cappellini a single question on the record.[33] Fisher's attorneys chose not to do so because they did not want to damage the chances that Fisher's own sales representative would be able to extract itself from the Underlying Actions. In this action, Fisher's attorneys wish to depose Mr. Cappellini to obtain from him testimony confirming that Northeast Controls was negligent. In addition, Fisher's attorneys wish to question Mr. Cappellini regarding two documents that Northeast Controls did <u>not</u> produce in the Underlying Actions.[34] Those documents are important to both parties' claims and defenses in this matter.

Not only is plaintiffs' argument based on a misrepresentation of fact, it is also legally insufficient. The fact that a person has already been deposed in a state action is <u>not</u> a ground for precluding his or her deposition in a federal suit. <u>O'Donnell v. Richardson-Allen Corp.</u>, 34 F.R.D. 214, 216 (E.D. N.Y. 1964). Further, courts routinely hold that the fact that a witness was previously deposed—even in the same action—does not bar a subsequent deposition:

> It is even more difficult to show grounds for ordering that discovery not be had when it is a deposition that is sought, and

---

[32] FCI/MOC 15.
[33] 2d Gunter Aff. ¶ 6.
[34] 2d Gunter Aff. ¶ 7.

> most requests of this kind are denied. . . . Reasons that have been advanced for an order that a deposition not be taken, and that have been disposed of by the court—**and usually denied**—on the facts of the particular case, are: that the information sought has already been obtained by prior depositions or other means of discovery . . . .

Wright, Miller & Marcus, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 2037 at 494–96 (1994 ed.) (emphasis added). As one court explained, "[t]he fact that a person has already been deposed . . . does not per se entitle a party to a protective order." Deines v. Vermeer Mfg. Co., 133 F.R.D. 46, 48 (D. Kan. 1990) (allowing second deposition of plaintiff when plaintiff had knowledge of matters in dispute not adequately explored during first deposition).

Thus, plaintiffs' only *stated* reason for refusing to produce Mr. Cappellini is without merit. And plaintiffs have not even attempted to show any other basis for that refusal. They cannot argue now that Mr. Cappellini would be significantly inconvenienced by the proposed deposition. The August 16 letter does not even hint that Mr. Cappellini would be inconvenienced. Further, before the inexplicable decision to call off the deposition, plaintiffs' counsel obviously consulted with Mr. Cappellini and learned that he is in fact available throughout the week of August 27.[35] Given that plaintiffs have never suggested that the deposition would be unduly burdensome to Mr. Cappellini, they should not be allowed to raise that argument at this time.

In short, plaintiffs' argument is legally and factually insufficient. Fisher has a very good reason for taking Mr. Cappellini's deposition. Plaintiffs should be compelled to make him available for that deposition.

---

[35] See FCI/MOC 10.

### B.     Plaintiffs' Excuse for Not Producing Mr. Peters Is Both Irrelevant and Insufficient

Fisher also wishes to depose Michael Peters, president of Northeast Controls, on a number of issues. In this regard, it is important to note that plaintiffs identified Mr. Peters in their Initial Disclosures as a person with knowledge of the Representative Agreement between Fisher and Northeast Controls.[36] Mr. Peters has never been deposed on that issue—or, indeed, on any other issue relating to the May 20, 2000, incident. Under the circumstances, it should be painfully clear that Fisher is entitled to take his deposition.

Despite having identified Mr. Peters as a person with knowledge relevant to this matters, plaintiffs have now refused to produce him, offering in support of that insupportable position a wholly irrelevant argument:

> In addition, we received yesterday defendant Fisher's Motion to Amend Counterclaim. As we understand it, your client is seeking to amend its counterclaim so as to assert for the first time an affirmative claim for monetary recovery against plaintiff Northeast Controls, Inc. Obviously, your client would need to establish a basis for this claim, and it will have the burden of proof with respect to that claim. We intend to oppose the Motion. We cannot allow depositions of any Northeast Controls personnel to go forward until we know whether or not your Motion will be granted.

