IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NORTHEAST CONTROLS, INC.,<br>3 Enterprise Avenue<br>Clifton Park<br>New York, NY 12065<br><br>ST. PAUL MERCURY<br>INSURANCE COMPANY<br>385 Washington Street<br>St. Paul, MN 55102<br><br>      Plaintiffs,<br><br>v.<br><br>FISHER CONTROLS INTERNATIONAL, LLC<br>205 S. Center Street<br>Marshalltown, Iowa 50158<br><br>      Defendant. | C.A. No.: 06-412 SLR<br><br>**DEFENDANT'S REPLY<br>MEMORANDUM IN SUPPORT<br>OF MOTION TO AMEND<br>COUNTERCLAIM (DKT. # 37)** |

**I. INTRODUCTION AND RELIEF REQUESTED**

  Federal Rule of Civil Procedure 15(a) provides that "leave [to amend a pleading] shall be freely given when justice so requires." The policy of free amendment is to be applied with "extreme liberality." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003).

  In this case, Fisher does not seek to add a counterclaim. It seeks merely to amend the *remedy* that it is seeking in a counterclaim that it first asserted more than a year ago. Justice requires that the requested amendment be granted. Fisher incurred almost $2 million in its

successful defense of four lawsuits brought against it based on Northeast Controls' breach of its contractual obligations. Fisher sought initially only to assert that counterclaim as an offset against the entirety of plaintiffs' claim. It now seeks to amend its counterclaim only to seek a different remedy: that is, Fisher seeks to recover its losses regardless whether plaintiffs obtain any recovery from Fisher.

Plaintiffs' Opposition to Fishers' Motion to Amend Counterclaim (dkt. # 43) rests on significant errors in fact and law:

1. Plaintiffs try to suggest to the Court that Fisher's counterclaim is entirely new. That contention is false. Fisher's counterclaim for breach of contract dates to August 18, 2006. Fisher also asserted precisely the same counterclaim for breach of contract in its answer to plaintiffs' amended complaint. Fisher now seeks only a different remedy. Granting Fisher's motion to amend would not alter even one whit the underlying factual or legal issues.

2. Plaintiffs complain that granting Fisher's Motion to Amend will prejudice them because they do not have time to conduct necessary discovery. But plaintiffs have already sought discovery on the very issues that they now identify. Further, as noted above, Fisher's counterclaim—based on precisely the same facts and same legal theory—has been pending in this case for more than a year. If plaintiffs failed to conduct necessary discovery on that counterclaim before this time, they can blame only themselves for their failure.

3. Further, plaintiffs contend that Fisher cannot assert such a claim under Missouri law and that any such claim is time-barred. Those contentions are not well taken. Under Missouri law, a party (like Fisher) may recover in contract based on a third party's lawsuit. Second, under Missouri's statute of limitations, Fisher's contract claim was timely filed.

Fisher therefore respectfully renews its request that the Court grant Fisher's motion to amend its counterclaim to seek an affirmative remedy.

## II.  FISHER DELAYED AMENDMENT OF ITS COUNTERCLAIM BECAUSE IT DID NOT WANT TO TAKE MONEY FROM ITS BUSINESS PARTNER

Plaintiffs' contentions about Fisher's delay are without merit. In its answer to plaintiffs' original complaint[1] and in its answer to plaintiffs' amended complaint,[2] Fisher set forth a counterclaim alleging that Northeast Controls had breached its contract with Fisher. Fisher asserted in both answers that Northeast Controls' breach of that contract had caused Fisher significant losses—specifically, the attorneys' fees, expert expenses, and other costs that Fisher incurred in defending four lawsuits caused by Northeast Controls' breach of its contractual obligations. Thus, Fisher's claim that Northeast Controls breached its contract has been at issue in this case from Fisher's first responsive pleading.

