IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NORTHEAST CONTROLS, INC.,<br>3 Enterprise Avenue<br>Clifton Park<br>New York, NY 12065<br><br>ST. PAUL MERCURY<br>INSURANCE COMPANY<br>385 Washington Street<br>St. Paul, MN 55102<br><br>               Plaintiffs,<br><br>v.<br><br>FISHER CONTROLS INTERNATIONAL, LLC<br>205 S. Center Street<br>Marshalltown, Iowa 50158<br><br><br>               Defendant. | NO. 06-412<br><br><br>**SECOND AFFIDAVIT OF DANIEL J. GUNTER IN SUPPORT OF DEFENDANT'S MOTION TO AMEND COUNTERCLAIM (DKT. # 37)** |

STATE OF WASHINGTON )

                       : ss.

County of King      )

      I, DANIEL J. GUNTER, being duly sworn, depose and state as follows:

      1.     I am one of the attorneys representing defendant Fisher Controls International, LLC ("AmTech"), in the above matter. I am competent to attest as to the matters set forth herein, and I make this affidavit based on my personal knowledge.

      2.     On the morning of August 30, 2007, I telephoned one of plaintiffs' attorneys (Joseph Scott Shannon) and informed him that plaintiffs' response brief violated the Court's

Mediation Order of December 12, 2006. I requested that plaintiffs' counsel advise us by 12:00 noon EDT on Friday, August 31, whether plaintiffs would agree to file a revised response. Plaintiffs filed a revised response shortly after our telephonic discussion.

3.    Attached hereto as Exhibit 39 is a true and correct copy of deposition exhibit 141A, introduced in the Underlying Action, showing ordering information for the Fisher 83HV0629 valve as placed by Northeast Controls, Inc., through Fisher's Order Processing System.

4.    Attached hereto as Exhibit 40 is a true and correct copy of deposition exhibit 142, introduced in the Underlying Action, showing ordering information for the Fisher 83HV0629 valve as placed by Northeast Controls, Inc., through Fisher's Order Processing System.

5.    Attached hereto as Exhibit 41 are true and correct copies of deposition exhibits 137 and 153, introduced in the Underlying Actions, showing communications between Fisher and Northeast Controls relating to the Fisher 83HV0629 valve.

6.    Attached hereto as Exhibit 42 is a true and correct copy of deposition exhibit 172, introduction in the Underlying Actions, which document references the shipping of the Fisher 83HV0629 valve.

7.    Attached hereto as Exhibit 43 is a true and correct copy of the original complaint filed by Ronald W. Olson.

8.    Attached hereto as Exhibit 44 is a true and correct copy of plaintiffs' first interrogatories directed to Fisher in this action.

9.    Attached hereto as Exhibit 45 is a true and correct copy of Fisher's answers to plaintiffs' first interrogatories in this action.

10.    Attached hereto as Exhibit 46 is a true and correct copy of the second set of plaintiffs' interrogatories directed to Fisher in this action.

11.    Attached hereto as Exhibit 47 is a true and correct copy of Fisher's answers to the

second set of plaintiffs' interrogatories.

_____
Daniel J. Gunter

Subscribed and sworn to before me this 7th day of September, 2007.

_____
Notary Public, State of Washington
Residing at _SEATTLE_
My commission expires: _11-25-08_

# EXHIBIT 39

REF NO:       M'TOWN ORDER NO: 042B-22257/12/A        FNS RCVD:   6/25/98
[..]S RCVD: 6/25/98    CUST REQD:   7/31/98    M'TOWN RCVD:   6/24/98
        'OMER: Order Admin Support @ M'town

ORDER $$$: XMail        ITEM QTY: 1    (work reqd)    TOTAL ITEMS: 4    (entire job)

C.C. REQST: Gary Boyle: 12" 600 A11 Hast C Oxy Svc, 1031 33102SR80,    Process Group:
        a11-12-151-cb743-31-3-00, Asco's mtd in series, & add'l access.
STATUS CODE: is
LOC CODE:                                        DATE 2 WEEKS AGO FROM TODAY WAS 2/1/98
START DATE:   7/1/98
                    ENGRG REVIEW: no    (yes/no)
TO C.C. DATE: 7/1/98    (Undated Order)    MATL'S PRE-ORDERED:   no    (yes/no)
ISSUE DATE:   7/1/98    (complete; issued from D.C.)
    DESCRIP1: Comml: 12" 600 A11 Hastelloy C wafer valve assy with 1031
(Order Type) size 33102 SR80 FC actr  with dual Asco solenoids (8316G2)
    DESCRIP2: in series with 1/4" SST TEE, 67AFD,  3720 Positioner & Stonel
        PQ70-E1C posn trans & Rexroth P52935-4 QE vlvs

ASSIGNED: Dftg: Jon B. 7/1.

STATUS: Drafting complete.  No new design required.

HISTORY1:

HISTORY2:

LOCA HISTORY: To C.C. 7/1 complete with existing information; eg: valve
        bm's, actr and accessory  mtg kits & instructions.
    'J TIME: 20        CALC SCHED DATE: 7/15/98    TARGET DATE:
..AYS UNDATED: 6        DAYS IN ENGRG:  6    Q TIME: 6    (OUT OF ENRG)
EST ENG HRS: 0        ACTUAL DFTG HR:   0    (TOTAL)

| | QTY | TOTAL HRS | QTY | DFTG HRS |
|---|---|---|---|---|
| 1) NEW VALVE DESIGN | Q1: | H1: 0 | Q22: | H22: 0 |
| 2) NEW BODY DESIGN | Q2: | H2: 0 | Q23: | H23: 0 |
| 3) BODY MODIFICATION | Q3: | H3: 0 | Q24: | H24: 0 |
| 4) EXT/CRYO BODY DESIGN | Q4: | H4: 0 | Q25: | H25: 0 |
| 5) EXT/BOLT ON, MISC | Q5: | H5: 0 | Q26: | H26: 0 |
| 6) CLASS 600/300 DESIGN | Q6: | H6: 0 | Q27: | H27: 0 |
| 7) DISC MODIFICATION | Q7: | H7: 0 | Q28: | H28: 0 |
| 8) RET. RING MODIFICATION | Q8: | H8: 0 | Q29: | H29: 0 |
| 9) LIVE LOAD PACKING DESIGN | Q9: | H9: 0 | Q30: | H30: 0 |
| 10) BLOW OUT PROTECTION | Q10: | H10: 0 | Q31: | H31: 0 |
| 11) SLAVE LINK (GENERIC) | Q11: | H11: 0 | Q32: | H32: 0 |
| 12) SPECIAL STEMS | Q12: | H12: 0 | Q33: | H33: 0 |
| 13) ACTR MTG (BRK'T & CPLR) | | | | |
| 13a) SEISMIC TYPE | Q13a: | H13a: 0 | Q34a: | H34a: 0 |
| 13b) NEW DESIGN (SPECIAL) | Q13b: | H13b: 0 | Q34b: | H34b: 0 |
| 13c) MODIFICATON OF EXISTING | Q13c: | H13c: 0 | Q34c: | H34c: 0 |
| 14) SEAL DESIGN | Q14: | H14: 0 | Q35: | H35: 0 |
| 15) ACCESS MTG (NEW DESIGN) | Q15: | H15: 0 | Q36: | H36: 0 |
| 16) PROCEDURES | Q16: | H16: 0 | Q37: | H37: 0 |
| 17) ACTR MODIFICATION | Q17: | H17: 0 | Q38: | H38: 0 |

FCI/MOA 0283


DEPOSITION EXHIBIT
Olson 141A
1215-03

FCI 400005

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1??) NEW B.M. | | | | | | | |
| ??PRA (NO DRAWING) | Q18b: | H18b: | 0 | Q39b: | | H39b: | 0 |
| 2?) ORDER REVIEW & PLANNING | Q19: | H19: | 0 | Q40: | | H40: | 0 |
| 21) NUCLEAR ORDERS (NEW) | | H20: | | | | H41: | |
| 21a) REVIEW & PLANNING | Q21a: | H21a: | 0 | Q42a: | | H42a: | 0 |
| 21b) NEW DWG, ECT.. PER ITEM | Q21b: | H21b: | 0 | Q42b: | | H42b: | 0 |

EST ENG_HR:    0        EST DFTG_HRS:    0

ESTIMATED HOURS

EST DFTG HRS:    0

EST CHKG HRS:    0

TOT EST DFTG HR:    0

ACTUAL RECORDED HOURS

ACTUAL DFTG HRS:

ACTUAL CHKG HRS:

TOTAL DFTG HRS:    0

ESTIMATED REMAINING BACKLOG HOURS

USED DFTG HRS:

USED CHKG HRS:

REMAINING HRS:

FCI/MOA 0284

FCI 400006

# EXHIBIT 40

EX04                     MANUAL VALIDATION REQUISITION

HOLDS: NO       PRIME SHIP: 254   DETAILER: GTBOYL      REP-ORDER: 042B-22257
ITEM 0012 TAG 83HV0629
         TYPE A11 CONTROL VALVE ASSEMBLY SIZE 12, TYPE DEGREASING, TYPE 1031,
         TYPE 3720, TYPE 3722, TYPE 3710 MTG PTS, TYPE 67AFD REGULATOR SIZE 1/4,
         TYPE ASCO SOLENOID, TYPE ASCO SOLENOID, TYPE QUICK RELEASE VALVE, TYPE
         QUICK RELEASE VALVE, TYPE STONEL LIMIT SWITCH & MTGS, TYPE STONEL LIMIT
         SWITCH & MTGS
    F30 ** Z52952 **
    J11 PRO NBR: PRES     137657448                  10/23/98
    J11 PRO NBR: 137657448
    J15 HS# 8481.80.9035     VALVE & PNEUMATIC ACTUATOR
    K40 062598: ENGR DETAILS TO LACHANCE FOR BODY &
    K40 ASCO MTGS
    K40 DETAILED BY GARY BOYLE - 07/06/98

    A  *A11
       TYPE A11 HIGH PERFORMANCE BUTTERFLY VALVE,SIZE 12
       CL600 CW2M WAFER STYLE BODY, CM-2M CT DISK, INCONEL 718 1 3/4 KEYED

PA1/CLEAR=EXIT  PF1=OE00   PF2=EX02   PP3=EX03   PF5=PRINT  PRINTER ID
PF7=RELEASE   PF10=RELEASE W/RESTRICTION  PF11=NXT ITM   ENTER=FWD   PF12=BKWD
                                                                   PRODCORP

CONFIDENTIAL

FCI/MOA 0285                    FCI 400084



EX04                    MANUAL VALIDATION REQUISITION

HOLDS: NO     PRIME SHIP: 254    DETAILER: GTBOYL        REP-ORDER: 042B-22257
        SHAFT, TEFZEL SEAL RING,VITON BACK-UP RING, PTFE/COMPOSITE BEARINGS,
        PTFE PACKING, HAST C PACKING BOX PARTS, OXYGEN SERVICE, CL600, HYDRO
        2250 PSI/5 MIN
        A11X7-A*-B*-C*-D1-E*-F1-G*-H1-J2-9A*
        A*
                1EA V110621X062                  RETAINER,GASKET
                1EA 16B1072X032                  BODY,WAFER
        B*
                1EA V111797X072                  RING,RETAINING
                1EA V112408X022                  SCREW,MACH,FLAT HD
        C*
                1EA V131591X012                  KEY
                1EA 16B1318X182                  DISC/SHAFT ASY
        E*
                2EA V131681X012                  BEARING,THRUST
                4EA V171721X012                  BEARING
        G*

