IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NORTHEAST CONTROLS, INC. | : | CIVIL ACTION – LAW |
| and | : | |
| ST. PAUL MERCURY INSURANCE COMPANY | : | |
| | : | |
| v. | : | |
| | : | |
| FISHER CONTROLS INTERNATIONAL, LLC | : | NO. 1:06-CV-00412 (SLR) |

**PLAINTIFFS, NORTHEAST CONTROLS, INC. AND
ST. PAUL MERCURY INSURANCE COMPANY'S, OPPOSITION TO
DEFENDANT'S MOTION
<u>TO COMPEL DEPOSITIONS OF PETERS AND CAPPELLINI</u>**

COMES NOW Northeast Controls, Inc. and St. Paul Mercury Insurance Company, (*hereinafter* collectively "Northeast" unless disambiguated), and answers and opposes Defendant's *Motion to Compel Deposition of Michael Peters and Albert Cappellini*, and states in support thereof the following, to wit:

As conceded by Fisher within its *Memorandum in Support of Defendant's Motion to Compel Depositions of Michael Peters and Albert Cappellini* (*hereinafer* "Fisher's Memorandum"), at pp. 4-5 therein, Northeast employee Albert Cappellini was deposed – for three full days – within the context of the Underlying Litigation giving rise to Northeast's claims herein for indemnification.

Although Fisher may have elected in the context of that litigation "not to attack its sales representative", (*Memo* at pg. 6), there were cross-claims for indemnification filed by Northeast against Fisher in each of the Underlying Litigation lawsuits in which the Parties were involved. By stipulation between Northeast and Fisher in the Underlying Litigation, those cross-claims for indemnification survived the dismissal of the Underlying Litigation and are the identical claims brought by Northeast against Fisher herein.

Fisher emphasizes for the Court that the expert opinion offered by the personal injury plaintiff Olson "effectively exonerated both Fisher and Northeast Controls *from direct liability to Mr. Olson*", (*Memo* at pg. 7 [emphasis as in original]), yet Fisher now seeks to re-depose Mr. Cappellini – having waived its opportunity to do so in the Underlying Litigation – to defend against the indemnification claims stated by Northeast herein – being the identical indemnification claims it stated against Fisher in the Underlying Litigation, and during which Fisher voluntarily waived its opportunity to put questions to Mr. Cappellini during his three days of testimony.

When Fisher claims that "Peters and Cappellini have knowledge regarding the ordering of the Valve as well as the standards that Northeast Controls should observe in processing orders as Fisher's independent sales representative", (*Memo* at pg. 8), they do not identify what information Michael Peters, the President of Northeast Controls, Inc., has concerning the "ordering of the Valve"; nor do they explain how "the standards that Noreast Controls should observe in processing orders" relates to either Northeast's claims, or Fisher's counterclaims.

As Fisher correctly points out, and as shown by the *Affidavit of Daniel J. Gunter in Support of Defendant's Motion to Compel Depositions of Michael Peters and Albert Cappellini* ("the *Gunter Affidavit*"), and the exhibits attached thereto, the Parties did correspond in order to coordinate the depositions, beginning with Mr. Gunter's August 6, 2007, e-mail inquiry (*Gunter Affidavit* at Exhibit 2 thereto); his follow-up four days later on August 10th (*Id*. at Exhibit 3); and Northeast Counsel Shannon's initial response of the same date 15 minutes later, (*Id*. at Exhibit 4), followed by a substantive response from Shannon within a matter of hours on the same date proposing, as invited by Fisher, the depositions be noticed in Albany, New York, being Northeast Controls' primary place of business. (*Gunter Affidavit* at Exhibit 5).

In spite of Fisher Counsel's response 30 minutes later indicating "Albany will probably work in general", (*Gunter Affidavit* at Exhibit 6), when the *Notice of Deposition* was subsequently filed later that same day (D.I. # 36; *Gunter Affidavit* at Exhibit 7), the depositions were noticed for "the office of the undersigned" Fisher Counsel Bradley in Wilmington, Delaware. (*Gunter Affidavit* at Exhibit 7).

