*IN THE UNITED STATES DISTRICT COURT*
*FOR THE DISTRICT OF DELAWARE*

| | | |
|---|---|---|
| NORTHEAST CONTROLS, INC. | : | CIVIL ACTION – LAW |
| and | : | |
| ST. PAUL MERCURY INSURANCE COMPANY | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FISHER CONTROLS INTERNATIONAL, LLC | : | NO. 1:06-CV-00412 (SLR) |

### SUR REPLY OF PLAINTIFFS, NORTHEAST CONTROLS, INC. AND ST. PAUL MERCURY INSURANCE COMPANY'S, IN OPPOSITION TO DEFENDANT'S MOTION TO AMEND COUNTERCLAIM

Plaintiffs do not wish to belabor the briefing on this Motion, however Defendant's *Reply* raises claims and issues not addressed within its *Motion*, and to which Plaintiffs believes some response is required. Accordingly, we reaffirm the arguments and authorities set forth in our previous brief, and we add only the following limited sur reply:

*No Adequate Explanation for Delay*

In its original Motion to Amend the Counterclaim, defendant Fisher did not acknowledge the Court's Scheduling Order which set a deadline of March 12, 2007 for the amendment of pleadings. Defendants' Motion offered no explanation for its long delay in filing this Motion. As pointed out in our earlier brief at page 8, "[a] movant who offers no adequate explanation for its delay will ordinarily be denied leave to amend." *DDR L.L.C. v. Sears Roebuck and Company*, 171 F.R.D. 162, 167 (D.Del. 1997). Undue delay which is not satisfactorily explained is the equivalent of bad faith. *Rose Hall, Ltd v. Chase Manhattan Overseas Banking Corp.*, 93 F.R.D. 858 (D.Del. 1982). "An amendment should be denied, without requiring [opposing parties] to demonstrate prejudice, when the amendment is grounded on 'bad faith or dilatory motive, truly

undue or unexplained delay . . . . "  Id., 93 F.R.D. 858 (citing *Heyl v. Patterson International, Inc.*, 663 F.2d 419, 425 (3rd Cir. 1981)).

Now, in its reply brief, defendant Fisher attempts for the first time to offer an explanation.  Fisher says it waited until five months after the court-ordered deadline for amending pleadings, and until less than three weeks before the deadline for submission of expert reports, because it did not want to seek affirmative recovery against its business partner, plaintiff Northeast Controls.  Specifically, Fisher says that "it has no desire to reach into the pocket of its business partner and extract cash from it."  Defendant's responsive Brief at p. 3.  Now, however, Fisher says that "it has become apparent that this lawsuit is being driven by Northeast Controls insurer, St. Paul, not Northeast Controls."  Defendant's Brief at p. 3.  Fisher says it has now developed the belief "that Northeast Controls likely has insurance coverage for Fisher's counterclaim against it through the same insurance company."  Accordingly, Fisher says, "it now appears that Fisher will not be taking money from its business partner . . . ."

This explanation is simply a fiction.  It has been clear from the beginning of this lawsuit that this is an action by both an insurance company and its insured seeking to recover funds which were spent to defend the insured in the underlying litigation.  Both St. Paul and Northeast have always been named as plaintiffs in this case.  The Complaint itself makes it clear that Northeast was insured by St. Paul, and that St. Paul, on behalf of Northeast, expended attorneys' fees and settlement contributions for which reimbursement is now being sought.  See paragraph 7 of both the original Complaint filed on June 29, 2006 and the Amended Complaint served with plaintiffs' Motion for Leave to File it on March 12, 2007.

The St. Paul insurance policy covering Northeast Controls and a record of the payments made by St. Paul in connection with the underlying litigation were produced to defendant Fisher

on March 5, 2007 by hand delivery.  See cover letter of plaintiffs' counsel to defendant's counsel, attached. [1]

In fact, defendant's counsel was in the office of plaintiffs' counsel in Philadelphia on March 5, 2007, and these documents were personally handed to him at that time.  He was in the office of plaintiffs' counsel on that day, and the next, because the parties had agreed that he would be permitted to have an unlimited review of the entire file maintained by Northeast Controls' counsel in the underlying litigation.  Fisher's counsel completed that review and designated a number of items for copying, which were then sent to him.

