# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NORTHEAST CONTROLS, INC. | : | CIVIL ACTION – LAW |
| and | : | |
| ST. PAUL MERCURY INSURANCE COMPANY | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FISHER CONTROLS INTERNATIONAL, LLC | : | NO. 1:06-CV-00412 (SLR) |

**APPENDIX A**
**TO**
**PLAINTIFFS' OPENING BRIEF IN SUPPORT OF SUPPLEMENTAL MOTION**
**TO ALTER OR AMEND JUDGMENT PURSUANT TO FED.R.CIV.P. 59(E) AND**
**FOR AWARD OF ATTORNEYS' FEES PURSUANT TO FED.R.CIV.P. 54**

THOMAS P. WAGNER, ESQUIRE
MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN
1845 Walnut Street
Philadelphia, PA 19103
tel: 215-575-4562
*Counsel for Plaintiffs*

JOSEPH SCOTT SHANNON, ESQUIRE
Delaware Bar I.D. No. 3434
MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN
1220 North Market Street, 5th Floor
P.O. Box 8888
Wilmington, DE 19899 – 8888
tel.: 302.552.4329
e-mail: jsshannon@mdwcg.com
*Counsel for Plaintiffs*

Dated: February 1, 2008

## <u>TABLE OF CONTENTS</u>

<u>Document</u>                                                                                          <u>Exhibit</u>

Representative Agreement
    [A0001-A0012]................................................................................................ 1

Affidavit of Jeffrey Frock, Senior Technical Specialist for Travelers Insurance Company
    [A0013-A0016]................................................................................................ 2

Affidavit of Thomas P. Wagner, Esquire
    [A0017] ........................................................................................................... 3

EXHIBIT 1

### REPRESENTATIVE AGREEMENT

THIS AGREEMENT, made this 1st day of January, 1998, by and between FISHER CONTROLS INTERNATIONAL, INC. having its principal offices at 8000 Maryland Avenue, Clayton, Missouri 63105 (hereinafter called "Fisher"), and NORTHEAST CONTROLS, INC., ~~Sitterly Road,~~ Clifton Park, NY 12065 (hereinafter called "Representative").    3 Bodewtschen Drive 

WHEREAS, Fisher desires to appoint on its own behalf and has been duly authorized by the other companies identified in Appendix A hereto (each such company, including Fisher, is hereinafter referred to individually as a "Fisher Company" and collectively as the "Fisher Companies") to appoint Representative as a sales, engineering and service representative for Products of the Fisher Companies upon the following terms and conditions; and

WHEREAS, Representative represents that it is qualified to act as such a representative for the Fisher Companies in the Territory defined in Section I below pursuant to such terms and conditions;

NOW, THEREFORE, IT IS MUTUALLY AGREED AS FOLLOWS:

### I.    APPOINTMENT AND TERRITORY

Fisher hereby appoints Representative during the term of this Agreement, and Representative hereby accepts such appointment, as a sales, engineering and service representative for the Fisher Companies and for their designated products and related services as further described herein (said products and related services hereinafter referred to as "Products") in the territorial area specified in Appendix C hereto (hereinafter referred to as the "Territory").

It is understood that the Products included in this Agreement are those manufactured or supplied by the Fisher Companies specified in Appendix A unless otherwise excluded by such Appendix. The Fisher Companies shall also have the right, at any time, to amend or modify any Appendix to this Agreement upon written notice to Representative. This Agreement does not include representation for other subsidiaries or affiliated companies of the Fisher Companies or their products or services unless specifically listed in Appendix A.

A0001

## II.    OBLIGATIONS OF REPRESENTATIVE

Representative shall:

A.    Use its best efforts to fully promote, and pursue all reasonable opportunities in the solicitation of orders for, the Products in the Territory at such prices, license fees, and upon such terms and conditions as may be from time to time specified by the Fisher Company for whom orders are solicited. All such orders shall be promptly transmitted to the Fisher Company on whose behalf the orders were solicited and shall be subject to the written approval and acceptance of such Fisher Company. In no event shall Representative accept any order or otherwise attempt to bind any Fisher Company in any transaction unless specifically authorized by the appropriate Fisher Company. All remittances by the customer to whom Products are sold or licensed shall be made directly by the customer to the relevant Fisher Company.

B.    Except to the extent limited by, and subject to the terms of, Section VII and Appendix D hereof, furnish engineering services, consistent with Fisher's standards and practices, to customers and potential customers, including without limitation, reviewing and evaluating the requirements for the Products and participating in the selection and designation of the proper Products and specifications therefor.

C.    Except to the extent limited by, and subject to the terms of, Section VII and Appendix D hereof, furnish proper technical services to all users of the Products located or installed in the Territory, including without limitation, assistance in connection with the start-up, check-out and calibration of Products, the diagnosis of user inquiries concerning Products and the servicing of deficiencies in, and the performance of warranty obligations on, the Products in the manner specified from time to time by the Fisher Companies.