As indicated, this argument is irrelevant at best. The pendency of Fisher's motion cannot have any effect on Fisher's right to take a duly noted deposition. At worst, this argument appears to be an attempt to prevent Fisher from obtaining information that it may need to prosecute its claim—or to create some baseless delay. In this regard, Fisher notes that *it already has a claim for recoupment against Northeast Controls based on exactly the same set of facts*—i.e., Northeast

---

[36] FCI/MOC 1.

Controls' negligence in processing the order for the Valve.[37] Regardless whether the Court grants or denies Fisher's pending motion to amend, the same *facts* are still relevant in this lawsuit.

Fisher is unaware of *any* authority that stands for the proposition that a party may preclude a deposition under such circumstances. If the pendency of a motion (other than a motion for a protective order) could stay discovery, then parties could egregiously manipulate the process of discovery, throwing paper monkey wrenches of motions into the works of litigation whenever it served their purpose to delay the discovery schedule.

In short, plaintiffs' refusal to produce Mr. Peters utterly and transparently lacks even a shred of merit. Moreover, that complete lack of credibility taints as well plaintiffs' refusal to produce Mr. Cappellini. It is clear that, in regard to both witnesses, plaintiffs are playing a delaying game—or, worse, attempting to prevent Fisher from developing (even more) evidence showing that, indeed, Northeast Controls was negligent and that its negligence caused the Losses at issue in this matter—i.e., the "claims, demands, actions, . . . costs and expenses"—asserted against both Northeast Controls and Fisher arising out of Northeast Controls' failure to take the simple, fundamental step of ensuring that the purchase order for the Valve met the order that Northeast Controls processed through Fisher.

### C.  Sanctions Should Be Awarded Against Plaintiffs for Their Refusal to Produce the Witnesses

Rule 37(a)(4)(A) permits the Court to "require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to

---

[37] See Fisher's Answer to Amended Complaint and Counterclaim.

the moving party the reasonable expenses incurred in making the motion, including attorney's fees . . . ."

Here, it appears that plaintiffs' counsel had not discussed this issue with their representatives before unilaterally announcing that they would not produce the witnesses. Instead, plaintiffs' counsel announced their refusal to produce the witnesses, then claimed that they needed to consult with plaintiffs' representatives before deciding whether or not to agree to produce the witnesses.[38]

Regardless whether this delay was caused by plaintiffs or their counsel, the result has been to impose needless costs and expenses on Fisher. Plaintiffs and/or their counsel should be required to pay those costs and expenses, including reasonable attorneys' fees.

**VII.   CONCLUSION**

Plaintiffs do not have a good-faith basis for their sudden refusal to produce these two witnesses. Moreover, plaintiffs have played more of a delaying game by refusing to respond in a timely fashion to Fisher's request for a Rule 37 conference.

Fisher therefore respectfully requests that the Court enter an order (a) requiring plaintiffs to produce Messrs. Peters and Cappellini for deposition at a time and place of Fisher's choosing (within reason) and (b) requiring plaintiffs and/or their counsel to pay Fisher's reasonable attorneys' fees and costs incurred in bringing this Motion.

> Respectfully submitted,
>
> **MARON MARVEL BRADLEY
> & ANDERSON, P.A.**

---

[38] FCI/MOC 17.

        /s/ Paul A. Bradley
        Paul A. Bradley (DE Bar ID #2156)
        1201 N. Market Street, Suite 900
        P.O. Box 288
        Wilmington, DE 19899
        (302) 428-0180 (fax)
        pab@maronmarvel.com
        Attorney for Defendant
        Fisher Controls International, LLC

*OF COUNSEL*

**RIDDELL WILLIAMS P.S**.
Patrick D. McVey, Esquire
Daniel J. Gunter, Esquire
1001 Fourth Avenue Plaza,
Suite 4500
Seattle, WA 98154


Date:  August 24, 2007