Initially, Fisher intended to assert these losses only as an offset to plaintiffs' claimed losses. Fisher did so because it has no desire to reach into the pocket of its business partner and extract cash from it.[3] During the course of this litigation, though, it has become apparent that this lawsuit is being driven by Northeast Controls' insurer, St. Paul, not Northeast Controls. St. Paul has insisted on pursuing a lawsuit in which the overwhelming evidence shows that all of the

---

[1] Dkt. # 10 (filed August 18, 2006).
[2] Dkt. # 27 (filed August 16, 2007).
[3] Northeast Controls' arguments as to Fisher's defense strategy in the Underlying Actions are irrelevant to the Court's determination of Fisher's motion to amend in this action. In any event, Fisher chose not to attack Northeast Controls in the Underlying Action because Fisher did not wish to injure its business partner. Further, Fisher was concerned that plaintiffs in the Underlying Actions would seek to argue that Fisher was liable under an agency theory for Northeast Controls' negligence. Had Fisher highlighted the issue of Northeast Controls' negligence (by alleging a breach of contract), Fisher's arguments could have been turned against Fisher itself.

expenses incurred by Fisher and Northeast Controls alike flowed from Northeast Controls' negligence in processing of the order for the valve at issue in the Underlying Actions.

Fisher believes that Northeast Controls likely has insurance coverage for Fisher's counterclaim against it through the same insurance company. Accordingly, it now appears that Fisher will not be taking money from its business partner in successfully prosecuting its counterclaim. Based on St. Paul's continued intransigence in this matter, Fisher determined that it should amend its counterclaim so that it can recover the large sums of money that it spent defending the Underlying Actions.

Fisher also attempted to avoid further expenditures by repeatedly explaining to plaintiffs' counsel that their lawsuit rests on a misreading of the Representative Agreement between the parties. That agreement specifically provides that Fisher has no obligation to defend or indemnify Northeast Controls for its negligence:

> . . . Fisher shall not be obligated to protect, defend, indemnify or hold harmless [Northeast Controls] from and against any Losses arising from the following:
>
> . . .
>
> Negligent acts or omissions by [Northeast Controls].

As indicated here, "Losses" is a defined term:

> . . . Fisher agrees that it shall, at its own expense, protect, defend, indemnify and hold harmless [Northeast Controls] from and against any and all claims, demands, actions, losses, damages, liabilities, costs and expenses (collectively, "Losses") which may arise out of or be made in connection with the death or injury of any person, or damage

to property, by whomsoever suffered, resulting or claimed to result from any actual or alleged defect in any Product.[4]

In other words, Fisher had no obligation to defend Northeast Controls against any "claims, demands, actions, losses, damages, liabilities, costs and expenses" arising out of Northeast Controls' "[n]egligent acts or omissions."

In this case, the overwhelming evidence shows that "actions, . . . liabilities, costs and expenses" were caused by Northeast Controls' negligence. Consequently, Fisher had no obligation to defend or indemnify Northeast Controls against those "actions, liabilities, costs and expenses."

A simple chronology demonstrates (a) that Northeast Controls was negligent and (b) that its negligence resulted in the "liabilities, costs and expenses" that plaintiffs seek to recover:

| Date | Event | Valve's materials of construction |
|---|---|---|
| 6/3/98 | Northeast Controls and Praxair representatives initial specification sheet for valve 83HV0269 ("the '629 Valve")[5] | Monel disk<br>Monel shaft<br>Monel guide (bearings)<br>Monel/PTFE seal |
| 7/6/98 | Praxair sends to Northeast Controls a purchase order referencing the 6/3/98 specification sheet[6] | Monel disk<br>Monel shaft<br>Monel guide<br>Monel/PTFE seal |

---

[4] FCI/MOA 3–4. Documents identified as FCI/MOA 1–282 are attached to the Affidavit of Daniel J. Gunter in Support of Defendant's Motion to Amend Counterclaim, filed with Fisher's opening brief. Documents identified as FCI/MOA 283–347 are attached to the Second Affidavit of Daniel J. Gunter in Support of Defendant's Motion to Amend Counterclaim ("2d Gunter Aff."), filed concurrently with this memorandum.
[5] FCI/MOA 6.
[6] FCI/MOA 11-19.

| | | |
|---|---|---|
| 6/21/98 | Northeast Controls places the order for the '629 Valve through Fisher's order processing system[7] | Hastelloy C disk<br>Inconel 718 shaft<br>TFE/composite guide<br>Tefzel seal |
| 7/21/98 | Fisher informs Northeast Controls that Tefzel is not suitable for oxygen service; Fisher and Northeast Controls agree to change to superior material (Kel-F)[8] | Hastelloy C disk<br>Inconel 718 shaft<br>TFE/composite guide<br>Kel-F seal |
| 7/23/98 | Northeast Controls prepares a *new* specification sheet for the '629 Valve[9] | Monel disk<br>Monel shaft<br>Monel guide<br>Kel-F seal |
| 10/23/98 | Fisher ships the '629 Valve[10] | Hastelloy C disk<br>Inconel 718 shaft<br>TFE/composite guide<br>Kel-F seal |
| 5/20/00 | The '629 Valve is at the center of a significant fire and explosion[11] | |
| 5/22/00 | Northeast Controls confirms to Praxair the '629 Valve's materials of construction[12] | Hastelloy C disk<br>Inconel 718 shaft<br>TFE/composite guide<br>Kel-F seal |
| 7/24/2001 | Experts for Wendell Hull Associates issue report identifying Valve's materials of construction as cause of fire[13] | |