PA1/CLEAR=EXIT   PF1=OE00   PF2=EX02   PF3=EX03   PF5=PRINT   PRINTER ID
PF7=RELEASE   PF10=RELEASE W/RESTRICTION   PF11=NXT ITM   ENTER=FWD   PF12=BKWD
                                                                    PRODCOR

CONFIDENTIAL

FCI/MOA 0286

FCI 400085

EX04                     MANUAL VALIDATION REQUISITION

HOLDS: NO        PRIME SHIP: 254      DETAILER: GTBOYL     REP-ORDER: 042B-22257
                1EA V110625X012                   FLANGE,PACKING
                1EA V110626X012                   PACKING FOLLOWER
                2EA V120638X012                   STUD,CONT THD/STOP
                1EA V153098X012                   WASHER, FLAT
                1EA V161530X012                   BOLT,HEX HD
                4EA 1A3539X0022                   WASHER,LOCK,SPLIT
                2EA 1A377235252                   NUT,HEX,HEAVY
                4EA 1A4541X0082                   SCREW,CAP,HEX HD
                1EA 13B2187X042                   PACKING BOX RING

        BXADFJHA0MHZXZWN9J--
    R05 PRICING PER JUSTIN TRAWNY 6/24/98.
    R30 SUPPLY THE FOLLOWING A11 VALVE PER THE MATRIX
    R30 A11-12-151-CB743-31-3-00.

    P04 DEGREASE FOR OXYGEN SERVICE, 10-12" N.S. ROTARY
    P04 VALVE, PER POSI-SEAL STANDARD "CP-200".

PA1/CLEAR=EXIT   PF1=OE00   PF2=EX02   PF3=EX03   PF5=PRINT   PRINTER ID
PF7=RELEASE   PF10=RELEASE W/RESTRICTION   PF11=NXT ITM   ENTER=FWD   PF12=BKWD
                                                                      PRODCOR

                                               **CONFIDENTIAL**

                                    FCI/MOA 0287

                                             **FCI 400086**

EX04                    MANUAL VALIDATION REQUISITION

HOLDS: NO       PRIME SHIP: 254    DETAILER: GTBOYL       REP-ORDER: 042B-22257
   B   FS1031-2334
       TYPE 1031
       MODEL 33 STD, S.R. DBL CYL ACTR,10 PSTN,NITRILE SEAL, SR 80 SPRING,
       NITRILE SEAL, W/TUBING & FITTINGS, BREATHER VENT & REDUCER BUSHING,
       W/MTG KIT, FAIL CLOSED CLOCKWISE, CYLINDER PARALLEL TO PIPELINE
       1031X1-A2-B37-C21-D5-E2-G58-H1-9A2-9B1
       GBJL----------------


   C   FS3720-6/HS/SG
       TYPE 3710 SPOOL VALVE POSITIONER
       HIGH CAPACITY STD TEMP -40 TO +180 DEG F, 90 DEG ROTATION, COVER
       W/INDICATOR,STD TEMP, 0-160PSI/0-1.1MPA/0-11BAR OUTPUT GAUGE, SINGLE
       ACTING,STL PIPING, 4-20 MA INPUT SIGNAL, DIRECT ACTING, TYPE 3720
       3710X1-A3-B1-C1-D1-E1-F1-L3-M15-9A25-9B1-9C2
       TYPE 3722 I/P CONVERTER
       1/2-14 NPT CONNECTION, STD TEMP LUB-1,SEAL-7 FMS 27D1, 0-160 PSI/0-1.1
       MPA/0-11 BAR SUPPLY GAUGE, 0-160 PSI/0-1.1 MPA/0-11 BAR SUPPLY GAUGE,

PA1/CLEAR=EXIT  PF1=OE00  PF2=EX02  PF3=EX03  PF5=PRINT  PRINTER ID
PF7=RELEASE   PF10=RELEASE W/RESTRICTION  PF11=NXT ITM  ENTER=FWD  PF12=BKWD
                                                                   PRODCOR

FCI/MOA 0288


CONFIDENTIAL


FCI 400087

EX04                    MANUAL VALIDATION REQUISITION

HOLDS: NO      PRIME SHIP: 254    DETAILER: GTBOYL        REP-ORDER: 042B-22257
        STD NON-APVD, MAX SUPPLY PRESSURE 150 PSI
        3722X1-A6-B1-D3-D3-E1-F1-9A1-9B1
        DLAJ---------------        DLAM---------------

     D  FSMTG3710-33/F85
        TYPE 3710 SPOOL VALVE POSITIONER
        316 SST TUBING, 316 SST SWAGELOK FITTINGS
        3710X1-G3-H3-N10
        DLAB---------------

     E  FS67AFD-1
        1/4 NPT TYPE 67AFD FILTER/DRIP POT
        ALUMINUM BODY, BRASS DRAIN VALVE, CELLULOSE 40 MICRON FILTER ELEMENT,
        NEOPRENE GASKET, PIPE PLUG, SQ HD, BRASS, DRAIN COCK UNDER INLET
        67AFDX1-A1-B1-C1-D2-F1-9A4
        CCAMAL----AHAY------
     F30 NIPPLE MOUNT 67AFD TO SUPPLY PORT ON

PA1/CLEAR=EXIT  PF1=OE00  PF2=EX02   PF3=EX03  PF5=PRINT  PRINTER ID
PF7=RELEASE   PF10=RELEASE W/RESTRICTION  PF11=NXT ITM  ENTER=FWD  PF12=BKWD
                                                              PRODCOR

FCI/MOA 0289

**CONFIDENTIAL**

**FCI 400088**

EX04                    MANUAL VALIDATION REQUISITION

HOLDS: NO      PRIME SHIP: 254     DETAILER: GTBOYL      REP-ORDER: 042B-22257
    F30 POSITIONER.

    F    *ASCO/24VDC/*F85

        ASCO 3-WAY SOLENOID VALVE NO. 8316G2MB, 24 VDC, BRACKET MTD, 3 WAY
        SOLENOID MOUNTING, 3/8 316 SST TUBING 316 SST SWAGELOK FITTINGS
        ACCESSX42-A*-B*-9A1-9C5
        A*
            1EA 1B6149X0032              BUSHING,PIPE,HEX
            2EA 1C488238982             NIPPLE,PIPE,NPT
            1EA 1M3429X1702             SOLV,ASCO,3-WAY
            1EA 1P506938982             TEE,PIPE
        B*
            1EA 37B4737X022             MTG/ASSY IS8316G301

        DAAU----------------
    F30 MOUNT TEE IN PRESSURE PORT (BETWEEN

PA1/CLEAR=EXIT  PF1=OE00   PF2=EX02   PF3=EX03   PF5=PRINT  PRINTER ID
PF7=RELEASE   PF10=RELEASE W/RESTRICTION  PF11=NXT ITM  ENTER=FWD  PF12=BKWD
                                                            PRODCOR

FCI/MOA 0290

**CONFIDENTIAL**

**FCI 400089**

EX04                    MANUAL VALIDATION REQUISITION

HOLDS: NO      PRIME SHIP: 254    DETAILER: GTBOYL       REP-ORDER: 042B-22257
   F30 3720 OUTPUT & PRESSURE PORT)
   F30 PIPE OUTPUT TO EXHAUST PORT OF SECOND
   F30 SOLENOID (COMPONENT G).
   F30 EXHAUST PORT LEFT OPEN FOR VENT.
   F30 SOLENOID ACTION:
   F30 EITHER SOLENOID ENERGIZED = LOADS 1031
   F30 BOTH SOLENOIDS ENERGIZED  = LOADS 1031
   F30 BOTH SOLENOIDS DE-ENERGIZED = VENTS 1031
   R30 SUPPLY ASCO SOLENOID MODEL #8316G2 24VDC.


   G  *ASCO/24VDC/*F85

       ASCO 3-WAY SOLENOID VALVE NO. 8316G2MB, 24 VDC, BRACKET MTD, 3 WAY
       SOLENOID MOUNTING, 3/8 316 SST TUBING 316 SST SWAGELOK FITTINGS
       ACCESSX42-A*-B*-9A1-9C5
       A*
          1EA 1M3429X1702                     SOLV,ASCO,3-WAY

PA1/CLEAR=EXIT  PF1=OE00  PF2=EX02  PF3=EX03  PF5=PRINT  PRINTER ID
PF7=RELEASE   PF10=RELEASE W/RESTRICTION  PF11=NXT ITM  ENTER=FWD  PF12=BKWD
                                                                 PRODCOR

FCI/MOA 0291


                                                **CONFIDENTIAL**


                                              **FCI 400090**

EX04                    MANUAL VALIDATION REQUISITION

HOLDS: NO        PRIME SHIP: 254    DETAILER: GTBOYL        REP-ORDER: 042B-22257
      B*
            1EA 37B4737X022                    MTG/ASSY IS8316G301


        DAAU----------------
    F30 PIPE PRESSURE PORT TO BRANCH OF TEE
    F30 MOUNTED IN PRESSURE PORT OF FIRST SOLENOID
    F30 (COMPONENT F).
    F30 PIPE OUTPUT TO 1031 ACTUATOR (THRU QRVALVES).
    F30 PIPE EXHAUST PORT TO OUTPUT OF FIRST
    F30 SOLENOID (COMPONENT F).
    R30 SUPPLY ASCO SOLENOID MODEL #8316G2 24VDC.