As stated in Shannon's e-mail response to Gunter of April 10, 2007, at 10:13 a.m., (*Gunter Affidavit* at Exhibit 4), Fisher's request for deposition dates, and the apparent urgency with which Fisher seemed to be pressing ahead to get the depositions scheduled, was rather surprising given the pending Court-Ordered Mediation scheduled for August 15, 2007, (D.I. #32), and Northeast's understanding that "we were all approaching the mediation in a good faith effort to determine whether we would be able to negotiate a resolution, and [Northeast] was unaware that [Fisher] wished to issue deposition notices prior to" to Mediation. (*Gunter Affidavit* at Exhibit 4).

With Fisher's filing of its *Motion to Amend the Answer to the Complaint and Counterclaim*, (D.I. # 37), on August 15, 2007, – the day of the mediation –, and the amendment to its counterclaim Fisher sought to state being an affirmative claim for some $2,000,000(+/-) in damages – as distinct from the $1,000,000(+/-) sought by Northeast for indemnification –, there arose the issues of (a) whether the Court would permit such a last-minute amendment to the pleadings some 5 months <u>after</u> the deadline for amending the pleadings set by the Court in its October 19, 2006, *Scheduling Order*, (D.I. #16), and less than 2 ½ months before the conclusion of discovery as stipulated-to by the Parties and Ordered by the Court on July 12, 2007, (D.I. # 34), at which time Fisher gave no indication that it was seeking or intending to amend its counterclaim; and, (b) how far afield such depositions would go beyond the narrow issues

presented by the *Amended Complaint*, (D.I. # 26), and Fisher's *Answer to Amended Complaint*, (D.I. # 27), under which the Parties have been conducting the litigation to this point.

As a matter of litigation strategy, it is difficult to imagine a circumstance threatening more undue prejudice to any party, than to agree, in good faith, to coordinate depositions under one set of claims, only to subsequently be confronted with a motion to amend the pleadings beyond what had previously been dicussed or contemplated, and to have the depositions noticed to be taken while the motion to amend the pleadings is pending and unresolved.

Northeast, at that point, was presented with a no-win situation:  Either comply with the deposition notices and take its chances as to a deposition with no limits; or seek Fisher's agreement for a continuance of the depositions until such time as the Court ruled on Fisher's *Motion to Amend Counterclaim* so that all Parties and Counsel would know whether the proper scope of the deposition was limited to the ordering of the Valve at issue (being the status of the Northeast's claim and Fisher's counterclaim at present); or whether Northeast was defending against a $2,000,000(+/-) affirmative counterclaim by Fisher with leave to pursue avenues of inquiry beyond the scope of the issues as currently defined by the pleadings, including Northeast's general obligations to Fisher, and it's performance of contract duties to Fisher beyond the ordering of the Valve at issue.

Because there are two Plaintiffs it was necessary and appropriate for Northeast's Counsel to confer with their Clients, both Northeast Controls, Inc., and St. Paul Mercury Insurance Company, Inc., concerning the appropriate course of action.  As the exchange of correspondence between the Parties demonstrates, Northeast's initial and immediate response to Fisher, on August 16th, after receipt of Fisher's *Motion to Amend Counterclaim*, stated:  "We cannot allow depositions of any Northeast Controls personnel to go forward until we know whether or not your Motion will be granted." (*Gunter Affidavit* at Exhibit 8 thereto).

4

On August 20th, Fisher's Gunter responded with a voicemail requesting a Rule 37 conference. (*Gunter Affidavit* at Exh. 9). As Northeast's Wagner responded on August 22nd, "We have a conference with our client representatives set for Friday afternoon, 8/24/07. We will discuss this issue at that time, and we will get back to you shortly thereafter." (*Id*. at Exh. 10).

Undeterred, Fisher initially demanded a response from Northeast by 5:00 p.m. on Friday, August 24th, indicating that it "will need to reschedule the depositions", (*Gunter Affidavit* at Exh. 11); and Fisher then filed this *Motion to Compel* on the same day, and before Northeast had an opportunity to provide Fisher with any response. (D.I. # 38).