That file is replete with references making it clear that Northeast was insured by St. Paul, that St. Paul chose its counsel, that counsel was reporting to St. Paul with copies to personal counsel for Northeast, and that St. Paul was making the litigation decisions, as would any normal insurer.  Indeed, the relationship of insurer and insured between St. Paul and Northeast has been well known to Fisher throughout this litigation, as well as the underlying litigation.  That relationship was spelled out in plaintiffs' original Complaint, filed more than a year ago.  It was confirmed on March 5, 2007, when the entire file of Northeast's counsel, a copy of the insurance policy, and a record of the payments for which reimbursement is sought were produced in discovery.

In its brief, Fisher makes a vague statement about Northeast's insurance coverage. "Fisher believes that Northeast Controls likely has insurance coverage for Fisher's counterclaim against it through the same insurance company."  See Fisher's Brief at p. 4.  Fisher cites no part

---

[1]Plaintiffs' counsel received a phone message from defense counsel Daniel Gunter, Esquire, followed by an e-mail message dated September 12, 2007.  Mr. Gunter stated in these messages that he does not have a copy of the policy. Plaintiffs' counsel does not understand how this could be possible since defendants' Reply Brief purports to comment on the coverage provided to Northeast Controls under that policy.  The parties agreed in February of this year that the policy would be produced, and we delivered it to Mr. Gunter, along with a record of the payments made, on March 5, 2007.  See the attached cover letter.  We will provide Mr. Gunter with another copy of the policy, but we cannot agree with any claim that the policy had not been previously produced.

of the policy to support this "belief." This is despite the fact that the policy was produced in discovery over six months ago.

In fact, the issue of Northeast Controls' insurance coverage for the counterclaim seeking affirmative damages on a breach of contract theory could pose a complicated question that would have to be decided between the two plaintiffs. Current counsel for the plaintiffs could not even comment on this issue because it would raise an obvious conflict. Rather, both plaintiffs would need to make a determination about whether coverage exists, and if legal opinions are required, they would each have to obtain separate counsel for that purpose. To say the least, this could greatly complicate the current litigation.

*Prejudice*

Fisher argues in its brief that plaintiffs will suffer no prejudice by the amendment of the counterclaim. They also argue that if the plaintiffs need more discovery, this is somehow plaintiffs' fault. Again, with all due respect, this argument is completely without merit.

At the eleventh hour, defendant Fisher seeks to assert for the first time a claim against the plaintiffs for almost $2 million in attorney fees and other litigation-related costs. Contrary to Fisher's assertions, plaintiffs would need much additional discovery, followed by expert witness analysis, in order to defend against this new claim.

Thus far, plaintiffs have taken a limited amount of discovery from Fisher to determine what the defendant spent when it defended the underlying litigation. Plaintiffs had a specific reason for seeking this discovery. To sustain their burden of proof, plaintiffs must establish the reasonableness of the costs and expenses they incurred themselves in order to recover those items in this case. In February of 2007, therefore, plaintiffs served the defendant with a request to admit that plaintiffs' costs and expenses in the underlying litigation were reasonable. The

defendant refused.  Accordingly, we then asked for discovery regarding Fisher's expenses in order to compare the amounts.  We will argue that since Fisher's expenses were much greater than our own in defending the same litigation, this is evidence that our expenses were reasonable.

From Fisher's disclosures about the amounts of its expenses, we already know that Fisher spent far more than the plaintiffs did in defending the same litigation.  In fact, by its own admission, Fisher's expenses for counsel fees *alone* were about $500,000 more than the total spent by St. Paul on behalf of Northeast Controls for counsel fees, experts *and* the settlement amounts that it paid the plaintiffs in the underlying cases.

Until now, the plaintiffs had no reason to question the reasonableness of Fisher's huge expenses in the underlying cases.  On the contrary, the enormity of those expenses only tends to make the plaintiffs' more modest expenses look all the more reasonable.  If, however, Fisher is now permitted to amend its counterclaim and seek affirmative recovery of those huge expenses, the plaintiffs will need discovery about all the reasons why they were incurred.  For example, Fisher chose a law firm located in Seattle, Washington to defend these four underlying lawsuits being litigated in Wilmington, Delaware.  Plaintiffs will need discovery as to whether this choice increased the defense cost, and why Fisher could not find counsel closer to the forum.  The plaintiffs would need to learn the identity of the people who made these decisions, take their depositions, and find out whether other choices were available to Fisher which might have been more reasonable and less costly.