D.    Maintain in the Territory suitable premises, equipment and current technical and promotional literature for the Products, and employ sufficient and suitably qualified and trained technical, engineering and other competent personnel necessary to carry out the duties of Representative under this Agreement to the satisfaction of the Fisher Companies. Representative and its personnel shall maintain a working knowledge and familiarity with the Products, including associated services, and attend training sessions as appropriate to maintain such knowledge and familiarity.

E.    Keep the appropriate Fisher Companies fully informed of commercial and market conditions within the Territory and of the activities of customers and competitors, and regularly cover the trade and industry for the purposes of furthering sales of the Products.

F.    Provide the Fisher Companies periodically, as requested, with sales forecasts for the Products and customer evaluations.

G.    Assist, when requested, the Fisher Companies in obtaining relevant information relating to the financial standing and reputation of customers in order to evaluate credit risks.

H.    Maintain records in such form and in such detail as the Fisher Companies may reasonably request from time to time with respect to customers; outstanding quotations and orders; engineering and technical services and related activities, including plans,

2

A0002

drawings and other documents; and any other business matters relating to the Products; and promptly transmit such records to the relevant Fisher Company upon request.

I.   Not incur any liability on behalf of the Fisher Companies, or in any way pledge or purport to pledge the Fisher Companies' credit, or describe or hold itself out as an agent or employee of the Fisher Companies, or describe itself other than as a sales representative of the Fisher Companies for the performance of functions specified in, and pursuant to, this Agreement; or make any warranties or representations of any kind with respect to the Fisher Companies, the Products, or any other products of the Fisher Companies, other than to present to the prospective customer the specifications and description of the Products in the identical terms as supplied by the Fisher Company to Representative.

J.   Not, without Fisher's prior written consent, which shall not be unreasonably withheld, sell or distribute any products which are competitive with the Products.

K.   Not advertise or distribute any printed matter referring to the Products or to the Fisher Companies without the specific prior approval in writing of the relevant Fisher Company with regard to the form, manner, and content of such advertising and printed matter. All advertising by Representative shall be without recourse to any Fisher Company for any expense incurred unless such expense shall have been specifically authorized in writing by the relevant Fisher Company.

L.   Confer with, and establish to the satisfaction of, the appropriate Fisher Companies, goals and strategies for representation during the year covering such matters as orders by Product line and Representative's management structure, staffing and territorial coverage. Appropriate adjustments may be made during the term of this Agreement in the goals and strategies to take into account material events and circumstances affecting the representation, such as positive or negative changes in external business and economic conditions or the introduction by the Fisher Companies of additional products and programs.

M.   Abide by all laws and governmental rules and regulations applicable to Representative's and the Fisher Companies' activities hereunder. The Representative shall not make any bribes, kickbacks, or payments to governmental officials to obtain business, or other illegal payments.

N.   In its capacity as a commission representative, follow sales strategy developed by the Fisher-Rosemount Industry Solutions Group on those projects which have been identified as appropriate for a total Fisher-Rosemount integrated approach through the Fisher-Rosemount Industry Solutions Group. In such situations, Representative will not independently pursue a strategy for sale of the Products which is inconsistent with such Group strategy.

A0003

3

### III.    FISHER ASSISTANCE

The Fisher Companies shall support the activities of Representative with regard to its promotion of the Products, its solicitation of orders, and engineering and technical services. The Fisher Companies shall make available training and instruction for Representative and the Fisher Companies' customers with respect to the Products and shall make available to Representative technical data and literature covering the Products.  Such training, instruction, technical data and literature will be provided at prices to be established from time to time by the Fisher Companies.  The Fisher Companies shall advise  Representative of their current price lists and discounts for their Products for purposes of soliciting orders hereunder.

The Fisher Companies reserve the right, in their absolute discretion, to decline to accept any order transmitted to them for acceptance by Representative or to decline to submit any tender on any inquiry transmitted to them by Representative.

### IV.    PURCHASE OF PRODUCTS FOR RESALE

In order to further its representative obligations hereunder, Representative agrees to purchase adequate quantities of Products, including spare parts, from the Fisher Companies for inventory purposes to meet the market demands and requirements of the Territory.  Such Products will be sold to Representative at discounts from the then current published selling prices as established from time to time by the applicable Fisher Companies and under their standard terms and conditions of sale.  Representative may extend the applicable Fisher Companies' warranties for such Products to its customer, provided such Products are not modified or are modified pursuant to and in accordance with the Fisher Companies' established procedures, but all other terms and conditions of resale, including price, are solely within the control and at the risk of Representative.

### V.    CONFIDENTIALITY PROVISIONS

As Representative may have heretofore received, and will in the future receive from time to time, confidential and proprietary information and data concerning the Products, research and engineering, developmental products and projects, business plans and operations of, or belonging to, the Fisher Companies and/or other companies with whom a Fisher Company has a business relationship (herein collectively referred to as "Fisher Information"), Representative agrees to treat, and to cause its officers and employees to treat, all such Fisher Information as the Fisher Companies' confidential property and not to divulge it to others at any time, or to use it for Representative's private purposes, or otherwise, except with the prior written authorization of the Fisher Company from which such Fisher Information originated and then only in the manner and to the extent authorized, unless or until such Fisher Information (a) becomes a part of the public domain, or (b) is known to Representative prior to any disclosure by a Fisher

Company. Representative's obligation hereunder further applies to Fisher Information received by Representative in the course of Representative's prior, if any, representative capacity with any Fisher Company and shall continue beyond and after the termination or expiration of this Agreement, and at the termination or expiration of this Agreement, or at any time a Fisher Company so requests, Representative shall deliver to the Fisher Company all notes, memoranda, records, drawings or other documents and other information or materials pertaining to the Fisher Information, including all copies and reproductions thereof. Representative further agrees to obtain similar written undertakings from each of its employees having access to the Fisher Information.