---

[7] FCI/MOA 283–84, 285–95.
[8] FCI/MOA 296, 296A.
[9] FCI/MOA 20.
[10] FCI/MOA 297.
[11] FCI/MOA 62.
[12] FCI/MOA 21–22.
[13] FCI/MOA 5–7.

| | | |
|---|---|---|
| 4/24/02 | Ronald Olson files lawsuit asserting that the Valve failed to meet specifications because it used the wrong materials[14] | |
| 5/20/02 | Praxair files lawsuit asserting that the Valve failed to meet specifications because it used the wrong materials[15] | |
| 5/28/02 | Great American Assurance Co. files lawsuit asserting that the Valve failed to meet specifications because it used the wrong materials[16] | |
| 5/29/02 | Motiva files lawsuit asserting that the Valve failed to meet specifications because it used the wrong materials[17] | |

In short, the evidence shows that Northeast Controls was negligent and that its negligence resulted in four lawsuits being asserted against Northeast Controls and Fisher.

Despite that evidence, plaintiffs in this action apparently believe that Fisher was obligated to defend and indemnify Northeast Controls because Northeast Controls' negligence did not cause the fire and explosion at issue in the underlying actions. *But that is not the question under the terms of the agreement.* Again, the Representative Agreement does not oblige Fisher to defend or indemnify Northeast Controls against "claims, demands, actions, losses, damages, liabilities, costs and expenses" that result from Northeast Controls' negligence.

Regardless whether Northeast Controls' negligence caused the fire, its failure to process correctly the order for the Valve provided all of the plaintiffs an easy target—i.e., the disjuncture in the ordering documents. Fisher and Northeast Controls alike were sued because Northeast

---

[14] FCI/MOA 298–307.
[15] FCI/MOA 31–39.
[16] FCI/MOA 46–52.
[17] FCI/MOA 40–45.

Controls fouled up the ordering of the '629 Valve. Because all four of the Underlying Actions were the result of Northeast Controls' negligence—*regardless whether the fire itself was caused by that negligence*—Fisher had no obligation to defend or indemnify Northeast Controls against those "Losses."

Despite the unambiguous language of the Representative Agreement, St. Paul continues to ignore the actual defined meaning of "Losses" and thus has continued to press this meritless action. In light of St. Paul's stubborn posture, Fisher decided that it needed to amend its already-existing counterclaim for recoupment to seek not only a setoff but also affirmative relief.

### III. FISHER HAS A RIGHT TO RECOVER FOR NORTHEAST CONTROLS' BREACH OF ITS CONTRACTUAL OBLIGATIONS

Plaintiffs also argue that Fisher is not entitled to the recovery that it seeks. That contention, too, is without merit.

It is important to note first that Fisher has not asserted a contractual right to indemnification, nor has it asserted a tort claim against Northeast Controls. Northeast Controls' arguments as to these issues are irrelevant. Fisher has instead asserted only a right well recognized under Missouri law. It should be permitted to assert that right in this action—and to recover from plaintiffs the significant expenses that Fisher incurred because of Northeast Controls' breach of its contractual obligation to Fisher.

Under Missouri law, an injured party to a contract may recover attorney's fees incurred in defending collateral litigation. Forsythe v. Starnes, 554 S.W.2d 100, 111 (Mo. App. 1977). Collateral litigation occurs when a breach of contract by one party results in a lawsuit by a third party against the other party to the contract. Ohlendorf v. Beinstein, 697 S.W.2d 553, 556 (Mo.

App. 1985). The injured party to the contract may recover attorneys' fees incurred in defending collateral litigation if the litigation was the natural and proximate result of the wrong or breach by the other party, the fees were necessarily and in good faith incurred to protect the wronged party from injury, and the amount of fees is reasonable. Forsythe, 554 S.W.2d at 111.