    H   FSQRVALVE-2/*ELSSTBP

        REXROTH P52935-4 QUICK RELEASE VALVE, WITH BYPASS, 316 SST TUBING, 316
        SWAGELOK FITTINGS
        ACCESSX44-A3-B11-C4-D4


PA1/CLEAR=EXIT  PF1=OE00  PF2=EX02  PF3=EX03  PF5=PRINT  PRINTER ID
PF7=RELEASE   PF10=RELEASE W/RESTRICTION  PF11=NXT ITM  ENTER=FWD  PF12=BKWD
                                                                    PRODCOR


FCI/MOA 0292



CONFIDENTIAL



FCI 400091

EX04                    MANUAL VALIDATION REQUISITION

HOLDS: NO      PRIME SHIP: 254      DETAILER: GTBOYL      REP-ORDER: 042B-22257
        DAAT----------------

    J    FSQRVALVE-2/*ELSSTBP

         REXROTH P52935-4 QUICK RELEASE VALVE, WITH BYPASS, 316 SST TUBING, 316
         SWAGELOK FITTINGS
         ACCESSX44-A3-B11-C4-D4
         DAAT----------------

    K    *STONEL-7
         STONEL POSITION TRANSMITTER MODEL NO. PQ70-E1C, 4-20 MA DC
              1EA 14B6442X422                    SWITCH,PROX,STONEL
         EACM----------------

    L    *MTGSTNL-56
         STONEL MTG KIT 769127
              1EA 14B6442X062                    MTG KIT,STONEL

PA1/CLEAR=EXIT   PF1=OE00   PF2=EX02   PF3=EX03   PF5=PRINT   PRINTER ID
PF7=RELEASE    PF10=RELEASE W/RESTRICTION   PF11=NXT ITM   ENTER=FWD   PF12=BKWD
                                                                    PRODCOR

FCI/MOA 0293

CONFIDENTIAL

FCI 400092

EX04                        MANUAL VALIDATION REQUISITION

HOLDS: NO     PRIME SHIP: 254    DETAILER: GTBOYL      REP-ORDER: 042B-22257
        EACM---------------

        ****** NAMEPLATE 12B8501X0A2              COMP A   ***
        SERIAL NO
        SIZE 12 TYPE A11
        BODY NI ALY
        RATING CL600
        BALL/DISC NI ALY/CT SHAFT NI ALY
        SEAT COMP
        *******************************************************

        ****** NAMEPLATE 12B6401X0A2              COMP B   ***
        SERIAL NO              TYPE 1031
        PRESS UNITS PSI SIZE 33
        INITIAL SETTING N/A OPER RANGE 80-125
        ACTION FC ROTATION N/A DEG
        *******************************************************

PA1/CLEAR=EXIT  PF1=OE00   PF2=EX02  PF3=EX03  PF5=PRINT  PRINTER ID
PF7=RELEASE  PF10=RELEASE W/RESTRICTION  PF11=NXT ITM  ENTER=FWD  PF12=BKWD
                                                            PRODCOR

FCI/MOA 0294


CONFIDENTIAL


FCI 400093

EX04                    MANUAL VALIDATION REQUISITION

HOLDS: NO    PRIME SHIP: 254    DETAILER: GTBOYL        REP-ORDER: 042B-22257


        ****** NAMEPLATE 12B4505X0A2            COMP C   ***
        SERIAL NO
        TYPE 3720
        INPUT 4 TO 20
        UNITS MA
        ******************************************************

        ****** NAMEPLATE 14B0227X0A2            COMP C   ***
        SERIAL NO
        ******************************************************




PA1/CLEAR=EXIT  PF1=OE00  PF2=EX02  PF3=EX03  PF5=PRINT  PRINTER ID
PF7=RELEASE  PF10=RELEASE W/RESTRICTION  PF11=NXT ITM  ENTER=FWD  PF12=BKWD
EX004P-006 END OF DATA                                            PRODCOF

FCI/MOA 0295

CONFIDENTIAL

FCI 400094

# EXHIBIT 41

HV0629 PV0683 Need Ref Seat

Teffzel is Not Compatible w/oxygen.

Per Dae Wheaton  860-599-7391

042R-22584-1

Ket-F Soft Seal Sign warnings

DEPOSITION
EXHIBIT
Olsen 137
12-12-03

VUE
TO EVERY LOOP
FISHER-ROSEMOUNT

FCI/MOA 0296

NEC178

| Assignee | Date | Category |
|---|---|---|
| NW | Jul 21,1998 | Order |

ob morrison 042B-22584-1 item 3 4" 600 A11 for praxair, hastelloy C body, tefzel seal, oxygen cleaned. I called bert cappellini & he verified it's for oxygen service. I told him Tefzel is no good & i would change to Kel-f soft seal.

Bert says 042B-22257 item 12 is 12" 600 for same application. bob morrison will do change order on it.



DEPOSITION EXHIBIT
Olson 153
12-15-03
PENGAD 800-631-6989

CONFIDENTIAL

FCI/MOA 0296A

FCI 400004

# EXHIBIT 42

03/19/04  15:27 FAX 802 888 5770        VT. RECORDS CTR.                    ☑018
10/28/98   08:19  FAX 515 754 3721       FISHER ACCTG                   ☑003/004

ORIGINAL INVOICE              Ⓚ        **Fisher Controls International, Inc.**    **FISHER**

Customer Order Number | Fisher/Agent Order Number | Invoice Date | Invoice Number
--- | --- | --- | ---
815F5206P | 042B-22257 | 10/23/98 | 6058855

PAGE    1

Sold To
PRAXAIR INC.
INVOICE AUDITING DEPT.            REMIT TO:
PO BOX 808                        FISHER CONTROLS INTL INC
TONAWANDA, NY                     DEPT 905376
                                  CHARLOTTE
              141510808           NC  28290-5376

Ship To
PRAXAIR, INC.                  TERMS:
C/O RIX INDUSTRIES, INC.       IN U.S.
MARK: "FOR USE ON P.O. 815C1354"  NET 030 DAYS      FUNDS
4900 INDUSTRIAL WAY            F.O.B. NORTH STONINGTON, CT
BENICIA, CA
                94510                         Date Shipped
                                        Mo. | Day | Year
Via  PRESTON TRUCKING       PPD FRT ALLW    10 | 23 | 98

| Item No. | Description | Quantity | Unit Price | Net Amount |
| --- | --- | --- | --- | --- |
| 000010 | TAG 83FV0600<br>TYPE 8532 CONTROL VALVE ASSEMBLY SIZE 20,<br>TYPE DEGREASING, TYPE 1031, TYPE SPEC<br>COMPONENT FISHER NON EM, TYPE 3720, TYPE<br>3722, TYPE 3710 MTG PTS, TYPE 67AFD REGULATOR<br>SIZE 1/4, TYPE STONEL LIMIT SWITCH & MTGS,<br>TYPE STONEL LIMIT SWITCH & MTGS, TYPE ASCO<br>SOLENOID, TYPE ASCO SOLENOID<br>S/N 14989527 | 1 | 13665.96 | 13665.96 |
| | FISHER CATALOG NUMBER<br>FS8532-424/*OXY<br>PSDG-046<br>FS1031-168<br>*MTG<br>FS3720-6/HS<br>FSMTG3710-33/F85<br>FS67AFD-1<br>*STONEL-7<br>*MTGSTNL-56<br>*ASCO/24VDC/*F85<br>*ASCO/24VDC/*F85 | | | |
| | PRO NBR: PRES<br>HS# 8481.80.9035          10/<br>                    VALVE & PNEUMATIC ACTUATOR | | | |
| 000012 | TAG 83HV0629<br>TYPE A11 CONTROL VALVE ASSEMBLY SIZE 12, TYPE<br>DEGREASING, TYPE 1031, TYPE 3720, TYPE 3722<br>TYPE 3710 MTG PTS, TYPE 67AFD REGULATOR SIZE<br>1/4, TYPE ASCO SOLENOID, TYPE ASCO SOLENOID,<br>TYPE QUICK RELEASE VALVE, TYPE QUICK RELEASE<br>VALVE, TYPE STONEL LIMIT SWITCH & MTGS, TYPE<br>STONEL LIMIT SWITCH & MTGS<br>S/N 14989528 | 1 | 32151.13 | 32151.13 / |
| | FISHER CATALOG NUMBER<br>*A11<br>PSDG-063<br>FS1031-2334<br>FS3720-6/HS/SG<br>FSMTG3710-33/F85<br>FS67AFD-1<br>*ASCO/24VDC/*F85<br>*ASCO/24VDC/*F85<br>FSQRVALVE-2/*ELSSTBP<br>FSQRVALVE-2/*ELSSTBP<br>*STONEL-7<br>*MTGSTNL-56 | | | |

DEPOSITION
EXHIBIT
Okon/72
3300-1 KF

**INVOICE CONTINUED**

the risk of loss for export sales, except as noted below, the legal title and risk of loss to the goods shall remain with Seller and the goods except the foreign port of entry regardless of how based or shipped, whether FOB, FAS, CIF or otherwise. However, for sales to Canada title to goods sold to buyers in the United States, except for buyers in Canada, and for sales in Alaska, Hawaii, and other U.S. possessions and territories and the risk of loss shall pass upon delivery of the goods to a point of export within the United States. Buyer, if buyer intends to resell in Alaska, on an actual buyer, and product by product basis, title and risk of loss shall pass to Buyer at the time Buyer's agent shall be ready by naming a "B" special not the passport express on the carrier and product product basis, title and risk of loss pass at the product, if buyer, that goods sold remain title shall pass on delivery to the forwarding agent. Buyer assumes all responsibility for all matters within the carrier on the carrier and the risk of loss, including taxes and duties, insurance, if buyer for delivery and all acts incurred, buyer agrees to hold seller harmless and to protect the goods remain title responsibility, handling and warehousing, loading, dustage, demurrage, unloading, warehousing.

No credit will be allowed for material returned without our permission. This material was carefully packed and secured.

**DIRECT ALL INQUIRIES TO A FISHER REPRESENTATIVE AT: 515-754-3141**

FCI/MOA 0297

PRA 10968

# EXHIBIT 43

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| RONALD W. OLSON, and<br>CAROL OLSON, his wife, | ) | C. A. No. _____ |
| | ) | |
| Plaintiffs, | ) | Non-Arbitration Case |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| MOTIVA ENTERPRISES L.L.P.; BATTAGLIA | ) | |
| MECHANICAL, INC.; FISHER CONTROLS | ) | |
| INTERNATIONAL, INC.; | ) | |
| HYDRO CLEAN CO., INC.; JJ WHITE, INC.; | ) | |
| NORTHEAST CONTROLS, INC.; | ) | |
| PARSONS ENERGY AND CHEMICALS | ) | |
| GROUP, INC.; PRAXAIR, INC.; TEXACO | ) | |
| AVIATION PRODUCTS LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiffs Ronald W. Olson and Carol Olson, by and through their undersigned attorneys, hereby allege upon knowledge, information and belief:

## Parties

1.  Plaintiffs Ronald W. Olson and Carol Olson are residents of the State of Delaware. At all times relevant hereto, Mr. Olson was an employee of Conectiv Operating Services Co. ("Conectiv") and was married to Mrs. Olson.

2.  Defendant Motiva Enterprises, L.L.C. ("Motiva") is a Delaware Limited Liability Company and owns and/or operates a power plant located on River Road, Route 9, Delaware City, Delaware 19706 (the "Plant").

3.  Defendant Battaglia Mechanical, Inc ("Battaglia") is a Delaware corporation with its principal headquarters at 11 Industrial Boulevard, New Castle, Delaware 19720.

FCI/MOA 0298

4.     Defendant Fisher Controls International, Inc. ("Fisher") is a Delaware corporation, and, upon information and belief, its principal headquarters is located at 205 South Center Street, Marshalltown, Iowa 50158. Fisher manufactures control valves used in oxygen systems, which are distributed internationally.

5.     Upon information and belief, Defendant Hydro Clean Co., Inc. ("Hydro") is a Delaware corporation.

6.     Upon information and belief, Defendant JJ White, Inc. ("JJ White") is a Delaware corporation with its principal headquarters located at 5500 Bingham Street, Philadelphia, Pennsylvania 19120. JJ White is engaged in the business of, among other things, general construction, construction management and mechanical construction.