Omitted from Fisher's *Memorandum* and accompanying *Gunter Affidavit*, is Northeast Counsel Wagner's e-mail to Gunter of August 25, 2007, (Exhibit 1 hereto), noting the *Motion to Compel* was filed "at 5:32 p.m. on Friday"; recounting that Counsel had "discussed this issue at length late yesterday afternoon"; and restating Northeast's concern that "we cannot produce NEC personnel for deposition without knowing whether your last-minute counterclaim is in this case"; and inviting a return call to determine how best to proceed. Fisher did not, and has not, responded to that invitation.

"Good faith" compliance with the strictures of Rule 37 must require something more than agreeing to one site for a deposition, and then unilaterally noticing the deposition for another site in a different state; filing deposition notices with a mediation pending; filing a motion to amend a counterclaim some 5 months after the deadline for amending pleadings and seeking to completely change the nature of the action; indicating that the depositions will be re-noticed; and then filing a motion to compel prior to receiving a response.

As described by the Third Circuit Court of Appeals in *Naviant Marketing Solutions, Inc. v. Larry Tucker, Inc.*, 339 F.3d 180 (3rd Cir. 2003):

> There was hardly a 'good faith . . . attempt to confer with the party not making the disclosure in an effort to secure the disclosure without court action.' . . . . [T]he

>Court held that sending a fax and demanding a response by the next business day and threatening to file a motion to compel is a token effort rather than a serious effort.

339 F.3d at 186-87.

Similarly, the Third Ciruit explained that "[t]here may be circumstances in which a party's clear failure to comply with a Court order to turn over a specific item by a date previously specified by the Court obviates the requirement that the moving party confer with its contumacious adversary prior to moving for contempt or sanctions. . . . However, in the instant case, Tucker's compliance was open to interpretation . . . ." *Id*. at 187.

Likewise, here, in the absence of Fisher's untimely *Motion to Amend Counterclaim*, there was an understanding between Northeast and Fisher that the depositions of Peters and Cappellini would be held in Albany on the issues pled.

Fisher breached that understanding by noticing the depositions for Delaware.

Within days, Fisher, again, breached that understanding by filing its *Motion to Amend Counterclaim*.

Northeast thereafter understood that Fisher would be re-noticing the depositions, and that it would allow Northeast an opportunity to confer with its clients.

Fisher, again, breached that understanding by filing this *Motion to Compel* – a course of action neither referenced nor discussed as an option by Fisher should Northeast fail to provide Fisher by the deadline it set of 5:00 p.m. on Friday, August 24th.

Northeast Controls, Inc., and St. Paul Mercury Insurance Co., believe and understand that they have complied with Rule 37's requirement of good faith efforts to resolve discovery disputes. Further, Northeast and St. Paul contend that Fisher cannot credibly demonstrate "good faith" under the circumstances including its filing of the untimely *Motion to Amend* during the August 15, 2007, Mediation Conference; Fisher's noticing of the depositions of Peters and

Cappellini prior to the Mediation Conference, and prior to the filing of their *Motion to Amend* (of which Fisher must have known); and Fisher's advising Northeast that it would re-notice the depositions and, instead, filing this *Motion*.

For these reasons, Fisher's motion to compel the depositions of Albert Cappellini and Michael Peters should be denied.