Even more importantly, plaintiffs would need an expert to analyze all of Fisher's defense costs in order to determine whether their reasonableness can be appropriately challenged.  There would have been no reason to do this previously.  Now, however, plaintiffs would need to have

an expert review all of Fisher's invoices for counsel fees totaling more than $1,500,000 and render a detailed opinion on their reasonableness and necessity.

**The Merits**

In our previous brief, plaintiffs explained that Fisher's effort to amend its counterclaim is futile because there is no basis in law or in fact for the claim that it seeks to assert. Our basic position is that Fisher's counterclaim sounds only in breach of contract, and the contract on which it relies does not contain the remedy that Fisher claims. That remedy, i.e., recovery of litigation costs and counsel fees, is clearly provided to plaintiff Northeast Controls. The contract language is conspicuous by the absence of any corresponding remedy for Fisher.

Nothing contained in Fisher's responsive brief answers or refutes that argument. We continue to stand on the arguments and authorities set forth in our earlier brief.

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN

By: */s/ Thomas P. Wagner*
Thomas P. Wagner, Esquire
1845 Walnut Street
Philadelphia, PA 19103
tel: 215-575-4562
*Counsel for Plaintiffs*

MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN

By: */s/Joseph Scott Shannon*
Joseph Scott Shannon, Esquire (I.D. 3434)
1220 North Market Street, 5th Floor
P.O. Box 8888
Wilmington, DE 19899 – 8888
tel.: 302.552.4329
e-mail: jsshannon@mdwcg.com
*Counsel for Plaintiffs*

DATED:       September 14, 2007

*IN THE UNITED STATES DISTRICT COURT*
*FOR THE DISTRICT OF DELAWARE*

| | | |
|---|---|---|
| NORTHEAST CONTROLS, INC. | : | CIVIL ACTION – LAW |
| and | : | |
| ST. PAUL MERCURY INSURANCE COMPANY | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FISHER CONTROLS INTERNATIONAL, LLC | : | NO. 1:06-CV-00412 (SLR) |

## CERTIFICATE OF SERVICE

Joseph Scott Shannon, Esquire, hereby certifies that on September 14, 2007, he caused

true and correct copies of the foregoing *Sur Reply in Opposition to Defendant's Motion to Amend*

to be served upon the following persons in the manner indicated:

RIDDELL WILLIAMS, P.S.
Patrick D. McVey, Esquire
Daniel J. Gunter, Esquire
1001 Fourth Avenue Plaza, Ste. 4500
Seattle, WA 98154
*Via 1st Class U.S. Mail,*
*postage prepaid*

MARON MARVEL BRADLEY
& ANDERSON, P.A.
Paul A. Bradley, Esquire
1201 North Market Street, Ste. 900
Wilmington, DE 19801
*Via e-filing and 1st Class U.S. Mail*
*postage prepaid*

MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN
    */s/Joseph Scott Shannon*
Joseph Scott Shannon, Esquire (I.D. 3434)
1220 North Market Street, 5th Floor
P.O. Box 8888
Wilmington, DE 19899 – 8888
tel.: 302.552.4329
e-mail: jsshannon@mdwcg.com
*Counsel for Plaintiffs*

15/530396.v1

1845 Walnut Street · Philadelphia, PA 19103-4797
(215) 575-2600 · Fax (215) 575-0856

Direct Dial: 215-575-4562
Email: tpwagner@mdwcg.com

March 5, 2007

VIA: HAND DELIVERY

Daniel Gunter, Esquire
Riddell Williams, P.S.
1001 Fourth Avenue Plaza - Suite 4500
Seattle, WA  98154-1065

Re:     *Northeast Controls, Inc.& St. Paul Mercury Ins. Co. v. Fishers Controls, Int'l.*
        *U.S.D.C., District of Delaware, Civil Action Number:  1:06-CV-00412 (SLR)*
        *Our File Number:  19180-01682*

Dear Mr. Gunter:

Enclosed kindly find St. Paul Mercury Insurance Policy No. TE06401049 and a record of payments made in connection with the underlying litigation.

Very truly yours,

Thomas P. Wagner

TPW/mmk

Enclosures

NECF 0001