## VI.    COMMISSIONS

A.    Subject to the provisions of Appendix E, the exceptions stated below in this Section VI, and to fulfillment of the undertakings by Representative to the Fisher Companies, the Fisher Company whose Products are sold in the Territory shall pay to the participating representative(s) and/or offices maintained by Fisher or its subsidiaries (hereinafter referred to as "sales office(s)", in consideration for its services hereunder, a purchasing, a territorial service, and/or an engineering commission with respect to the sale of Products by such Fisher Company in the Territory. The total available commission shall be computed on the basis of the F.O.B. Factory net price to the customer following discounts and allowances, if any, at the rates set forth in Appendix B hereto for the applicable Fisher Company. Payments will be made promptly following receipt of payment from the customer by the relevant Fisher Company. Commissions paid to Representative on any uncollectible account will be used as an offset against future commissions earned by, or invoiced to, Representative in accordance with its participation in the original commission payments. Representative agrees that the Fisher Companies may debit Representative's commission account any overdue amount owed by Representative to the Fisher Companies.

B.    The commission on sales of Products involving the active participation of more than one representative or sales office will be assigned to or proportioned between or among the participating representatives and sales offices by the Fisher Companies on the following basis:

1.    All Sales (excluding sales of replacement parts or repairs having invoice value of under U.S. $500.00):

a.    A *Purchasing Credit* of one-fourth (1/4) of the total available commission shall normally be given by the applicable Fisher Company to the representative or sales office in whose territory the order originates and shall be based upon the representative's or sales office's efforts in soliciting the order and assisting the customer and its purchasing function in connection therewith; in preparing the quotation; in participating in the negotiation of the purchase order; and in

5

A0005

obtaining the order and the manner of processing the order through the relevant Fisher Company. The Fisher Companies shall have the discretion to make exceptions to the foregoing in unusual situations.

b.  A *Territorial Service Credit* of one-fourth (1/4) of the total available commission shall be given to the representative or sales office in whose territory the Product(s) is installed to cover the representative's service obligations.

c.  An *Engineering Credit* of one-half (1/2) of the total available commission will be given to the representative or sales office, or be retained, in whole or in part, by the applicable Fisher Company, based upon the engineering service provided to the customer. In determining the division of this credit, the Fisher Company will take into consideration the following aspects: (a) development of specifications to include Fisher Products; (b) detail engineering work with contractor or user, including quotations; (c) degree of insistence by ultimate user upon Fisher Products; (d) having contractor or user add the Fisher Companies to the list of acceptable bidders; and (e) the ratio of the engineering work carried out by Representative to the total engineering work required.

2.  Replacement Parts or Repair Orders:

a.  Where the invoice is under U.S. $100.00, all available commissions will be paid to the representative or sales office in whose territory the purchase order originates.

b.  Where the invoice value is U.S. $100.00 or more, but less than U.S. $500.00, the available commission will be divided equally, and will be paid, respectively, to the representative or sales office in whose territory the purchase order originates and to the representative or sales office in whose territory the parts are installed.

c.  Where the invoice value is U.S. $500.00 or more, the available commission will be divided in accordance with the provisions of Section VI-B-1, above; i.e., 1/4 Purchasing Credit, 1/4 Territorial Service Credit, and 1/2 Engineering Credit.

3.  The final allocation of the available commission credits shall be determined at the discretion of the Fisher Companies in unusual circumstances. Consideration will be given to the work done by the representatives, sales offices, and the Fisher Companies.

4.  Commissions paid under this Agreement on Products subsequently returned to Fisher shall be refunded in full by Representative, or at the Fisher Companies' discretion, may be charged back to Representative's commission account.

6

A0006

C.    Unless specifically indicated in Appendix A hereto, it is agreed that Representative shall not be entitled to the applicable commission(s) on the following sales of Products, which sales are excluded from this Agreement:

    1.    Sales to subsidiaries of Fisher (companies in which Fisher has a direct or indirect majority ownership interest) or sales to licensees of Fisher or to the licensees of its subsidiary companies.

    2.    Sales in respect of which Representative has failed to perform in accordance with the provisions of this Agreement.

    3.    Sales by Fisher Companies in the Territory resulting from orders not obtained by Representative if this Agreement provides in Section I that Representative is a non-exclusive representative for the sale of such Products.

D.    If a Fisher Company shall refuse to accept or execute any order as provided in this Agreement, the Representative shall not be entitled to any commission or other remuneration in respect thereof.