Northeast Controls breached its contractual obligations to Fisher by failing to process correctly the order for the Valve. Fisher and Northeast Controls were parties to the Representative Agreement, under which Northeast Controls was obligated to process orders from customers. Northeast Controls was obligated to perform that work correctly—i.e., it was obligated to ensure that a purchase order from a customer matched the order that it placed through Fisher's order processing system. Fisher assumes that plaintiffs would not contend that Northeast Controls could fulfill its obligations to Fisher by receiving, say, a purchase order for a 12″ Type A11 valve and then placing an order with Fisher for a 10″ Type A11 valve, or an 8″ Type A11 valve, or a 3″ globe valve.

In this case, the order that Northeast Controls received did not match the order that it sent to Fisher through Fisher's order processing system. That mismatch constituted a breach of the agreement between Fisher and Northeast Controls: Northeast Controls cannot fulfill its contractual obligations to Fisher by making egregious errors in processing orders.

As a direct result of Northeast Controls' breach of its contractual obligations, Fisher was sued by third parties Praxair, Motiva, Great American Assurance Company, and Ronald Olson in the underlying actions. Fisher incurred significant costs in defending those actions and in defending against counterclaims asserted by several co-defendants. The fees incurred by Fisher in

defending the underlying actions were reasonable and incurred in good faith. Fisher is entitled to recover those fees.

## IV.     **PLAINTIFFS WILL NOT BE PREJUDICED BY THE AMENDMENT**

Despite plaintiffs' complaints, plaintiffs cannot be prejudiced by this amendment. The simple fact is that Fisher alleged precisely the same facts in support of its counterclaim for recoupment, which was first asserted more than a year ago. Because the same facts and legal theory have been at issue since Fisher's first pleading in this matter, plaintiffs cannot have been prejudiced by this Motion to Amend.

Further, plaintiffs have already conducted precisely the discovery that they now claim they have not conducted. For example, in their first discovery requests to Fisher—served on Fisher on March 1, 2007—plaintiffs asked Fisher to set forth the facts supporting its defense of recoupment. Fisher's answer to that interrogatory referenced Fisher's counterclaim and identified the factual basis for that counterclaim:

> 4.      State the factual and legal basis for each of your affirmative defenses, including:
>
> . . .
>
> e.      That Defendant, Fisher, is entitled to recoupment in the form of a reduction in the amount of Plaintiffs recovery in this lawsuit, if any, for the amount of attorney's fees and costs Fisher incurred in defending the underlying actions.
>
> RESPONSE:   The basis of Fisher's claim for recoupment is set forth in detail in Fisher's counterclaim. Responding further, Fisher states that, within three days of the Incident, plaintiff Northeast Controls, Inc., knew or should have known that it had failed to provide to Fisher the valve specifications that plaintiff Praxair, Inc., had provided to Northeast Controls. Even before the first of the underlying actions was filed, various parties had focused on

> Northeast Controls' negligence in transmitting Praxair's specifications to Fisher. Before the complaints were filed, one of the leading experts in oxygen-service fires, Wendell Hull and Associates, had concluded that the fire may have been caused by the use of materials in the Valve that did not match the materials specified in Praxair's purchase order. All four of the complaints filed in the underlying actions focused—in regard to both Fisher's and Northeast Controls' liability—on the discrepancies in the material specifications, which discrepancies resulted from Northeast Controls' negligence. Further, none of the parties in the underlying actions ever identified any defect in the valve at issue except for the discrepancies in the material specifications, all of which discrepancies were the responsibility of Northeast Controls.
>
> Under the terms of its agreement with Fisher, Northeast Controls was obligated to maintain documentation. Despite that agreement, Northeast Controls failed to maintain documentation showing the terms of the agreement that Northeast Controls negotiated with Praxair while it (i.e., Northeast Controls) was acting on behalf of Fisher.[18]

In short, plaintiffs have been aware of the facts and legal theory at issue in Fisher's counterclaim for months. They cannot in good faith claim surprise.

Plaintiff also complains that they would need additional discovery about Fisher's claimed damages:

> At a minimum, Fisher's claim to recover the costs and expenses incurred in the underlying litigation would require Plaintiffs to conduct extensive additional discovery on Fisher's damages. To date, Plaintiffs have only sought discovery regarding the amounts of Fisher's expenses and the firms to which they were paid. In order to defend Fisher's amended counterclaim, and request for affirmative recovery, Plaintiffs would be required to obtain much more information regarding the details of Fisher's expenditures in connection with the underlying litigation. This would require document discovery, depositions and consultation with experts.