7.     Defendant Northeast Controls, Inc. ("Northeast") is a distributor of valves manufactured by Fisher. Northeast has offices located at 6000 N. Bailey Avenue, suite 2B, Amherst, NY 14226.

8.     Defendant Parsons Energy and Chemicals Group, Inc. ("Parsons") is a Delaware Corporation, and, upon information and belief, its principal headquarters is located at 2675 Morgantown Road, Reading, PA 19611. Parsons is engaged in the business of designing, engineering, and managing the construction of institutional facilities. At all relevant times hereto, Parsons was hired to build, design, engineer, and manage the construction of the Plant.

9.     Defendant Praxair, Inc. ("Praxair") is a publicly traded company engaged in the business of supplying atmospheric, process and specialty gases, high-performance coatings, and related technologies. Upon information and belief, Praxair's principal headquarters is located at 39 Old Ridgebury Road, Danbury, Connecticut 06810-5113. Praxair also maintains lab facilities in Tonawanda, New York.

FCI/MOA 0299

10.    Defendant Texaco Aviation Products L.L.C. ("Texaco") is a Delaware Limited Liability Company.

## Background

11.    In May 2000, certain of the Defendants were engaged in the construction and operation of a "re-powering project" at the Plant (the "Project"). The Project included, among other things, the calibration of an oxygen-flow transmitter, which is utilized in the process of transferring 99.99% pure oxygen gas from a base load oxygen compressor ("BLOC") in a air separation unit ("ASU") through a series of control valves and pipes to a gassifier (The ASU and BLOC, together with all interconnected, vents, pipes, valves and gassifier are hereafter referred to collectively as the "Oxygen System" or "System").

12.    On May 20, 2000, a decision was made to calibrate the Oxygen System. After initiation of the calibration, a control room operator at the Plant attempted to operate the BLOC discharge control valve (the "Valve"). Mr. Olson responded to a call from the control room operator to check the Valve, which was not responding. Mr. Olson was asked to check the Oxygen System to ensure that it was operating properly. While checking the Oxygen System, an explosion occurred and Mr. Olson was engulfed in flames. As a result of the explosion, Mr. Olson sustained severe and permanent injuries, including but not limited to, severe burns, scarring, disfigurement, and pain and suffering. Mr. Olson has undergone several operations, has incurred medical expenses, and has lost significant time from work resulting in a loss of wages.

13.    Upon information and belief, and at all times relevant hereto, Defendant Texaco participated in the development of operating procedures and design of the Oxygen System and Plant. At all relevant times hereto, Texaco had a duty to ensure that the operating procedures and design of the System and Plant were properly designed and developed. Texaco also had a

duty of reasonable care to ensure that the Oxygen System was properly maintained and cleaned and that the operating procedures were safe.

14.    Upon information and belief, and at all times relevant hereto, Defendant Motiva owned the Plant and also supplied specifications and requirements in connection with the Plant and/or System. At all times relevant hereto, Motiva had a duty to ensure that the System was safe and properly operated, maintained and cleaned.

15.    Upon information and belief, and at all times relevant hereto, Defendant Parsons was engaged to, among other things, engineer, design, build and/or procure some or all of the System. At all times relevant hereto, Parsons had a duty to ensure that the System was properly designed and built and also that the System was safe and properly operated, maintained and cleaned.

16.    Upon information and belief, and at all times relevant hereto, Defendant Praxair was engaged to, among other things, engineer, design, build and/or procure some or all of the System. At all times relevant hereto, Praxair was engaged to support operations regarding the System. At all times relevant hereto, Praxair had a duty to ensure that the System was safe and properly operated, maintained and cleaned.

17.    Upon information and belief, and at all times relevant hereto, Defendant Fisher designed, manufactured, and/or distributed the Valve.

18.    Upon information and belief, and at all times relevant hereto, Defendant Northeast distributed the Valve.

19.    Upon information and belief, and at all times relevant hereto, Defendant Battaglia was engaged to perform services on the System so that the System could be properly maintained and cleaned.

FCI/MOA 0301

4

20.    Upon information and belief, and at all times relevant hereto, Defendant JJ White was engaged to perform services on the System.

21.    Upon information and belief, and at all times relevant hereto, Defendant Hyrdro was engaged to perform cleaning and maintenance services on the System.

## Count I
### Negligence – Texaco

22.    At all times relevant hereto, Defendant Texaco owed a duty of reasonable care to Mr. Olson, which duty Defendant Texaco, itself, and through its agents, servants, and/or employees, breached by, among other things, negligently developing and designing the operating procedures, the Oxygen System and/or the Plant, and negligently maintaining and/or cleaning the System. As a direct and proximate result of Defendant Texaco's negligence, Mr. Olson suffered and continues to suffer great pain, both physically and mentally, and has suffered pecuniary loss, including, but not limited to, lost earnings, medical bills, and other damages permitted by law.

## Count II
### Negligence – Motiva

23.    At all times relevant hereto, Defendant Motiva owed a duty of reasonable care to Mr. Olson, which duty Defendant Motiva, itself, and through its agents, servants, and/or employees, breached by, among other things, negligently supplying specifications and requirements in connection with the Plant and/or System and negligently maintaining and/or cleaning the Compressor. As a direct and proximate result of Defendant Motiva's negligence, Mr. Olson suffered and continues to suffer great pain, both physically and mentally, and has suffered pecuniary loss, including, but not limited to, lost earnings, medical bills, and other damages permitted by law.

FCI/MOA 0302

## Count III
### Negligence – Parsons

24.    At all times relevant hereto, Defendant Parsons owed a duty of reasonable care to Mr. Olson, which duty Defendant Parsons, itself, and through its agents, servants, and/or employees, breached by, among other things, negligently engineering, designing, building and/or procuring some or all of the System and negligently maintaining and/or cleaning the System. As a direct and proximate result of Defendant Parsons' negligence, Mr. Olson suffered and continues to suffer great pain, both physically and mentally, and has suffered pecuniary loss, including, but not limited to, lost earnings, medical bills, and other damages permitted by law.

## Count IV
### Negligence – Praxair

25.    At all times relevant hereto, Defendant Praxair owed a duty of reasonable care to Mr. Olson, which duty Defendant Praxair, itself, and through its agents, servants, and/or employees, breached by, among other things, negligently engineering, designing, building and/or procuring some or all of the System and negligently maintaining operating and/or cleaning the System. As a direct and proximate result of Defendant Praxair's negligence, Mr. Olson suffered and continues to suffer great pain, both physically and mentally, and has suffered pecuniary loss, including, but not limited to, lost earnings, medical bills, and other damages permitted by law.

## Count V
### Negligence – Fisher

26.    At all times relevant hereto, Defendant Fisher owed a duty of reasonable care to Mr. Olson, which duty Defendant Fisher, itself, and through its agents, servants, and/or employees, breached by, among other things, negligently designing, manufacturing, and/or distributing the Valve. As a direct and proximate result of Defendant Fisher's negligence, Mr. Olson suffered and continues to suffer great pain, both physically and mentally, and has suffered

6

pecuniary loss, including, but not limited to, lost earnings, medical bills, and other damages permitted by law.

**Count VI**
**Negligence – Northeast**

27.    At all times relevant hereto, Defendant Northeast owed a duty of reasonable care to Mr. Olson, which duty Defendant Northeast, itself, and through its agents, servants, and/or employees, breached by, among other things, negligently designing, manufacturing, and/or distributing the Valve.  As a direct and proximate result of Defendant Northeast's negligence, Mr. Olson suffered and continues to suffer great pain, both physically and mentally, and has suffered pecuniary loss, including, but not limited to, lost earnings, medical bills, and other damages permitted by law.

**Count VII**
**Negligence – Battaglia**

28.    At all times relevant hereto, Defendant Battaglia owed a duty of reasonable care to Mr. Olson, which duty Defendant Northeast, itself, and through its agents, servants, and/or employees, breached by, among other things, negligently maintaining and cleaning the System. As a direct and proximate result of Defendant Battaglia's negligence, Mr. Olson suffered and continues to suffer great pain, both physically and mentally, and has suffered pecuniary loss, including, but not limited to, lost earnings, medical bills, and other damages permitted by law.

**Count VIII**
**Negligence – JJ White**

29.    At all times relevant hereto, Defendant JJ White owed a duty of reasonable care to Mr. Olson, which duty Defendant Northeast, itself, and through its agents, servants, and/or employees, breached by, among other things, negligently maintaining and cleaning the System. As a direct and proximate result of Defendant JJ White's negligence, Mr. Olson suffered and

FCI/MOA 0304

continues to suffer great pain, both physically and mentally, and has suffered pecuniary loss, including, but not limited to, lost earnings, medical bills, and other damages permitted by law.

## Count IX
### Negligence – Hydro

30.    At all times relevant hereto, Defendant Hydro owed a duty of reasonable care to Mr. Olson, which duty Defendant Northeast, itself, and through its agents, servants, and/or employees, breached by, among other things, negligently maintaining and cleaning the System. As a direct and proximate result of Defendant Hydro's negligence, Mr. Olson suffered and continues to suffer great pain, both physically and mentally, and has suffered pecuniary loss, including, but not limited to, lost earnings, medical bills, and other damages permitted by law.

## Count X
### Breach of Warranty – 6 Del. C. § 2-314 – Northeast

31.    At all times relevant hereto, Defendant Northeast was a merchant within the meaning of 6 Del. C. § 2-104. Defendant Northeast sold the Valve, which Valve at the time of the sale, was defective. Mr. Olson sustained significant injuries, which injuries were caused by Defendant Northeast's breach of the warranty of merchantability and the defective condition of the Valve. Defendant Northeast has notice of Mr. Olson's injuries and the damage caused by the defective Valve.

## Count XI
### Breach of Warranty – 6 Del. C. § 2-314 – Fisher

32.    At all times relevant hereto, Defendant Fisher was a merchant within the meaning of 6 Del. C. § 2-104. Defendant Fisher manufactured and distributed the Valve. The Valve was defective when it was distributed. Mr. Olson sustained significant injuries, which injuries were caused by Defendant Fisher's breach of the warranty of merchantability and the defective

condition of the Valve. Defendant Fisher has notice of Mr. Olson's injuries and the damage

caused by the defective Valve.

### Count XII
### Breach of Warranty – 6 Del. C. § 2-315 – Northeast

33.    Upon information and belief, at all times relevant hereto, Defendant Northeast

had reason to know the purpose for which the Valve was required and that the buyer of the Valve

was relying on Northeast's skill or judgment to select or furnish a suitable valve. The Valve was

not fit for the purpose for which it was intended. Mr. Olson sustained significant injuries, which

injuries were caused by Defendant Northeast's breach of the implied warranty of fitness.

### Count XIII
### Breach of Warranty – 6 Del. C. § 2-315 – Fisher

34.    Upon information and belief, at all times relevant hereto, Defendant Fisher had

reason to know the purpose for which the Valve was required and that the buyer of the Valve

was relying on Fisher's skill or judgment to select or furnish a suitable valve. The Valve was not

fit for the purpose for which it was intended. Mr. Olson sustained significant injuries, which

injuries were caused by Defendant Fisher's breach of the implied warranty of fitness.