        MARSHALL, DENNEHEY, WARNER,
           COLEMAN & GOGGIN

By: /s/ *Thomas P. Wagner*
     Thomas P. Wagner, Esquire
     1845 Walnut Street
     Philadelphia, PA  19103
     tel: 215-575-4562
     *Counsel for Plaintiffs*

        MARSHALL DENNEHEY WARNER
           COLEMAN & GOGGIN

By: /s/Joseph Scott Shannon
     Joseph Scott Shannon, Esquire (I.D. 3434)
     1220 North Market Street, 5th Floor
     P.O. Box 8888
     Wilmington, DE 19899 – 8888
     tel.: 302.552.4329
     e-mail: jsshannon@mdwcg.com
     *Counsel for Plaintiffs*

Dated: September 10, 2007

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| NORTHEAST CONTROLS, INC. | : | CIVIL ACTION – LAW |
|     and | : | |
| ST. PAUL MERCURY INSURANCE COMPANY | : | |
| | : | |
|     v. | : | |
| | : | |
| FISHER CONTROLS INTERNATIONAL, LLC | : | NO. 1:06-CV-00412 (SLR) |

**CERTIFICATE OF SERVICE**

Joseph Scott Shannon, Esquire, hereby certifies that on September 10, 2007, he caused true and correct copies of the foregoing *Response in Opposition to Defendant's Motion to Copmel the Depositions of Peters and Cappellini* to be served upon the following persons in the manner indicated:

| | |
|---|---|
| RIDDELL WILLIAMS, P.S. | MARON MARVEL BRADLEY |
| Patrick D. McVey, Esquire |    & ANDERSON, P.A. |
| Daniel J. Gunter, Esquire | Paul A. Bradley, Esquire |
| 1001 Fourth Avenue Plaza, Ste. 4500 | 1201 North Market Street, Ste. 900 |
| Seattle, WA 98154 | Wilmington, DE 19801 |
| *Via 1st Class U.S. Mail,* | *Via e-filing and 1st Class U.S. Mail* |
|    *postage prepaid* |    *postage prepaid* |

                                           MARSHALL DENNEHEY WARNER
                                              COLEMAN & GOGGIN
                                      */s/Joseph Scott Shannon*
                                      Joseph Scott Shannon, Esquire (I.D. 3434)
                                      1220 North Market Street, 5th Floor
                                      P.O. Box 8888
                                      Wilmington, DE 19899 – 8888
                                      tel.: 302.552.4329
                                      e-mail: jsshannon@mdwcg.com
                                      *Counsel for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| NORTHEAST CONTROLS, INC. | : | CIVIL ACTION – LAW |
|     and | : | |
| ST. PAUL MERCURY INSURANCE COMPANY | : | |
| | : | |
| | : | |
|     v. | : | |
| | : | |
| | : | |
| FISHER CONTROLS INTERNATIONAL, LLC | : | NO. 1:06-CV-00412 (SLR) |

## ORDER ON FISHER'S *MOTION TO COMPEL DEPOSITIONS*

AND NOW, the Court, having heard and considered Defendant Fisher Controls International, LLC's, *Motion to Compel the Depositions of Michael Peters and Albert Cappellini* and Plaintiffs Northeast Controls, Inc., and St. Paul Mercury Insurance Company's *Response and Opposition* thereto, does hereby FIND and ORDER:

Fisher's *Motion to Compel* is DENIED.

SO ORDERED this ___ day of _____, 2007.

_____
The Honorable Sue L. Robinson

cc:    Clerk
       Counsel

15/525340.v1

EXHIBIT A

**Shannon, J. Scott**

**From:** Wagner, Thomas P.
**Sent:** Monday, September 10, 2007 9:10 AM
**To:** Shannon, J. Scott
**Subject:** FW: NEC v. Fisher


-----Original Message-----
From: Wagner, Thomas P.
Sent: Saturday, August 25, 2007 9:09 AM
To: 'dgunter@riddellwilliams.com'
Subject: NEC v. Fisher

I saw this mornong that you filed a motion to compel the Peters and Cappellini depositions at 5:32 p. m. on Friday. I have not yet been able to open or read it. Apparently, you prepared this motion without waiting for the deadline that you unilaterally announced to us. In any event, we discussed this issue at length late yesterday afternoon. We are quite satisfied with the position we have taken. Specifically, we cannot produce NEC personnel for deposition without knowing whether your last-minute counterclaim is in this case. We also feel that you have had ample opportunity to depose Mr. Cappellini. Nevertheless, if you still wish to discuss this issue, I will be in most of next week. Please feel free to call me.