## VII.    CERTIFICATION AND SUPPORT FEES PAYABLE BY REPRESENTATIVE

Representative agrees to pay support fees and certification fees to the Fisher Company specified in Appendix D hereto in accordance with the terms of Appendix D. Certification fees, if any, shall be paid by the Representative no later than March 1. Support fees, if any, shall be paid within 30 days of the end of each calendar quarter during the term of this Agreement with respect to receipts by Representative of qualifying payments from the customer in such quarter. Representative agrees that the Fisher Companies may debit the Representative's account any overdue amount owed by the Representative to the Fisher Companies pursuant to this Section VII and to Appendix D.

## VIII.    TERM

A.    This Agreement shall be effective for a period of one (1) year from the date set forth in the opening paragraph of this Agreement and will automatically terminate at the end of such period unless specifically renewed upon the further written agreement of Fisher and Representative, but subject to cancellation at any time as provided in paragraph C below.

B.    In the event of termination of this Agreement, the Representative shall be entitled to receive commissions, pursuant to Section VI above, as follows:

    1.    Commissions accruing to Representative on all shipments made before the date of termination shall be paid subject to the provisions of this Agreement.

A0007

2. No Territorial Service Commission shall be paid to Representative on shipments of Products made after the date of termination. A Purchasing Commission will be paid only on shipments made within 90 days after termination. The Engineering Commission shall be paid only on shipments made within one (1) year after termination.

3. Fifty percent (50%) of commissions becoming due and payable after date of termination will be held for one year after termination to protect the Fisher Companies from loss on returned or rejected Products unless Representative provides the Fisher Companies with a bond or guarantee in form and substance acceptable to Fisher.

4. Representative will deliver to the Fisher Companies or otherwise dispose of per the Fisher Companies' instructions, all sales and pricing data, literature, engineering prints and reports, copies of requisitions and orders, customer correspondence and the like that pertain to the Products. Any literature, catalogs, or other sales data that has been purchased from the Fisher Companies by Representative, and is still current, may be returned to the Fisher Companies, and the full invoice price less any transportation costs borne by the Fisher Companies will be refunded.

C. Fisher shall also have the right without prejudice to any other rights it may have in law or by contract, to terminate this Agreement on behalf of the Fisher Companies, effective immediately upon notice to Representative, as a result of any of the following:

1. The insolvency of Representative or any of its owners/operators, or the filing of a voluntary or involuntary petition in bankruptcy or for a reorganization arrangement under applicable laws by or against any of them or their property; or the making of an assignment for the benefit of any of their creditors; or the voluntary or involuntary dissolution of Representative.

2. The untrue statement of a material fact, or omission to state a material fact necessary to make the statements contained therein not misleading, in any information or statement furnished by Representative to a Fisher Company in connection with Representative's appointment as a Fisher Representative or Representative's performance pursuant to this Agreement.

3. Any breach by Representative of any of the provisions of this Agreement or any other contractual or legal obligations of Representative to a Fisher Company.

4. The non-attainment by Representative of the goals or strategies established pursuant to Section II.L.

A0008

5.  The death or incapacity, or removal or withdrawal from the management of Representative, of any owner or key manager, or the voluntary or involuntary transfer of any ownership interest in Representative.

6.  Any act or omission of Representative or of any owner/operator which, in the sole opinion of Fisher, may damage or adversely affect or reflect upon Representative, a Fisher Company, the Products, or any performance pursuant to this Agreement.

D.  Nothing contained herein shall be deemed to create any express or implied obligation on either party to renew or extend this Agreement or, if Representative is continued or renewed as a Fisher representative after the term hereof, to create any right to continue such relationship on the same terms and conditions contained herein. Each party, in its sole discretion, shall have the right to determine, for any reason whatsoever, not to renew, continue or extend this Agreement. In addition to the foregoing, it is recognized and accepted by Representative that it is Fisher's policy not to extend representative agreements to persons who are, or will be, or entities whose principal owner is or will be, during the term thereof, sixty (60) years of age, except in those instances where Fisher, in its sole discretion, deems it to be in the best interests of its business.

E.  Neither party, by reason of the termination or non-renewal of this Agreement, shall be liable to the other for compensation, reimbursement or damages arising from any loss of anticipated sales or prospective profits or from any expenditures, investments, leases, property improvements or other matters related to the business or goodwill of the parties. Except as provided in Section VIII, there shall be no other payments of any kind or nature due to or made to Representative upon the cancellation or termination of this Agreement, notwithstanding any investment or expenditures incurred by Representative in order to facilitate the sale of Products hereunder.

## IX.  NON-ASSIGNMENT

Representative may not assign, transfer or delegate this Agreement or any of its rights or obligations under this Agreement without the prior written consent of Fisher, and any attempted assignment, transfer or delegation without such consent shall be deemed null and void and of no effect.

## X.  TRADEMARKS AND TRADE NAMES

A.  Representative acknowledges the validity of the trademarks and trade names which designate and identify the Products and further acknowledges that Fisher or its subsidiaries or affiliates are the exclusive owners of such marks and names.