---

[18] FCI/MOA 316–20.

>Plaintiffs would then need to develop an expert opinion on the reasonableness of the expenses.[19]

Plaintiffs fail to mention that they sent an entire set of discovery requests to Fisher regarding Fisher's damages. In those discovery requests, plaintiffs asked the following questions (among others) about Fisher's expenses:

>1. State the full amount that you paid for any purpose, whether counsel fees, expert fees, or other expenditures, to defend the underlying litigation.
>
>. . .
>
>9. Identify by name, address and specific employer all persons employed by you or any company in the corporate structure of which you are a part who worked on, contributed to or otherwise participated in the defense of the underlying litigation.
>
>. . .
>
>11. State the amount of and describe any expense you incurred in defending the underlying litigation, other than those already identified above.[20]

Fisher answered those questions and provided supporting documentation showing the significant expenses that it incurred in defending the four underlying actions.

Similarly, plaintiffs now complain that, if the Motion to Amend is granted, they would need to inquire into Fisher's relationships with its other sales representatives:

>Plaintiffs would need discovery on other subjects as well. For instance, there is the entire area of the relationship between Fisher and its sales representatives. Northeast Controls is not the only sales representative for Fisher products in the United States. On the contrary, there are many such representatives, all of whom work under similar contractual relationships with Fisher. . . . If this counterclaim is to proceed, Northeast would need documentary and

---

[19] Plaintiffs' Opp'n at 10. Plaintiffs here concede that Fisher's attorneys' fees were reasonable.
[20] FCI/MOA 328–31.

deposition discovery on the relationship between Fisher and its other representatives in order to determine whether Fisher has made claims against other representatives under similar circumstances. This would have a direct bearing on whether Fisher ever believed or intended that it had the right to such damages under the Representative Agreement, particularly since Fisher drafted most or all of the contract language.[21]

This contention is irrelevant. Fisher's contractual relations with other sales representatives cannot have any bearing on the issues in this case. This is, at heart, a contract case. It rests on the interpretation of a contract between Fisher and Northeast Controls. What "Fisher ever believed or intended" about its rights under that contract is irrelevant except to the extent that its belief or intent is objectively manifested in the Representative Agreement between Fisher and Northeast Controls. It would be irrelevant **in this case** even if Fisher had made ten thousand other such claims against its sales representatives and had succeeded in each such claim.

But plaintiffs' argument on this point is not just irrelevant: it is contrary to the facts. **Plaintiffs have already sought discovery on this very issue.** In their first discovery requests to Fisher, plaintiffs posed the following two interrogatories:

> 7. Identify all companies and other entities with whom any Fisher Company has entered into a REPRESENTATIVE AGREEMENT or similar agreement to provide services the same as or similar to the services provided by Northeast Controls under its representative agreement with Fisher.
>
> 8. State whether any other company or entity having a representative agreement with Fisher or any Fisher company has made any request or claim for defense or indemnification under a representative agreement or any similar agreement and state the

---

[21] Plaintiffs' Opp'n at 10–11.

position taken by Fisher or any such Fisher company with respect to each such claim or request.[22]

These discovery requests—served on March 1, 2007—are directed at precisely the same issues that plaintiffs now identify as being brand-new in this case.[23]

In short, plaintiffs cannot show any prejudice. If they have not conducted the discovery that they wish that they had conducted, the fault is theirs.

## V.   FISHER'S COUNTERCLAIM WAS TIMELY FILED

In its opposition brief, plaintiffs have argued that, under Missouri law, Fisher's counterclaim is time barred, contending that "any breach of contract claim held by Fisher against Northeast accrued at the time of the alleged breach."[24] The standard cited by plaintiffs is not the standard for the accrual of a breach of contract claim under Missouri law.[25]

Under Missouri law, the statute of limitations period for a breach of contract claim is five years from the date of accrual. Section 516.200, Rev. Stat. Mo. 2000. A cause of action for

---

[22] FCI/MOA 311.

[23] Fisher objected that these interrogatories were not reasonably calculated to lead to the discovery of evidence relevant to the claims and defenses in this lawsuit. Plaintiffs' conduct shows they agree with Fisher's assessment: Fisher served its discovery responses on April 16, 2007, and plaintiffs have never complained to Fisher about the appropriateness of that objection.