### Count XIV
### Strict Liability – Northeast

35.    In the alternative, Defendant Northeast distributed the Valve to Fisher, which

Valve at the time of the distribution to Fisher, was defective. Mr. Olson sustained significant

injuries, which injuries were caused by the defective condition of the Valve.

FCI/MOA 0306

### Count XV
### Strict Liability – Fisher

36.   In the alternative, Defendant Fisher distributed the Valve, which Valve at the time of the distribution, was defective.  Mr. Olson sustained significant injuries, which injuries were caused by the defective condition of the Valve.

### Count XVI
### Loss of Consortium

37.   As a direct and proximate result of the aforementioned injuries sustained by her husband, Ms. Olson was and may in the future continue to be deprived of the consortium, care, comfort and society of her husband in various degrees as a result of Mr. Olson's injuries.

### CONCLUSION

WHEREFORE, plaintiffs demand judgment against the defendants, jointly and severally, for all damages permitted by law, together with reasonable attorneys' fees, interest, and costs.

ASHBY & GEDDES

Randall E. Robbins
Joseph C. Handlon
ASHBY & GEDDES
222 Delaware Avenue
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888

*Attorneys for Ronald and Carol Olson*

Dated:  April 24, 2002

109134.1

FCI/MOA 0307

10

# EXHIBIT 44

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NORTHEAST CONTROLS, INC.  : CIVIL ACTION
3 Enterprise Avenue     :
Clifton Park       :
New York, NY 12065    : No.: 1:06-CV-00412 (SLR)
           :
           :
ST. PAUL MERCURY INS. CO.  :
385 Washington Street    :
St. Paul, MN 55102     :
     Plaintiffs,   :
           :
           :
    v.       :
           :
FISHER CONTROLS     :
INTERNATIONAL, LLC    :
205 S. Center Street     :
Marshaltown, Iowa 50158   :
     Defendant.  :

## INTERROGATORIES OF PLAINTIFFS, NORTHEAST CONTROLS, INC. AND ST. PAUL MERCURY INSURANCE COMPANY DIRECTED TO DEFENDANT, FISHER CONTROLS INTERNATIONAL, LLC

Plaintiffs, Northeast Controls, Inc. ("NEC") and St. Paul Mercury Ins. Co. ("St. Paul"), by

their attorneys, Marshall, Dennehey, Warner, Coleman & Goggin, hereby direct the following

Interrogatories to Defendant, Fisher Controls International, LLC for answer under the Federal

Rules of Civil Procedure:

  1. Identify by name, address, and telephone number all persons who participated in any

way in answering or providing information to answer these Interrogatories.

FCI/MOA 0308

2.   Identify by name, address and telephone number all persons whom you will call as fact witnesses at the trial of this matter or from whom  you will offer any evidence by way of statement, affidavit, or otherwise in support of or in opposition to dispositive motions, and as to each person so identified, state the subject matter and a summary of the testimony or information they will provide.

3.   Identify by name, address and telephone number all persons whom you expect to call as expert witnesses at the trial of this matter, and state as to each such expert the subject matter upon which they will testify, a summary of the facts and opinions to which they will testify, and a summary of the grounds for each such opinion, and provide the complete qualifications of each such expert, and identify all discoverable information regarding each such expert under the Federal Rules of Civil Procedure.

FCI/MOA 0309

4. State the factual and legal basis for each of your affirmative defenses, including:

    a. That Plaintiffs' damages, if any, should be barred or reduced proportionately under the doctrines of contributory negligence and/or comparative fault.

    b. That the various causes of action alleged in the Complaint are barred in whole or in part by the statute of limitations.

    c. That the various causes of action alleged in the Complaint are barred in whole or in part by the principles of issue and/or claim preclusion.

    d. That Plaintiff, Northeast Controls, failed to mitigate its damages, if any.

    e. That Defendant, Fisher, is entitled to recoupment in the form of a reduction in the amount of Plaintiff's recovery in this lawsuit, if any, for the amount of attorney's fees and costs Fisher incurred in defending the underlying actions.

5. Identify by name, address and telephone number all persons who had any role in or contributed in any way to the preparation or drafting of the REPRESENTATIVE AGREEMENT between Fisher Controls International and Northeast Controls, Inc., a copy of which was attached to paragraph 10 of the Complaint and explain the role or contribution of each person.

FCI/MOA 0310

3

6.   Explain the basis for your denial in paragraph 10 of the Answer to the  Complaint that the document attached as Exhibit "A" to the Complaint is the entire Representative Agreement.

7.   Identify all companies and other entities with whom any Fisher Company has entered into a REPRESENTATIVE AGREEMENT or similar agreement to provide services the same as or similar to the services provided by Northeast Controls under its representative agreement with Fisher.

8.   State whether any other company or entity having a representative agreement with Fisher or any Fisher company has made any request or claim for defense or indemnification under a representative agreement or any similar agreement and state the position taken by Fisher or any such Fisher company with respect to each such claim or request.

FCI/MOA 0311

9.  Paragraph 38 of the Complaint states in its entirety as follows: "Both Great American and the Olsons alleged in their respective complaints that the Fisher valve was defective." State the basis for your response to this allegation that "Northeast Controls' characterization of those complaints is partial and misleading."

10. Identify any claim you made or any evidence you adduced during any of the underlying cases that the fire at the Delaware City Power Plant or resulting alleged injuries or damages were caused by Northeast's negligence, as you stated in your response to paragraph 41 of the Complaint.

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN

THOMAS P. WAGNER, ESQUIRE

Dated: March 1, 2007

\01_21\LIAB\TPWAGNER\LLPG\585851\NAMEDICI\15000\00999

5

# EXHIBIT 45

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NORTHEAST CONTROLS, INC.,<br>3 Enterprise Avenue<br>Clifton Park<br>New York, NY 12065<br><br>ST. PAUL MERCURY<br>INSURANCE COMPANY<br>385 Washington Street<br>St. Paul, MN 55102<br><br>          Plaintiffs,<br><br>v.<br><br>FISHER CONTROLS<br>INTERNATIONAL, LLC<br>205 S. Center Street<br>Marshalltown, Iowa 50158<br><br>          Defendant. | CIVIL ACTION<br><br>NO. 1:06-CV-00412 (SLR) |

### INTERROGATORIES OF PLAINTIFFS, NORTHEAST CONTROLS, INC. AND ST. PAUL MERCURY INSURANCE COMPANY DIRECTED TO DEFENDANT, FISHER CONTROLS INTERNATIONAL, LLC AND FISHER'S ANSWERS THERETO

### GENERAL ANSWERS AND OBJECTIONS

Defendant Fisher Controls International, LLC ("Fisher") makes the following general objections to Plaintiffs' First Interrogatories and any subsequently propounded Interrogatories. Fisher reserves the right to supplement, amend, or qualify its general objections.

1. Fisher is conducting a due and diligent search in connection with plaintiff's discovery requests. Further, Fisher is making reasonable inquiry of individuals expected to be aware of responsive information. Fisher objects to conducting any further company-wide searches on the

ground that it would be unduly burdensome, oppressive, and expensive to conduct additional searches.

2. Fisher objects to Plaintiffs' discovery requests to the extent they attempt to impose obligations on Fisher different from or greater than that required by the Federal Rules of Civil Procedure.

3. Fisher objects to Plaintiffs' discovery requests to the extent they demand information protected by the attorney-client privilege, the work-product doctrine, or any other privilege or immunity.

4. Fisher objects to Plaintiffs' discovery requests to the extent they demand information that is not in the possession, custody, or control of Fisher.

5. Fisher objects to Plaintiffs' discovery requests to the extent they are overly broad and unduly burdensome, do not seek information relevant to the subject matter of the pending action, or are not reasonably calculated to lead to the discovery of admissible evidence.

6. By making the responses herein, Fisher does not concede that evidence produced in these responses is relevant to this action. Fisher expressly reserves the right to object to further discovery into the subject matter of any of these responses.

7. Fisher generally objects to any discovery request that is cumulative, repetitive or covered by other discovery requests.

8. Fisher's investigation into the factual background of the matters alleged in this action is ongoing and incomplete at this time. Accordingly, these responses reflect only Fisher's current knowledge of the facts to date. Fisher therefore reserves its right to supplement, amend, or modify its responses as its investigation continues and as discovery proceeds, and to rely on any such information or evidence discovered after the time of these responses, at any time up to and including trial. Further, no inference as to the existence of any responsive documents or other evidence should be made from the assertion of any objection to any Request for Production.

10. Fisher incorporates these general objections in response to each of plaintiff's discovery requests, where required.

Without waiving any of the General Objections and subject to them as well as any specific objections set forth below, Fisher responds to individual interrogatories as set forth below.

      1.     Identify by name, address, and telephone number all persons who participated in any way in answering or providing information to answer these Interrogatories.

FCI/MOA 0314

**RESPONSE:** Meredith Miller, Fisher Controls International, Inc., with assistance of counsel. Mr. Miller may be contacted through Riddell Williams P.S., 206-624-3600.

2.    Identify by name, address and telephone number all persons whom you will call as fact witnesses at the trial of this matter or from whom you will offer any evidence by way of statement, affidavit, or otherwise in support of or in opposition to dispositive motions, and as to each person so identified, state the subject matter and a summary of the testimony or information they will provide.

**RESPONSE:** Fisher objects to this Interrogatory to the extent that it calls for information protected by the work-product doctrine. Subject to and without waiving its objections, Fisher directs plaintiff to Fisher's initial disclosures, which identify persons who may have knowledge relating to the ordering of the Fisher valve at issue in this litigation and the incident of May 20, 2000, at the Delaware City Power Plant ("the Incident"). Discovery is continuing and Fisher will supplement its response to this Interrogatory as additional information become available. Further, Fisher will provide witness and exhibit lists in accordance with the Court's scheduling order and the Federal Rules of Civil Procedure.

In addition, Fisher identifies Bruno Karcher. On information and belief, Mr. Karcher will testify that he met with plaintiff's counsel, Thomas Wagner, and informed Mr. Wagner that he (Mr. Karcher) had formed the opinion that the fire at the Delaware City Power Plant on May 20, 2000, was caused by the negligence of plaintiff Northeast Controls, Inc.

Discovery is continuing. Fisher will supplement its Response to this Interrogatory as additional information becomes available.

3.    Identify by name, address and telephone number all persons whom you expect to call as expert witnesses at the trial of this matter, and state as to each such expert the subject matter upon which they will testify, a summary of the facts and opinions to which they will testify, and a summary of the grounds for each such opinion, and provide the complete qualifications of each such expert, and identify all discoverable information regarding each such expert under the Federal Rules of Civil Procedure.

RESPONSE: Fisher objects that this Interrogatory calls for information protected by the work-product doctrine. Fisher will disclose its expert witnesses in accordance with the Court's scheduling order and the Federal Rules of Civil Procedure..

4.    State the factual and legal basis for each of your affirmative defenses, including:

a.    That Plaintiffs' damages, if any, should be barred or reduced proportionately under the doctrines of contributory negligence and/or comparative fault.