9

A0009

B.  Representative agrees that it may only use those Product trademarks which identify the Products it is authorized to sell and then only to further the promotion and sale of the Products such trademarks identify.  Representative may only use such trademarks in their standard form and style as they appear upon the Products or as instructed in writing by Fisher.  No other letter(s), word(s), design(s), symbol(s), or other matter of any kind shall be superimposed upon, associated with or shown in such proximity to the trademarks so as to tend to alter or dilute them and Representative further agrees not to combine or associate any of such trademarks with any other trademark or trade name.  The generic or common name of the Product must always follow the trademark except in those instances when Representative uses the name "FISHER" when referring to a Fisher Company, in which event no generic or common name is required.

C.  In all advertisements, sales and promotional literature or other printed matter in which any of such trademarks appear, Representative must identify itself by its full name and address and state its relationship to the Fisher Company.  Every such trademark used or displayed by Representative must be identified as a trademark owned by the relevant Fisher Company in the manner prescribed by Fisher.

D.  On its letterheads, business cards, invoices, statements, etc., Representative or sales office may identify itself as the sales representative of the relevant Fisher Company or Companies.

E.  Representative agrees that it will never use any trademark or trade name of Fisher or its subsidiaries or affiliates or any simulation of such marks or names as a part of Representative's corporate or other trading name or designation of any kind.

F.  Upon expiration or termination of this Agreement, Representative shall promptly discontinue every use of such trademarks, trade names, corporate logos and identities, and any similar styles and any language stating or suggesting that Representative is a sales representative of any Fisher Company, as well as any word or term resembling such names, marks, logos, identities or styles which would be likely to cause confusion or deception.

## XI.  INDEMNITY

Subject to the limitations set forth in the immediately succeeding paragraph of this Section XI, Fisher agrees that it shall, at its own expense, protect, defend, indemnify and hold harmless Representative from and against any and all claims, demands, actions, losses, damages, liabilities, costs and expenses (collectively, "Losses") which may arise out of or be made in connection with the death or injury of any person, or damage to property, by whomsoever suffered, resulting or claimed to result from any actual or alleged defect in any Product.  The obligations set forth in the immediately preceding sentence shall not apply unless

10

Representative, upon receiving notice thereof, promptly notifies Fisher in writing thereof of such claim, demand or action, and thereafter reasonably cooperates with Fisher in the resolution thereof.

Notwithstanding the provisions of the immediately preceding paragraph of this Section XI or any other provision of this Agreement, Fisher shall not be obligated to protect, defend, indemnify or hold harmless Representative from and against any Losses arising from the following:

A.    Any express warranty unauthorized by Fisher;

B.    Any distribution or sale of a Product for a purpose unauthorized by Fisher;

C.    Use of any instructions, labels, warnings or other product literature which have not been previously approved in writing by Fisher;

D.    Any failure by Representative to maintain any Product in merchantable condition;

E.    Demonstration, installation, servicing, modification or repair of any Product by Representative or any third party not in accordance with written warnings or instructions of Fisher, or

F.    Negligent acts or omissions by Representative.

## XII.  EXPENSES

All expenses incurred by Representative in carrying out this Agreement will be borne by Representative unless otherwise expressly provided herein.

## XIII.  GOVERNING LAW, ENTIRE AGREEMENT

The validity, interpretation and performance of this Agreement and any dispute connected herewith shall be governed and construed in accordance with the laws of the State of Missouri, U.S.A. This Agreement constitutes the full understanding of the parties, a complete allocation of risks between them and a complete and exclusive statement of the terms and conditions of their agreement.  This Agreement cancels and supersedes all existing contracts and arrangements by and between Fisher, The Fisher Companies and the Representative for the representation of the Fisher Companies.  Except as specifically provided in this Agreement, no conditions, usage of trade, course of dealing or performance, understanding or agreement purporting to modify, vary, explain or supplement the terms and conditions of this Agreement shall be binding unless hereafter made in writing and signed by the party to be bound, and no modification shall be effected by the acknowledgment or acceptance of purchase order or shipping instruction forms containing terms and conditions at variance with or in addition to

11

those set forth herein.  No waiver by either Fisher, a Fisher Company or Representative with respect to any breach or default or of any right or remedy and no course of dealing, shall be deemed to constitute a continuing waiver of any other breach or default or of any other right or remedy, unless such waiver be expressed in writing signed by the party to be bound.  If any term or condition of this Agreement or the application thereof is judicially or otherwise determined to be invalid or unenforceable, the remainder of this Agreement and the application thereof shall not be affected and shall remain in full force and effect.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed as of the day and year first above written by their respective authorized officials.

NORTHEAST CONTROLS, INC.                    FISHER CONTROLS INTERNATIONAL, INC.
(Representative)

By _____             By _____
Title _____President_____            Title ___Area Vice President, Northeast___

A0012

12

EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NORTHEAST CONTROLS, INC.  :  CIVIL ACTION – LAW
 and        :
ST. PAUL MERCURY INSURANCE COMPANY :
          :
   v.      :
          :
FISHER CONTROLS INTERNATIONAL, LLC :  NO. 1:06-CV-00412 (SLR)

## AFFIDAVIT OF JEFFREY FROCK

Jeffrey Frock, being duly sworn, deposes and states as follows:

1. I am employed as a Senior Technical Specialist for Travelers Insurance Company

and I have been the principal claim representative assigned to the above-captioned matter, as

well as to the underlying litigation arising of the explosion and fire which occurred at the

Delaware City Power Plant in May of 2000.