[24] Plaintiffs' Opp'n at 16.

[25] Fisher agrees that Missouri's statute of limitations applies to Fisher's counterclaim. Fisher could have brought its breach-of-contract claim against Northeast Controls in Missouri or New York. As set out in the text above, Fisher's claim would be timely if brought in Missouri. It would also be timely under New York's six-year statute of limitations. See N.Y.C.P.L.R. 213(2) (McKinney 2004). Under the circumstances of this case, where the parties chose Missouri law and the breach occurred in New York (Northeast Controls' location and the location of the place of business of Praxair, Inc., the purchaser of the Valve), Delaware's borrowing statute does not apply to Fisher's counterclaim. See, e.g., B. Lewis Productions, Inc. v. Bean, No. 02-98-KAJ, 2005 WL 273298, *2 (D. Del. Jan. 28, 2005) (citing Saudi Basic Indus.Corp. v. Mobil Yanbu Petrochemical Co., 2005 WL120789 (Del. Jan. 14, 2005)) (per Jordan, J.). By contrast, Delaware's statute of limitations does apply to plaintiffs' claim: plaintiffs voluntarily asserted that claim in Delaware and thus subjected themselves to Delaware's borrowing statute. Fisher will later move the Court for an order dismissing all or part of Northeast Controls' claims based on the statute of limitations.

breach of contract "shall not be deemed to accrue . . . when the breach of contract occurs . . . , but when the damage resulting therefrom is sustained and is capable of ascertainment, and, if more than one item of damage, then the last item, so that all resulting damage may be recovered, and full and complete relief obtained." Section 516.100, Rev. Stat. Mo. 2000.

Under Missouri's statute of limitations, the limitations period commences not from the technical breach but from the existence of a practical remedy. Verbrugge v. ABC Seamless Steel Siding, Inc., 157 S.W.3d 298, 302 (Mo. App. 2005).

> [I]f the wrong done is of such a character that it may be said that all of the damages, past and future, are capable of ascertainment in a single action so that the entire damage accrues in the first instance, the statute of limitation begins to run from that time. If, on the other hand, the wrong may be said to continue from day to day, and to create a fresh injury from day to day, and the wrong is capable of being terminated, a right of action exists for the damages suffered within the statutory period immediately preceding suit.

Id. (quoting Linn Reorganized School Dist. No. 2 of Osage County v. Butler Mfg. Co., 672 S.W.2d 340 (Mo. 1984). The purpose of the "capable of ascertainment" language is to prevent a party from having to file suit before it can make a practical determination of the extent of damages. Id. at 303.

In its counterclaim, Fisher seeks to recover the attorneys' fees and costs incurred in defending itself against collateral litigation resulting from Northeast Controls' negligence. The first lawsuit against Fisher in the Underlying Actions (i.e., the Olson action) was filed on or about April 24, 2002.[26] Until the Olson action was commenced, Fisher could not have asserted a claim against Northeast Controls for exposing Fisher to collateral litigation for the simple reason

---

[26] FCI/MOA 307.

that no collateral litigation existed. After the Underlying Action was commenced, Fisher continued to experience a "fresh injury" every time it incurred additional defense costs until it extracted itself from the last of the four lawsuits in June 2005.

Regardless whether the accrual date is April 2002 or June 2005, under Missouri law Fisher's counterclaim in this matter was timely filed.[27] Fisher filed its answer and counterclaim alleging a breach of contract on August 18, 2006, well within five years of either potential accrual date. At this time, Fisher is merely seeking to amend its answer to assert an additional *remedy* for its timely filed counterclaim. Under Rule 15(c)(2), the renewed remedy unambiguously relates back to the previously filed counterclaim for recoupment.

## VI. THE COURT SHOULD IGNORE PLAINTIFFS' IMPROPER REFERENCES TO THE MEDIATION AND SHOULD REMOVE FROM THE DOCKET PLAINTIFFS' ORIGINAL OPPOSITION TO THE MOTION TO AMEND

Plaintiffs' first response to Fisher's Motion to Amend was filed with this Court on Wednesday, August 29.[28] In that brief, plaintiffs referred substantively to the mediation held before Judge Thynge on August 16.