RESPONSE: Plaintiff Northeast Controls was negligent in placing the order for the valve at issue in this litigation. Northeast Controls' employee, Albert Cappellini, placed an order with Fisher for a valve whose materials of construction varied significantly from the purchase order placed by Praxair and accepted by Northeast Controls. That negligence resulted in Northeast Controls being identified by all of the plaintiffs in the underlying actions as responsible for the Incident. Consequently, that negligence caused all of plaintiffs' alleged losses at issue in this matter. Under either Missouri or Delaware law, Northeast Controls' negligence acts to bar or reduce any potential recovery by plaintiffs.

FCI/MOA 0316

Discovery is continuing. Fisher will supplement its Response to this Interrogatory as additional information becomes available.

b.    That the various causes of action alleged in the Complaint are barred in whole or in part by the statute of limitations.

**RESPONSE:** Plaintiff Northeast Controls was aware by October 29, 2001, that Fisher would not defend Northeast Controls against its own negligence, which negligence is described in part above. Northeast Controls failed to file a timely complaint seeking to compel Fisher to accept Northeast Controls' tender of defense.

Discovery is continuing. Fisher will supplement its Response to this Interrogatory as additional information becomes available.

c.    That the various causes of action alleged in the Complaint are barred in whole or in part by the principles of issue and/or claim preclusion.

**RESPONSE:** In the four Underlying Actions (<u>Olson</u>, <u>Praxair</u>, <u>Motiva</u>, and <u>Great American</u>), plaintiff Northeast Controls asserted claims for indemnification against Fisher. All four of those actions were dismissed. Plaintiff Northeast Controls stipulated to the dismissal of the <u>Praxair</u>, <u>Motiva</u>, and <u>Great American</u> actions. Those actions are final. Widely recognized principles of issue and/or claim preclusion bar Northeast Controls' claims arising out of those three actions. Further, widely recognized principles of the law of subrogation bar plaintiff St. Paul's claims arising out of those three actions.

FCI/MOA 0317

Discovery is continuing. Fisher will supplement its Response to this Interrogatory as additional information becomes available.

      d.     That Plaintiff, Northeast Controls, failed to mitigate its damages, if any.

**RESPONSE:** Plaintiffs have alleged that they paid $501, 000 to settle the claims brought against plaintiff Northeast Controls in the <u>Great American</u> and <u>Praxair</u> actions. Months before plaintiffs settled those two actions, Fisher's attorneys had provided Northeast Controls with copies of Fisher's own motions for summary judgment in the underlying actions, which motions had resulted in the voluntary dismissal of the <u>Motiva</u> action and the <u>Great American</u> action and in the Court's granting summary judgment in the <u>Praxair</u> action. Despite having copies of that briefing in hand, Northeast Controls did not file a motion for summary judgment in any of those actions. If plaintiffs actually believed that Northeast Controls had no independent exposure in either of those actions, then their decision to settle those actions for more than half a million dollars—rather than file motions for summary judgment that had already proved successful on all of the claims asserted against Fisher—was wasteful.

      Further, plaintiffs chose to retain three experts—Irvin Glassman, David Pope, and Gerard Muller—all of whom focused on the role of the valve in causing the fire at issue in the underlying actions. Two of those experts—Pope and Muller—contributed largely duplicative reports. Neither of those experts offered an opinion exonerating, in any way, Northeast Controls' negligence in transmitting the valve specifications from Praxair to Fisher. If plaintiffs actually believed that Northeast Controls had no independent exposure in any of the four underlying

FCI/MOA 0318

actions, then its decision to retain three experts on the issue of causation—rather than the issue of Northeast Controls' adherence to the standard of duty to which it should be held—was wasteful.

Discovery is continuing. Fisher will supplement its Response to this Interrogatory as additional information becomes available.

      e.     That Defendant, Fisher, is entitled to recoupment in the form of a reduction in the amount of Plaintiffs recovery in this lawsuit, if any, for the amount of attorney's fees and costs Fisher incurred in defending the underlying actions.

**RESPONSE:** The basis of Fisher's claim for recoupment is set forth in detail in Fisher's counterclaim. Responding further, Fisher states that, within three days of the Incident, plaintiff Northeast Controls, Inc., knew or should have known that it had failed to provide to Fisher the valve specifications that plaintiff Praxair, Inc., had provided to Northeast Controls. Even before the first of the underlying actions was filed, various parties had focused on Northeast Controls' negligence in transmitting Praxair's specifications to Fisher. Before the complaints were filed, one of the leading experts in oxygen-service fires, Wendell Hull and Associates, had concluded that the fire may have been caused by the use of materials in the Valve that did not match the materials specified in Praxair's purchase order. All four of the complaints filed in the underlying actions focused—in regard to both Fisher's and Northeast Controls' liability—on the discrepancies in the material specifications, which discrepancies resulted from Northeast Controls' negligence. Further, none of the parties in the underlying actions ever identified any defect in the valve at issue except for the discrepancies in the material specifications, all of which discrepancies were the responsibility of Northeast Controls.

FCI/MOA 0319

Under the terms of its agreement with Fisher, Northeast Controls was obligated to maintain documentation. Despite that agreement, Northeast Controls failed to maintain documentation showing the terms of the agreement that Northeast Controls negotiated with Praxair while it (i.e., Northeast Controls) was acting on behalf of Fisher.

Discovery is continuing. Fisher will supplement its Response to this Interrogatory as additional information becomes available.

5.     Identify by name, address and telephone number all persons who had any role in or contributed in any way to the preparation or drafting of the REPRESENTATIVE AGREEMENT between Fisher Controls International and Northeast Controls, Inc., a copy of which was attached to paragraph 10 of the Complaint and explain the role or contribution of each person.

**RESPONSE:** Fisher objects that this Interrogatory is not reasonably calculated to lead to the discovery of evidence relevant to the claims and defenses in this lawsuit. Fisher also objects to this Interrogatory to the extent that it calls for information protected by the attorney-client privilege or the work product doctrine. Fisher also objects that the copy of the Representative Agreement attached to plaintiffs' Complaint was incomplete. Subject to and without waiving its objections, Fisher states that the Representative Agreement was negotiated between Fisher and Northeast Controls. Persons involved in the drafting of the Representative Agreement on behalf of Fisher included attorneys in the legal department of Emerson Electric Co. The Representative Agreement at issue was signed on behalf of Fisher by Mark Ingolia, Area Vice President, Northeast.

FCI/MOA 0320

Discovery is continuing. Fisher will supplement its Response to this Interrogatory as additional information becomes available.

6.    Explain the basis for your denial in paragraph 10 of the Answer to the Complaint that the document attached as Exhibit "A" to the Complaint is the entire Representative Agreement.

RESPONSE: The entire Representative Agreement includes appendices not attached to Exhibit "A" to the Complaint in this action.

7.    Identify all companies and other entities with whom any Fisher Company has entered into a REPRESENTATIVE AGREEMENT or similar agreement to provide services the same as or similar to the services provided by Northeast Controls under its representative agreement with Fisher.

RESPONSE: Fisher objects that this Interrogatory is not reasonably calculated to lead to the discovery of evidence relevant to the claims and defenses in this lawsuit.

8.    State whether any other company or entity having a representative agreement with Fisher or any Fisher company has made any request or claim for defense or indemnification under a representative agreement or any similar agreement and state the position taken by Fisher or any such Fisher company with respect to each such claim or request.

RESPONSE: Fisher objects that this Interrogatory is not reasonably calculated to lead to the discovery of evidence relevant to the claims and defenses in this lawsuit.

9.    Paragraph 38 of the Complaint states in its entirety as follows: "Both Great American and the Olsons alleged in their respective complaints that the Fisher valve was defective." State the basis for your response to this allegation that "Northeast Controls' characterization of those complaints is partial and misleading."

RESPONSE: The complaints in the <u>Great American</u> and <u>Olson</u> actions—like the complaints in the <u>Praxair</u> and <u>Motiva</u> actions—detailed significant deviations between (1) the specifications provided to Northeast Controls by Praxair and (b) the specifications provided by Northeast Controls to Fisher. Neither of those complaints identifies any other "defect" in the valve at issue in this litigation other than those deviations in materials of construction. Nor does either of those complaints identify any fault on Fisher's part, other than Fisher's fault for having supplied the valve that Northeast Controls negligently specified. Further, no party or expert witness ever identified any defect in the Fisher valve other than the failure to conform with the material specifications provided by Praxair, which failure was caused by Northeast Controls' negligence in transmitting Praxair's specifications to Fisher.

Discovery is continuing. Fisher will supplement its Response to this Interrogatory as additional information becomes available.

10.    Identify any claim you made or any evidence you adduced during any of the underlying cases that the fire at the Delaware City Power Plant or resulting alleged injuries or damages were caused by Northeast's negligence, as you stated in your response to paragraph 41 of the Complaint.

**RESPONSE:** Fisher objects that this Interrogatory misstates the nature of Fisher's response to paragraph 41 of the Complaint. Subject to and without waiving its objection, Fisher states that it asserted counterclaims for contribution and indemnification against Northeast Controls in all four of the underlying actions. Further, Fisher developed significant evidence showing that, if the fire was caused by the 83HV0629 valve, then the fault lay with Northeast Controls, which negligently failed to transmit to Fisher the specifications that Praxair, Inc., provided to Northeast Controls. The evidence showed that the materials of construction for the 83HV0629 valve, as ordered by Northeast Controls, were significantly less robust in an oxygen environment than were the materials of construction set forth in the final specification sheet provided by Praxair to Northeast Controls. Those materials of construction would have been more readily ignited and would have burned with a greater heat of combustion than the materials specified by Praxair.

Fisher also filed a motion for summary judgment on plaintiff Northeast Controls' indemnification claim in the <u>Olson</u> action, arguing—inter alia—that any fault arising out of the valve's materials of construction would be apportioned solely to Northeast Controls, not Fisher.

FCI/MOA 0323

RIDDELL WILLIAMS P.S.

By:     Patrick D. McVey
        *Pro hac vice*
        Daniel J. Gunter
        *Pro hac vice*
        1001 Fourth Avenue Plaza, Suite
        4500
        Seattle, WA 98154
        (206) 624-3600 (Tel.)
        (206) 389-1700 (Fax)
        pmcvey@riddellwilliams.com
        dgunter@riddellwilliams.com

Date: April 16, 2007


MARON MARVEL BRADLEY & ANDERSON, P.A.

By:     Paul A. Bradley
        1201 N. Market St, Ste. 900
        Wilmington, DE 19801
        (302) 425-5177 (Tel.)
        (302) 425-0180 (Fax)
        pab@maronmarvel.com


Date: April 16, 2007


FCI/MOA 0324

STATE OF IOWA                    )
                                 )  ss.
COUNTY OF Marshall               )

Meredith Miller, being duly sworn, states that he is OEM Industry Business Manager and

an authorized agent for the purpose of executing this document on behalf of Fisher Controls

International, LLC ("Fisher"); that, although he does not have personal knowledge of all of the

facts recited in the foregoing document, the statements made herein have been collected and

made available to him by counsel and employees of Fisher; that the information contained herein

is true and correct to the best of his knowledge and belief and the document is, therefore, verified

on behalf of Fisher.