2. The attached computer spreadsheet shows the actual expenses that Travelers

Insurance Company (as successor to The St. Paul Companies) has paid in this action seeking

enforcement of our defense and indemnification rights as insurer for Northeast Controls, Inc.

These costs have included attorneys' fees, expert witnesses, court reporters, and copying

disbursements.

3. The total costs actually paid to date are $235,800.77.

           _Jeffrey Frock_
        Jeffrey Frock

Sworn to and subscribed before me this

29 th day of January, 2008

_Ellen Kelbaugh_
Notary Public

My commission expires: 9/1/09

ELLEN KELBAUGH
NOTARY PUBLIC
BALTIMORE COUNTY
MARYLAND
MY COMMISSION EXPIRES 9/1/09

A0013

# Financial Inquiry

**Claim: VKS9909**
**Selection Criteria**

Selected Grouping by: Pay Type
Date Range: 07/28/2005 To 01/25/2008

## Financial Summary for Claimant: 003 - RONALD OLSEN

| Sel | PayType | Incurreds | Payments | Credits | Net Total Paid | O/S Reserves |
|---|---|---|---|---|---|---|
| | Claim | 100,001.00 | 100,000.00 | 0.00 | 100,000.00 | 1.00 |
| X | Expense | 250,000.00 | 235,800.77 | 0.00 | 235,800.77 | 14,199.23 |
| | TOTAL | 350,001.00 | 335,800.77 | 0.00 | 335,800.77 | 14,200.23 |

## Payment Detail for Claimant: 003 - RONALD OLSEN

| Sel | PayType | Cov | Kind | Cmt | Amount | Check # | Payee | Date | Status | From | To | C/D | ED/SD | Pay Reas |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Expense | PRBI | | 003 | 738.16 | 896D-0060552876 | WILCOX, FETZER, LTD | 01/23/2008 | ISSUED | | | | 1C-Court Reporter/Stenographer Fees-Panel/Non Panel Counsel | |
| | Expense | PRBI | | 003 | 584.85 | 896D-0060493582 | BASYE-SANTIAGO REPORTING, MAGNA LEGAL SERVICES | 01/22/2008 | ISSUED | | | | 1C-Court Reporter/Stenographer Fees-Panel/Non Panel Counsel | |
| | Expense | PRBI | | 003 | 972.50 | 896D-0049527468 | AMCS CORP. | 01/08/2008 | ISSUED | | | | 5Z-Other Experts | |
| | Expense | PRBI | | 003 | 4,325.50 | 896D-0049450338 | GERMAN, GALLAGHER & MURTAGH, P.C. | 01/07/2008 | ISSUED | | | | 5Z-Other Experts | |
| | Expense | PRBI | | 003 | 135.71 | 896D-0049097439 | IKON OFFICE SOLUTIONS | 12/31/2007 | ISSUED | | | | 1A-Legal Disbursements - Panel/Non Panel Counsel | |
| | Expense | PRBI | | 003 | 1,177.84 | 896D-0048062277 | WILCOX & FETZER, LTD | 12/13/2007 | ISSUED | | | | 1C-Court Reporter/Stenographer Fees-Panel/Non Panel Counsel | |
| | Expense | PRBI | | 003 | 27,078.24 | 896D-0047238938 | MORRIS JAMES, LLP | 11/29/2007 | ISSUED | | | | 5Z-Other Experts | |
| | Expense | PRBI | | 003 | 19,707.50 | 896D-0047115432 | Marshall, Dennehey, Warner, Coleman & Goggin - Phil | 11/27/2007 | ISSUED | | | | 3A-Panel/Non-Panel Attorney Fees | |
| | Expense | PRBI | | 003 | 729.90 | 896D-0047054043 | ZANARAS REPORTING & VIDEO | 11/26/2007 | ISSUED | | | | 1C-Court Reporter/Stenographer Fees-Panel/Non Panel Counsel | |
| | Expense | PRBI | | 003 | 8,910.00 | 896D-0046409661 | THE TASA GROUP | 11/14/2007 | ISSUED | | | | 5Z-Other Experts | |
| | Expense | PRBI | | 003 | 916.34 | 896D-0046351413 | Marshall, Dennehey, Warner, Coleman & Goggin - Phil | 11/13/2007 | ISSUED | | | | 1A-Legal Disbursements - Panel/Non Panel Counsel | |
| | | | | | | | Marshall, | | | | | | | |