On the morning of August 30, counsel for Fisher held a telephonic conference with one of plaintiffs' attorneys and informed him that plaintiffs had violated the Court's Mediation Order of December 12, 2006 (Dkt. # 20).[29] Paragraph 7 of the Mediation Order provides—in bold type—

---

[27] Regardless whether Fisher's counterclaim for affirmative relief is time barred, its affirmative defense and counterclaim for recoupment—i.e., an offset—is *not* time barred. In contrast to affirmative counterclaims, an affirmative defense seeking a reduction in plaintiffs' damages in the form of recoupment is not subject to statutes of limitations. See PNC Bank v. Turner, 659 A.2d 222, 225 (Del. Super. 1995).
[28] Dkt. # 42 (filed August 29, 2007).
[29] 2d Gunter Aff. ¶ 2.

that settlement discussions shall remain confidential and that violation of the Order will result in sanctions:

> **[T]he conference discussions . . . shall remain confidential [and] shall not be used in the present litigation . . . . <u>Breach of this provision shall subject the violator to sanctions</u>.**

(Bold emphasis in original; underscoring added.)

Fisher's counsel requested that plaintiffs advise Fisher by 12:00 noon EDT on Friday, August 31, whether plaintiffs would agree to file a revised response.[30] Plaintiffs filed a revised response shortly after the telephonic discussion.[31] But plaintiffs' revised opposition brief still refers at several points to the mediation. The mediation is absolutely irrelevant to any of the issues before the Court in Fisher's Motion to Amend. Plaintiffs' reference to the mediation cannot serve any legitimate purpose—especially in light of the Court's Mediation Order.

Plaintiffs' original opposition brief still remains of record with the Court. In light of plaintiffs' revision of the opposition brief, Fisher does <u>not</u> request that the Court sanction plaintiffs. But Fisher does request that the Court order the original opposition brief be removed from the record.

## VII. <u>CONCLUSION</u>

As set out in Fisher's opening brief, the U.S. Supreme Court has instructed courts that a motion to amend should be granted in the absence of prejudice to the non-moving party. The grant or denial of a motion to amend is within the discretion of the Court. <u>Zenith Radio Corp. v. Hazeltine Research</u>, 401 U.S. 321, 330–31 (1971).

---

[30] 2d Gunter Aff. ¶ 2.
[31] Dkt. # 43 (filed August 30, 2007).

In this case, granting the motion to amend will not prejudice the plaintiffs. Plaintiffs have already conducted the discovery that they now complain that they would need to conduct. They cannot be prejudiced simply because they are now at risk of having to compensate Fisher for the costs that it incurred in defending claims that were the natural and foreseeable result of Northeast Controls' breach of its contract with Fisher.

Because plaintiffs will not be prejudiced by this amendment, Fisher respectfully renews its request that the Court grant its motion and permit Fisher to amend its counterclaim. In addition, Fisher requests that the Court order plaintiffs' prior opposition brief (Dkt. # 42) to this Motion be removed from the record.

**MARON MARVEL BRADLEY
 & ANDERSON, P.A.**

/s/ Paul A. Bradley
Paul A. Bradley (DE Bar ID #2156)
1201 N. Market Street, Suite 900
P.O. Box 288
Wilmington, DE 19899
(302) 428-0180 (fax)
pab@maronmarvel.com
Attorney for Defendant
Fisher Controls International, LLC

*OF COUNSEL*

**RIDDELL WILLIAMS P.S**.
Patrick D. McVey, Esquire
Daniel J. Gunter, Esquire
1001 Fourth Avenue Plaza,
Suite 4500
Seattle, WA 98154


Date:  September 7, 2007

## CERTIFICATE OF SERVICE

I, Paul A. Bradley, Esquire, hereby certify that, on September 7, 2007, I caused a true and correct copy of the Defendant's Reply Memorandum in Support Defendant's Motion to Amend Counterclaim of to be served upon counsel of record via electronic filing.

                                  **MARON MARVEL BRADLEY & ANDERSON, P.A.**

                                  /s/ Paul A. Bradley
                                  Paul A. Bradley (DE Bar ID #2156)
                                  1201 N. Market Street, Suite 900
                                  P.O. Box 288
                                  Wilmington, DE 19899
                                  (302) 428-0180 (fax)
                                  pab@maronmarvel.com
                                  Attorney for Defendant
                                  Fisher Controls International, LLC

*OF COUNSEL*

**RIDDELL WILLIAMS P.S.**
Patrick D. McVey, Esquire
Daniel J. Gunter, Esquire
1001 Fourth Avenue Plaza,
Suite 4500
Seattle, WA 98154


Date: September 7, 2007