Signed under the pains and penalties of perjury, this _13_ day of April, 2007.

_Meredith Miller_

SIGNED AND SWORN TO before me by the said _Meredith Miller_ on this

_13_ ᵗʰ day of April, 2007, to certify which witness my hand and seal of office.

_Janet Radosevich_
Notary Public in and for the State of Iowa,
Residing at _Marshalltown, Iowa_
My appointment expires _7-31-07_



```
NOTARIAL SEAL          JANET K. RADOSEVICH
      IOWA             COMMISSION # 140247
                       MY COMMISSION EXPIRES
                              7-31-07
```

FCI/MOA 0325

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing document on the following attorney on the

16th day of April, 2007, by email and Federal Express, addressed to said attorney at the address

shown below:

| | |
|---|---|
| Thomas P. Wagner<br>Attorney at Law<br>Marshall, Dennehey, Warner, Coleman & Goggin<br>1845 Walnut Street<br>Philadelphia, PA 19103-4797<br>Phone: (215)575-2600<br>Fax: (215)575-0856<br>Attorney for Plaintiffs | |

RIDDELL WILLIAMS P.S.

Daniel J. Gunter

FCI/MOA 0326

# EXHIBIT 46

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

NORTHEAST CONTROLS, INC.       :      CIVIL ACTION – LAW

     and                         :

ST. PAUL MERCURY INSURANCE COMPANY :

                            :

           v.                    :

                            :

FISHER CONTROLS INTERNATIONAL, LLC   :     NO. 1:06-CV-00412 (SLR)

---

### INTERROGATORIES OF PLAINTIFFS, NORTHEAST CONTROLS, INC. AND ST. PAUL MERCURY INSURANCE COMPANY DIRECTED TO DEFENDANT, FISHER CONTROLS INTERNATIONAL, LLC – SET II

Plaintiffs, Northeast Controls, Inc. ("NEC") and St. Paul Mercury Ins. Co. ("St. Paul"), by their attorneys, Marshall, Dennehey, Warner, Coleman & Goggin, hereby propound the following Interrogatories to be answered by Defendant, Fisher Controls International, LLC in accordance with the Federal Rules of Civil Procedure:

As used in these Interrogatories, certain terms have the following definitions:

The term "Northeast Controls" refers to plaintiff Northeast Controls, Inc.

The term "Fisher Controls" refers to defendant Fisher Controls, LLC.

The term "explosion and fire" refers to the explosion and fire at the Delaware City Power Plant in May of 2000, resulting in personal injuries to Mr. Ronald Olson, and property damage at the power plant.

The term "underlying litigation" refers to the litigation in the state courts of Delaware in which both Northeast Controls and Fisher Controls were sued in lawsuits seeking damages for Mr. Olson's personal injuries and for the property damage sustained at the plant.

FCI/MOA 0327

The Interrogatories are as follows:

1.    State the full amount that you paid for any purpose, whether counsel fees, expert fees, or other expenditures, to defend the underlying litigation.

2.    As to the amount identified in the preceding Interrogatory, set forth an itemized breakdown of all expenses paid.

3.    Identify all law firms you engaged to defend you in the underlying litigation.

FCI/MOA 0328

4.    Identify all attorneys, paralegals, and other personnel for whose services you paid, whether by hourly charge or otherwise, to defend you in the underlying litigation.

5.    As to each person identified in the preceding Interrogatory, state whether their services were charged by the hour, and if so, state the hourly rate for each such person. As to each person identified in the preceding Interrogatory, if their services were charged by a means other than hourly, identify the basis upon which their services were charged and the amounts paid.

6.    Identify each person you engaged as an expert witness or expert consultant to assist in the defense of the underlying litigation. As to each such person so identified, describe the work they performed and state the complete amount each was paid for their services.

FCI/MOA 0329

3

7.     Identify all expenses you incurred in the defense of the underlying litigation other than charges for legal services.  As to all such expenses, provide an itemized breakdown, including the purpose for which each expense was incurred.

8.     Identify the complete corporate structure of which you are a part, including all divisions, subsidiaries, parent companies and corporations, and all other companies with any legal relationship to you.

9.     Identify by name, address and specific employer all persons employed by you or any company in the corporate structure of which you are a part who worked on, contributed to or otherwise participated in the defense of the underlying litigation.

FCI/MOA 0330

10.    As to each person identified in the preceding Interrogatory, state how the cost of their time or participation was charged or allocated to you or to others within your corporate structure.

11.    State the amount of and describe any expense you incurred in defending the underlying litigation, other than those already identified above.

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN

By:  _____
        Thomas P. Wagner, Esquire
        Attorney for Plaintiffs,
        Northeast Controls, Inc. and St. Paul
        Mercury Insurance Company
        1845 Walnut Street – 21st Floor
        Philadelphia, PA  19103
        (215) 575-2600

Dated:  3/28/07

\01_21\LIAB\TPWAGNER\DISC\597558\MMKALIN\19180\01682

FCI/MOA 0331

5

# EXHIBIT 47

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NORTHEAST CONTROLS, INC.,
3 Enterprise Avenue
Clifton Park
New York, NY 12065

ST. PAUL MERCURY
INSURANCE COMPANY
385 Washington Street
St. Paul, MN 55102

          Plaintiffs,

v.

FISHER CONTROLS
INTERNATIONAL, LLC
205 S. Center Street
Marshalltown, Iowa 50158

          Defendant.

CIVIL ACTION

NO. 1:06-CV-00412 (SLR)

**INTERROGATORIES OF PLAINTIFFS, NORTHEAST CONTROLS, INC. AND ST. PAUL MERCURY INSURANCE COMPANY DIRECTED TO DEFENDANT, FISHER CONTROLS INTERNATIONAL, LLC—SET II**

**AND FISHER'S ANSWERS THERETO**

**GENERAL ANSWERS AND OBJECTIONS**

    Defendant Fisher Controls International, LLC ("Fisher") makes the following general

objections to Plaintiffs' Second Set of Interrogatories and any subsequently propounded

Interrogatories. Fisher reserves the right to supplement, amend, or qualify its general objections.

FCI/MOA 0332

1. Fisher is conducting a due and diligent search in connection with plaintiff's discovery requests. Further, Fisher is making reasonable inquiry of individuals expected to be aware of responsive information. Fisher objects to conducting any further company-wide searches on the ground that it would be unduly burdensome, oppressive, and expensive to conduct additional searches.

2. Fisher objects to Plaintiffs' discovery requests to the extent they attempt to impose obligations on Fisher different from or greater than that required by the Federal Rules of Civil Procedure.

3. Fisher objects to Plaintiffs' discovery requests to the extent they demand information protected by the attorney-client privilege, the work-product doctrine, or any other privilege or immunity.

4. Fisher objects to Plaintiffs' discovery requests to the extent they demand information that is not in the possession, custody, or control of Fisher.

5. Fisher objects to Plaintiffs' discovery requests to the extent they are overly broad and unduly burdensome, do not seek information relevant to the subject matter of the pending action, or are not reasonably calculated to lead to the discovery of admissible evidence.

6. By making the responses herein, Fisher does not concede that evidence produced in these responses is relevant to this action. Fisher expressly reserves the right to object to further discovery into the subject matter of any of these responses.

7. Fisher generally objects to any discovery request that is cumulative, repetitive or covered by other discovery requests.

FCI/MOA 0333

8. Fisher's investigation into the factual background of the matters alleged in this action is ongoing and incomplete at this time. Accordingly, these responses reflect only Fisher's current knowledge of the facts to date. Fisher therefore reserves its right to supplement, amend, or modify its responses as its investigation continues and as discovery proceeds, and to rely on any such information or evidence discovered after the time of these responses, at any time up to and including trial. Further, no inference as to the existence of any responsive documents or other evidence should be made from the assertion of any objection to any Request for Production.

10. Fisher incorporates these general objections in response to each of plaintiff's discovery requests, where required.

Without waiving any of the General Objections and subject to them as well as any specific objections set forth below, Fisher responds to individual interrogatories as set forth below:

1.     State the full amount that you paid for any purpose, whether counsel fees, expert fees, or other expenditures, to defend the underlying litigation.

**ANSWER:**    Fisher objects to this Interrogatory to the extent that it calls for information protected by the attorney-client privilege, the work product doctrine, or the consulting expert privilege. Subject to and without waiving its objections, Fisher states that it incurred the following expenditures in defending the underlying actions:

**A.     Attorney Fees**

FCI/MOA 0334

| Legal Service Provider | Amount |
|---|---|
| Riddell Williams, P. S. | $1,370,344.81 |
| Casarino, Christman & Shalk | $1220.00 |
| McCarter & English LLP | $131,848.07 |
| **Total Attorneys' Fees** | **$1,503,412.88** |

**B.    Legal Expenses (Excluding Attorneys' Fees)**

| Legal Service Provider | Amount |
|---|---|
| Riddell Williams, P. S. | $198,825.24 |
| McCarter & English LLP | $46,446.82 |
| American Legal Copy | $15,768.56 |
| Ikon Office Solutions | $3,068.71 |
| **Total Legal Expenses** | **$264,109.33** |

**C.    Expert Fees and Expenses**

| Expert Service Provider | Amount |
|---|---|
| AMCS Corp | $156,094.64 |
| Federal Institute for Materials Research and Testing | $3,142.49 |
| McCrone Associates, Inc. | $24,580.71 |
| **Total Expert Services** | **$183,817.84** |

FCI/MOA 0335

D.    **Total All Fees and Expenses**

| Total All Fees and Expenses | $1,951,340.05 |
|---|---|

Discovery is continuing, and Fisher will supplement its Answer to this Interrogatory if additional information becomes available.