A0014

| | Expense | PRBI | 003 | 22,982.50 | 896D-0046351413 | Dennehey, Warner, Coleman & Goggin - Phil | 11/13/2007 | ISSUED | | | | 3A-Panel/Non-Panel Attorney Fees |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Expense | PRBI | 003 | 801.50 | 896D-0045956565 | DIANNE E. WILSON | 11/07/2007 | ISSUED | | | | 1C-Court Reporter/Stenographer Fees-Panel/Non Panel Counsel |
| | Expense | PRBI | 003 | 12,780.00 | 896D-0045779823 | Marshall, Dennehey, Warner, Coleman & Goggin - Phil | 11/02/2007 | ISSUED | | | | 3A-Panel/Non-Panel Attorney Fees |
| | Expense | PRBI | 003 | 3,825.00 | 896D-0045565254 | DAVID P. POPE, PH.D. | 11/01/2007 | ISSUED | | | | 5Z-Other Experts |
| | Expense | PRBI | 003 | 45,602.50 | 896D-0045451737 | Marshall, Dennehey, Warner, Coleman & Goggin - Phil | 10/30/2007 | ISSUED | | | | 3A-Panel/Non-Panel Attorney Fees |
| | Expense | PRBI | 003 | 405.00 | 896D-0045451737 | Marshall, Dennehey, Warner, Coleman & Goggin - Phil | 10/30/2007 | ISSUED | | | | 1A-Legal Disbursements - Panel/Non Panel Counsel |
| | Expense | PRBI | 003 | 8,431.50 | 896D-0045329258 | Marshall, Dennehey, Warner, Coleman & Goggin - Phil | 10/26/2007 | ISSUED | | | | 3A-Panel/Non-Panel Attorney Fees |
| | Expense | PRBI | 003 | 8,489.00 | 896D-0045329247 | Marshall, Dennehey, Warner, Coleman & Goggin - Phil | 10/26/2007 | ISSUED | | | | 3A-Panel/Non-Panel Attorney Fees |
| | Expense | PRBI | 003 | 8,472.50 | 896D-0045329265 | Marshall, Dennehey, Warner, Coleman & Goggin - Phil | 10/26/2007 | ISSUED | | | | 3A-Panel/Non-Panel Attorney Fees |
| | Expense | PRBI | 003 | 114.45 | 896D-0045329274 | Marshall, Dennehey, Warner, Coleman & Goggin - Phil | 10/26/2007 | ISSUED | | | | 1A-Legal Disbursements - Panel/Non Panel Counsel |
| | Expense | PRBI | 003 | 8,772.00 | 896D-0045329274 | Marshall, Dennehey, Warner, Coleman & Goggin - Phil | 10/26/2007 | ISSUED | | | | 3A-Panel/Non-Panel Attorney Fees |
| | Expense | PRBI | 003 | 1,286.16 | 896D-0045329265 | Marshall, Dennehey, Warner, Coleman & Goggin - Phil | 10/26/2007 | ISSUED | | | | 1A-Legal Disbursements - Panel/Non Panel Counsel |
| | Expense | PRBI | 003 | 9,084.12 | 896D-0045118449 | THE TASA GROUP, INC. | 10/25/2007 | ISSUED | | | | 5Z-Other Experts |
| | Expense | PRBI | 003 | 3,150.00 | 896D-0044567811 | DAVID P. POPE, PH.D. | 10/16/2007 | ISSUED | | | | 5Z-Other Experts |
| | Expense | PRBI | 003 | 11,610.00 | 896D-0044567568 | THE TASA GROUP, INC. | 10/16/2007 | ISSUED | | | | 5Z-Other Experts |
| | Expense | PRBI | 003 | 10,175.00 | 896D-0041936274 | TECHNICAL ADVISORY SERVICE FOR ATTORNEYS | 09/05/2007 | ISSUED | | | | 5Z-Other Experts |
| | Expense | PRBI | 003 | 97.52 | 896D-0041136372 | IKON OFFICE SOLUTIONS | 08/23/2007 | ISSUED | | | | 1A-Legal Disbursements - Panel/Non Panel Counsel |