2.    As to the amount identified in the preceding Interrogatory, set forth an itemized breakdown of all expenses paid.

**ANSWER:**

Fisher objects to this Interrogatory to the extent that it calls for information protected by the attorney-client privilege, the work product doctrine, or the consulting expert privilege. Subject to and without waiving its objections, Fisher states as follows:

**ATTORNEYS' FEES**

**Riddell Williams Fees**

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| Cooper, Raymond | 1716.40 | $115.96 | $199,026.70 |
| Fitzpatrick, Charlie | 1275.10 | $128.77 | $164,200.50 |
| Gunter, Daniel | 2021.10 | $176.94 | $357,604.00 |
| Hunter, Alison | 168.30 | $39.66 | $6,675.00 |
| Kelley, Faye | 64.70 | $51.93 | $3,360.00 |
| McVey, Patrick | 2066.40 | $278.44 | $575,368.50 |
| Morrison, Wesley | 39.00 | $163.59 | $6,380.00 |
| Sowers, Jason | 31.10 | $174.12 | $5,415.00 |

| Speer, Ryan | 60.70 | $24.46 | $1,485.00 |
| Taube, Juliann | 555.20 | $45.23 | $25,111.11 |
| Tingg, Dianna | 555.00 | $45.59 | $25,300.00 |
| Valdez, Isabel | 63.40 | $6.55 | $415.00 |

## Local Counsel Fees                                         Rate

| Firm | Timekeeper | Rate |
| --- | --- | --- |
| Casarino, Christman & Shalk | Casarino, S. | $175.00 |
| Casarino, Christman & Shalk | Moskowitz, A. | $75.00 |
| McCarter & English | Anderson, R. | $247.50 |
| McCarter & English | Bradley, P. | $247.50 |
| McCarter & English | "SRD" (name unknown) | $90.00 |
| McCarter & English | Freebery, J. | $180.00 |
| McCarter & English | Kelly, M. | $256.50 |
| McCarter & English | Moyer, J. | $90.00 |

## LEGAL EXPENSES (EXCLUDING FEES)

### Riddell Williams Expenses

| Expense | Amount |
| --- | --- |
| Hotels | $18,881.64 |
| Filing Fee | $300.00 |

FCI/MOA 0337

| | |
|---|---|
| Working Meals | $5,634.00 |
| Courier | $3.00 |
| Miscellaneous | $40.15 |
| Airfair | $31,821.90 |
| Document Record Costs | $152.00 |
| Outside Services | $24.77 |
| Professional Services | $10,286.98 |
| Air Courier | $9,316.13 |
| Reproduction | $17,501.03 |
| Telephone | $360.06 |
| Local Travel Transportation | $2,585.81 |
| Transcripts | $26,410.22 |
| Special Supply Request | $110.20 |
| Publication | $288.03 |
| Ground Transportation | $300.00 |
| Car Rental | $5,986.69 |
| Video Services | $1,727.94 |
| Photocopy | $42,068.40 |
| Telecommunications | $3,060.30 |
| Computer Research | $103.50 |
| Facsimile | $624.50 |

FCI/MOA 0338

| | |
|---|---|
| Postage | $26.05 |
| Color Photocopies | $3,337.20 |
| Cab Fares | $427.00 |
| Lexis Computer Research | $53.39 |
| Westlaw Computer Research | $17,394.35 |

**Local Counsel Expenses (McCarter & English)**

| Expense | Amount |
|---|---|
| Photocopies | $15,739.5 |
| Outside Photocopy Services | $7,542.72 |
| Federal Express | $2,172.49 |
| Filing Fees | $5,631.70 |
| Library Research | $1,894.44 |
| Services | $5,140.22 |
| Medical Record Fees | $189.72 |
| Next Day Courier | $229.21 |
| Outside Messenger | $2,807.40 |
| Postage | $2,305.48 |
| Subpoenas | $802.00 |
| Telecopier | $429.00 |
| Transcripts | $1,207.48 |

FCI/MOA 0339

| United Parcel Service | $45.62 |
|---|---|
| Total Local Counsel Expenses | $46,446.82 |

### Riddell Williams Totals

| Fees | $1,370,344.81 |
|---|---|
| Expenses | $198,825.24 |
| Riddell Williams Totals | $1,569,170.05 |

### Local Counsel Totals

| Fees | $133,068.07 |
|---|---|
| Expenses | $46,446.82 |
| Local Counsel Totals | $179,514.89 |

### EXPERT FEES

| Vendor | Timekeeper | Amount Paid |
|---|---|---|
| AMCS Corp | Ali, S. | $5,400.00 |
| AMCS Corp | Kasabchy, A. | $22,775.59 |
| AMCS Corp | Miller, L. | $1,125.00 |
| AMCS Corp | Mostello, R. | $124,794.05 |
| Federal Institute for Materials Research and Testing | Binder, C. | $3,142.49 |
| McCrone Associates, Inc. | Niemeyer, W. | $24,580.71 |

FCI/MOA 0340

Discovery is continuing, and Fisher will supplement its Answer to this Interrogatory if additional information becomes available.

3.    Identify all law firms you engaged to defend you in the underlying litigation.

**ANSWER:**    Riddell Williams P.S.; McCarter & English; Casarino, Christman & Shalk.

4.    Identify all attorneys, paralegals, and other personnel for whose services you paid, whether by hourly charge or otherwise, to defend you in the underlying litigation.

**ANSWER:**    See Answer to Interrogatory 2.

5.    As to each person identified in the preceding Interrogatory, state whether their services were charged by the hour, and if so, state the hourly rate for each such person.  As to each person identified in the preceding Interrogatory, if their services were charged by a means other than hourly, identify the basis upon which their services were charged and the amounts paid.

**ANSWER:**    See Answer to Interrogatory 2.

6.    Identify each person you engaged as an expert witness or expert consultant to assist in the defense of the underlying litigation.  As to each such person so identified, describe the work they performed and state the complete amount each was paid for their services.

FCI/MOA 0341

**ANSWER:**    Fisher objects to this Interrogatory to the extent that it calls for information protected by the consulting expert doctrine. Subject to and without waiving its objections, Fisher states as follows:

a.    Fisher engaged Dr. Robert Mostello and AMCS to opinions as to the cause of the fire. The work that he performed is set out in the reports and affidavits that he prepared in the underlying actions, which reports and affidavits are already in plaintiffs' possession. AMCS was paid $156,094.64 for its work.  See also the Answer to Interrogatory 2.

b.    Fisher engaged Wayne Niemeyer and McCrone Associates, Inc., to inspect the valve artifacts, to conduct additional testing, and to offer his opinion as to whether (a) whether it was possible to determine, from the artifacts, whether Tefzel or Kel-F had been used in the manufacture of the valve's seal ring, and (b), if so, to determine which had been used. The work that he performed is set out in the reports that he prepared in the underlying action, which reports are already in plaintiffs' possession. Fisher paid McCrone Associates $24,580.71. See also the Answer to Interrogatory 2.

c.    Dr. Christian Binder of the Federal Institute for Materials Research and Testing was engaged to determine the autoignition temperature of the valve's thrust bearing in an oxygen environment. Dr. Binder was paid $3,142.49.

Discovery is continuing, and Fisher will supplement its Answer to this Interrogatory if additional information becomes available.

FCI/MOA 0342

7.    Identify all expenses you incurred in the defense of the underlying litigation other than charges for legal services. As to all such expenses, provide an itemized breakdown, including the purpose for which each expense was incurred.

ANSWER:    See Answer to Interrogatory 2. In addition, Fisher states that it constructed an exemplar valve for use in testing. Discovery is continuing, and Fisher will supplement its answer to this Interrogatory if additional information becomes available.

8.    Identify the complete corporate structure of which you are a part, including all divisions, subsidiaries, parent companies and corporations, and all other companies with any legal relationship to you.

ANSWER:    Fisher objects that this Interrogatory is not reasonably calculated to lead to the discovery of evidence relevant to the claims and defenses in this action. Subject to and without waiving its objections, Fisher states that it is a wholly owned subsidiary of Emerson Electric Co.

9.    Identify by name, address and specific employer all persons employed by you or any company in the corporate structure of which you are a part who worked on, contributed to or otherwise participated in the defense of the underlying litigation.

ANSWER:    Fisher objects that this Interrogatory is overly broad and not reasonably calculated to lead to the discovery of evidence relevant to the claims and defenses at issue in this litigation. Fisher also objects to this Interrogatory to the extent that it calls for information protected by the attorney-client privilege, the work product doctrine, or the consulting expert

FCI/MOA 0343

privilege. Subject to and without waiving its objections, Fisher identifies the following persons:

Meredith Miller, Fisher Controls International, LLC, c/o Riddell Williams P.S.; Timothy

McMahon, Fisher Controls International, LLC, c/o Riddell Williams P.S.; James Gossett, Fisher

Controls International, LLC, c/o Riddell Williams P.S.; Charles Lyons, Fisher; Robert Barry,

Fisher Controls International, LLC, c/o Riddell Williams P.S.; and David Whelan, Fisher

Controls International, LLC, c/o Riddell Williams P.S. Discovery is continuing, and Fisher will

supplement its Answer to this Interrogatory if additional information becomes available.

     10.    As to each person identified in the preceding Interrogatory, state how the cost of

their time or participation was charged or allocated to you or to others within your corporate

structure.

     **ANSWER:**   There was no separate hourly reporting or allocation of costs for the

individuals identified in the Answer to Interrogatory 9. Discovery is continuing, and Fisher will

supplement its Answer to this Interrogatory if additional information becomes available.

     11.    State the amount of and describe any expense you incurred in defending the

underlying litigation, other than those already identified above.

     **ANSWER:**   Fisher objects to this Interrogatory to the extent that it seeks information

protected by the attorney-client privilege, the work product doctrine, and/or the consulting expert

privilege. Discovery is continuing, and Fisher will supplement its Answer to this Interrogatory if

additional information becomes available.

FCI/MOA 0344

RIDDELL WILLIAMS P.S.

By:     Patrick D. McVey
*Pro hac vice*
Daniel J. Gunter
*Pro hac vice*
Riddell Williams P.S.
1001 Fourth Avenue Plaza, Suite 4500
Seattle, WA 98154
(206) 624-3600 (Tel.)
(206) 389-1700 (Fax)
pmcvey@riddellwilliams.com
dgunter@riddellwilliams.com

Date: May 24, 2007

MARON MARVEL BRADLEY & ANDERSON, P.A.

By:     Paul A. Bradley
Maron Marvel Bradley & Anderson, P.A.
1201 N. Market St, Ste. 900
Wilmington, DE 19801
(302) 425-5177 (Tel.)
(302) 425-0180 (Fax)
pab@maronmarvel.com

Date: May 24, 2007

FCI/MOA 0345

291/576527.02
41155.00412

14

STATE OF IOWA                          )
                                       ) ss.
COUNTY OF MARSHALL                     )

Meredith Miller, being duly sworn, states that he is OEM Industry Business Manager and

an authorized agent for the purpose of executing this document on behalf of Fisher Controls

International, LLC ("Fisher"); that, although he does not have personal knowledge of all of the

facts recited in the foregoing document, the statements made herein have been collected and

made available to him by counsel and employees of Fisher; that the information contained herein

is true and correct to the best of his knowledge and belief and the document is, therefore, verified

on behalf of Fisher.

Signed under the pains and penalties of perjury, this 2 4 day of MAY, 2007.



SIGNED AND SWORN TO before me by the said Meredith Miller on this

24th day of MAY, 2007, to certify which witness my hand and seal of office.

JANET K. RADOSEVICH
COMMISSION # 140247
MY COMMISSION EXPIRES
7-31-07

Janet K Radosevich
Notary Public in and for the State of Iowa,
Residing at Marshalltown, Iowa
My appointment expires 7-31-07

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing document on the following attorney on the

24th day of May, 2007, by email and Federal Express, addressed to said attorney at the address

shown below:

| | |
|---|---|
| Thomas P. Wagner<br>Attorney at Law<br>Marshall, Dennehey, Warner, Coleman & Goggin<br>1845 Walnut Street<br>Philadelphia, PA 19103-4797<br>Phone: (215)575-2600<br>Fax: (215)575-0856<br>Attorney for Plaintiffs | |

RIDDELL WILLIAMS P.S.

Daniel J. Gunter

FCI/MOA 0347