A0015

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Expense | PRBI | | 003 | 114.45 | 896D-0039819134 | IKON OFFICE SOLUTIONS | 07/30/2007 | ISSUED | | | 1A-Legal Disbursements - Panel/Non Panel Counsel |
| Expense | PRBI | | 003 | 1,350.00 | 896D-0038696229 | DAVID P. POPE, PH.D. | 07/16/2007 | ISSUED | | | 5Z-Other Experts |
| Expense | PRBI | | 003 | 1,555.84 | 896D-0037928042 | IKON OFFICE SOLUTIONS | 07/03/2007 | ISSUED | | | 1A-Legal Disbursements - Panel/Non Panel Counsel |
| Expense | PRBI | | 003 | 700.80 | 896D-0036646461 | IKON OFFICE SOLUTIONS | 09/13/2007 | ISSUED | | | 1A-Legal Disbursements - Panel/Non Panel Counsel |
| Expense | PRBI | | 003 | 1.20 | 896D-0029510199 | Rawle & Henderson - Philadelphia | 02/22/2007 | ISSUED | | | 1A-Legal Disbursements - Panel/Non Panel Counsel |
| Expense | PRBI | | 003 | 120.00 | 896D-0029510199 | Rawle & Henderson - Philadelphia | 02/22/2007 | ISSUED | | | 3A-Panel/Non-Panel Attorney Fees |
| Expense | PRBI | | 003 | 828.91 | 896D-0028557747 | IKON OFFICE SOLUTIONS | 02/07/2007 | ISSUED | | | 1A-Legal Disbursements - Panel/Non Panel Counsel |
| Expense | PRBI | | 003 | 4,350.00 | 896D-0026793675 | Rawle & Henderson - Philadelphia | 01/11/2007 | ISSUED | | | 3A-Panel/Non-Panel Attorney Fees |
| Expense | PRBI | | 003 | 11.04 | 896D-0026793675 | Rawle & Henderson - Philadelphia | 01/11/2007 | ISSUED | | | 1A-Legal Disbursements - Panel/Non Panel Counsel |
| Expense | PRBI | | 003 | 124.02 | 896D-0021401208 | RAWLE & HENDERSON, LLP | 10/19/2006 | ISSUED | | | 1A-Legal Disbursements - Panel/Non Panel Counsel |
| Expense | PRBI | | 003 | 4,255.00 | 896D-0021401208 | RAWLE & HENDERSON, LLP | 10/19/2006 | ISSUED | | | 3A-Panel/Non-Panel Attorney Fees |
| Expense | PRBI | | 003 | 780.00 | 896D-0019858266 | RAWLE & HENDERSON, LLP | 09/26/2006 | ISSUED | | | 3A-Panel/Non-Panel Attorney Fees |
| Expense | PRBI | | 003 | 414.52 | 896D-0019858266 | RAWLE & HENDERSON, LLP | 09/26/2006 | ISSUED | | | 1A-Legal Disbursements - Panel/Non Panel Counsel |
| TOTAL | | | | 235,800.77 | | | | | | | |

This communication, together with any attachments hereto or links contained herein, is for the sole use of the intended recipient(s) and may contain information that is confidential or legally protected. If you are not the intended recipient, you are hereby notified that any review, disclosure, copying, dissemination, distribution or use of this communication is STRICTLY PROHIBITED. If you have received this communication in error, please notify the sender immediately by return e-mail message and delete the original and all copies of the communication, along with any attachments hereto or links herein, from your system.

A0016

EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NORTHEAST CONTROLS, INC. | : | CIVIL ACTION – LAW |
| and | : | |
| ST. PAUL MERCURY INSURANCE COMPANY | : | |
| | : | |
| v. | : | |
| | : | |
| FISHER CONTROLS INTERNATIONAL, LLC | : | NO. 1:06-CV-00412 (SLR) |

## AFFIDAVIT OF THOMAS P. WAGNER, ESQUIRE

Thomas P. Wagner, Esquire, being duly sworn according to law, deposes and states as follows:

1.    I am counsel for plaintiffs in the above-captioned action. My firm's records show two outstanding and unpaid invoices for legal services totaling $30,698.94. I am informed that an outside auditing vendor has recommended reduction of one of these invoices by $1,072.23. My firm's records also show unbilled time of $4,562.50 and unbilled disbursements of $1,236.35 through January 24, 2008. The total outstanding, therefore, is $36,497.79.

2.    These charges as well as those reflected in the Affidavit of Jeffrey Frock, are fair and reasonable charges for the services rendered.

Thomas P. Wagner, Esquire

Sworn to and subscribed before me this

29th day of January, 2008

Notary Public

My commission expires:

NOTARIAL SEAL
Anna L Janjanin, Notary Public
City of Philadelphia, Philadelphia County
My commission expires March 24, 2009

A0017

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

NORTHEAST CONTROLS, INC. :  CIVIL ACTION – LAW
  and          :
ST. PAUL MERCURY INSURANCE COMPANY :
             :
             :
    v.        :
             :
             :
FISHER CONTROLS INTERNATIONAL, LLC :  NO. 1:06-CV-00412 (SLR)

<u>**CERTIFICATE OF SERVICE**</u>

   Joseph Scott Shannon, Esquire, hereby certifies that on February 1, 2008, he caused a

true and correct copy of Plaintiffs' Supplemental Motion to Alter or Amend Judgment Pursuant

to Fed.R.Civ.P. 59(E) and for Award of Attorneys' Fees Pursuant to Fed.R.Civ.P. 54, and its

Opening Brief in Support of Plaintiffs' Supplemental Motion to Alter or Amend Judgment

Pursuant to Fed.R.Civ.P. 59(E) and for Award of Attorneys' Fees Pursuant to Fed.R.Civ.P. 54,

and Appendix A to be served upon the following by electronic filing and mail:

Paul A. Bradley, Esquire     Daniel Gunter, Esquire
Maron & Marvel, P.A.      Riddell Williams, P.S.
1201 N. Market Street - Suite 900   1001 Fourth Avenue Plaza - Suite 4500
Wilmington, DE  19899     Seattle, WA  98154-1065

        MARSHALL DENNEHEY WARNER
         COLEMAN & GOGGIN


        /s/ Joseph Scott Shannon
        JOSEPH SCOTT SHANNON, ESQUIRE
        Delaware Bar I.D. No. 3434
        1220 North Market Street, 5th Floor
        P.O. Box 8888
        Wilmington, DE 19899 – 8888
        tel.: 302.552.4329
        e-mail: jsshannon@mdwcg.com
        *Counsel for Plaintiffs*