IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NORTHEAST CONTROLS, INC.; and<br>ST. PAUL MERCURY INSURANCE<br>COMPANY,<br><br>                     Plaintiffs<br><br>    v.<br><br>FISHER CONTROLS INTERNATIONAL, LLC,<br><br>                     Defendant | No. 1:06-CV-00412 (SLR) |

**REPLY BRIEF OF PLAINTIFFS NORTHEAST CONTROLS, INC.,
AND ST. PAUL MERCURY INSURANCE COMPANY
IN SUPPORT OF MOTION FOR ENTRY OF MONEY JUDGMENT
AND SUPPLEMENTAL MOTION TO ALTER OR AMEND JUDGMENT**

THOMAS P. WAGNER, ESQUIRE
MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN
1845 Walnut Street
Philadelphia, PA 19103
tel: 215-575-4562
e-mail: tpwagner@mdwcg.com
*Counsel for Plaintiffs*

JOSEPH SCOTT SHANNON, ESQUIRE
Delaware Bar I.D. No. 3434
MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN
1220 North Market Street, 5th Floor
P.O. Box 8888
Wilmington, DE 19899-8888
tel.: 302.552.4329
e-mail: jsshannon@mdwcg.com
*Counsel for Plaintiffs*

Dated: February 15, 2008

01/4311660.v1

# **TABLE OF CONTENTS**

I.   ARGUMENT ............................................................................................................... 1

     FISHER'S ARGUMENTS ......................................................................................... 5

     A.   Right of Both St. Paul and Northeast to Recover Fees ...................................... 5

     B.   The Alleged "Fault" of Northeast ..................................................................... 6

     C.   Reasonableness of Plaintiffs' Expenses ............................................................ 7

II.   Conclusion ................................................................................................................. 8

# TABLE OF AUTHORITIES

**Cases**

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1983)............................................4

*Delle Donne & Associates, LLP v. Millar Elevator SVC Company*, 840 A.2d 1244, 1256 (Del. 2004). ........................................................................................................................................2

*Pike Creek Chiropractic Center v. Robinson*, 637 A.2d 418 (Del. 1994). .................................6, 7

**Rules**

Fed.R.Civ.P. 30(b)(6)....................................................................................................................4

I.  **ARGUMENT**

In our Post-Judgment Motions, plaintiffs have asked the Court to do three things.  First, plaintiffs have asked the Court to enter a money judgment for a sum certain, reflecting the damages set forth in plaintiffs' Motion for Summary Judgment in the amount of $1,207,833.50.  Second, plaintiffs have asked the Court to add an award of prejudgment interest in the amount of $172,116.25, plus any additional prejudgment interest that continues to accumulate at the rate of 9% per annum.  Third, plaintiffs are requesting an award to reimburse plaintiffs for the $285,408.56 that they have spent in bringing this action to enforce the right of indemnity.[1]

Defendant Fisher Controls, LLC, does not oppose the entry of a money judgment for the $1,207,833.50 incurred in the underlying litigation or the additional $172,116.25 in prejudgment interest, plus any additional amount that continues to accumulate.

Defendant has opposed only that part of plaintiffs' post-judgment motions which seeks an award of counsel fees and costs incurred in this enforcement action.  Plaintiffs submit that defendant's position should be rejected.

First, the request for the award of counsel fees and costs incurred in this action was set forth clearly in plaintiffs' Motion for Summary Judgment.  Defendant did not object in any way.  The court granted plaintiffs' Motion for Summary Judgment, and defendant should not be heard to contest plaintiffs' right to that award now.  The only remaining issue should be the amount of counsel fees and costs incurred.

Furthermore, there is no merit to defendant's position.  On the contrary, the plaintiffs are entitled to full indemnification in order to be "made whole" in this matter.  Plaintiffs have been required to bring this expensive lawsuit in order to enforce a right to which they were entitled by contract.  If the plaintiffs are not reimbursed the full amount of the costs they incurred in

---

[1] Plaintiffs previously requested an award to reimburse plaintiffs for $272,298.56 spent in bringing this action to enforce the right of indemnity.  As set forth in the Amended Affidavit of Thomas P. Wagner, the total fees and expenses incurred in this action are now $285,408.56.

1

bringing this case, they cannot be deemed to have been "made whole." *Delle Donne & Associates, LLP v. Millar Elevator SVC Company*, 840 A.2d 1244, 1256 (Del. 2004).

Keeping in mind the reasoning of the *Delle Donne* decision, it would be inequitable to deny plaintiffs the recovery of their counsel fees and costs in this litigation. This entire lawsuit was made necessary only because defendant Fisher refused to honor the indemnity obligation contained in a contract which Fisher itself wrote. Fisher made this refusal after promising the plaintiffs in writing that the indemnity obligation would be honored unless the evidence showed that plaintiff Northeast had caused the personal injury and property damages that resulted from the explosion and fire at Delaware City.[2] Fisher persisted in this refusal even after its own expert witness issued a report concluding that Northeast had done nothing to cause those damages.[3]

It would be all the more inequitable to deny plaintiffs recovery of these expenses since the cost of this litigation was driven largely by Fisher itself. The Complaint in this case was filed on June 29, 2006. Before any discovery was commenced by either party, the Court conducted a Rule 16 conference with counsel by telephone. During that conference, plaintiffs' counsel stated that it was plaintiffs' intention to move for Summary Judgment. We advised the Court then that an extensive discovery record already existed from the Underlying Litigation; that the parties had agreed by Stipulation to permit the use of any discovery taken in the Underlying Litigation; and that in the plaintiffs' view, this matter could be resolved by a dispositive motion at an early stage.

In response, defendant Fisher's counsel objected vigorously and told the Court that substantial discovery was needed. In light of the defendant's position, the Court informed counsel that dispositive motions could not be entertained until discovery was completed, and the Court permitted the parties to conduct discovery for approximately one year.

---

[2] See letter of Matthew W. Geekie, attached to Plaintiffs' Motion to Summary Judgment in Appendix A, Exhibit No. 3, p. A0016-17.
[3] See the report of Dr. Robert A. Mostello, dated January 3, 2005, attached to Plaintiffs' Motion to Summary Judgment in Appendix A, Exhibit No. 22, p. A0380-458.

Defendant Fisher then embarked on a long campaign of needless discovery. It began by serving the plaintiffs with numerous interrogatories and document requests seeking a host of written materials. The vast majority of this written material already existed in the discovery record from the Underlying Litigation. The file of plaintiffs' counsel from that litigation was stored in 51 boxes. To satisfy the extensive demands of Fisher's counsel, plaintiffs gave them access to the entire 51 boxes *without limit*. Fisher's counsel was permitted to visit the office of plaintiffs' counsel and peruse the entire file of counsel in the Underlying Litigation for as long as he wanted.

After taking all this written discovery, defendant Fisher then took nine depositions. Two of the witnesses had already been deposed for several days in the Underlying Litigation. Not surprisingly, no new material information was obtained in Fisher's re-depositions here. The others included four expert witnesses identified on liability and damages by the plaintiffs, as well as two additional employees of plaintiff Northeast Controls and one of the investigators into the cause of the explosion and fire. Three of these depositions were taken in Albany, New York.[4]

Meanwhile, the plaintiffs did what they could to limit the cost and complexity of this litigation. Early in discovery, we served Fisher with a set of Requests for Admission, hoping to eliminate as many factual issues as possible. For instance, we asked Fisher to admit that the costs and expenses incurred by the plaintiffs in the Underlying Litigation were reasonable. Fisher flatly refused. Accordingly, we had to engage in the exercise of producing every invoice for counsel fees, expert witnesses, court reporters, and other expenses incurred throughout the long and complex litigation that we were forced to defend simultaneously with Fisher and its counsel. Having obtained all this information, Fisher then proceeded to ignore it completely and made no challenge to any of the plaintiffs' expenses from the underlying litigation.

---

[4] We included no travel expense for the Albany depositions.

3

After receiving Fisher's refusal to admit the reasonableness of our expenses, plaintiffs also asked Fisher to produce information about the expenses that it had incurred itself in the same litigation. Our intention was to offer proof of Fisher's expenses in comparison to our own in order to establish that the costs we incurred were reasonable. Plaintiffs then learned that Fisher's own counsel fees were about 2 ½ times those incurred by the plaintiffs in defending precisely the same litigation.[5]

Plaintiffs tried as well to be efficient with depositions. While Fisher took nine depositions, the plaintiffs took only two. One of these was the deposition of defendant Fisher itself under Fed.R.Civ.P. 30(b)(6). This was intended as an efficient way of creating a factual record, and the deposition was relied upon by plaintiffs in their Summary Judgment Motion.[6] Fisher chose to designate two people to testify on the company's behalf, and the defendant insisted on producing them at its headquarters in St. Louis, Missouri. To reduce the cost, plaintiffs chose to conduct the deposition by telephone.

The only other witness whom the plaintiffs deposed was Dr. Robert A. Mostello, defendant's liability expert. This deposition was taken in Wilmington. It revealed important bases for challenging Dr. Mostello's testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1983). That Motion would have been filed by the appropriate deadline of January 22, 2008.

Thus, much of the cost to prosecute this enforcement action was driven by defendant Fisher itself. Including counsel fees, expert witnesses, and other litigation expenses, the plaintiffs incurred a total of $285,408.56 in costs to prosecute this case. If these costs are not reimbursed, the plaintiffs will not have been "made whole."

---

[5] Fisher disclosed in discovery that its counsel fees in the Underlying Litigation totaled $1,503,412.88. As noted elsewhere, the counsel fees incurred by the plaintiffs to defend the same litigation were $606,833.50.

[6] Plaintiffs relied upon the Rule 30(b)(6) deposition to prove some important facts, including *inter alia* that Fisher wrote the Representative Agreement; that the 629 valve was a "product" within the meaning of the Representative Agreement; and that Fisher knew the valve would be used in oxygen service.

**FISHER'S ARGUMENTS**

Fisher divides the argument section of its brief into three parts. Plaintiffs respectfully submit that none of these arguments has any merit, and they should be rejected.

    A.    **Right of Both St. Paul and Northeast to Recover Fees**

In section A, Fisher contends that it should not have to reimburse the attorneys' fees incurred in this action because they were paid by St. Paul as insurer for Northeast. Fisher argues that it should be permitted to avoid reimbursement of these fees because it does not have a contract with St. Paul. Fisher cites no authority to support its position. The argument is completely without merit.

Whether the fees were paid by Northeast itself or by someone else on Northeast's behalf is immaterial. Fisher should not be permitted to take advantage of the separate contractual arrangement between Northeast and its insurance company to avoid its own obligation. Northeast chose to protect itself with liability insurance. For that protection, Northeast paid a premium. St. Paul was obligated to pay for Northeast's defense in the underlying litigation and then to advance the costs of this case in an effort to get those expenses back only because Fisher failed to honor its indemnity obligation. The fact that Northeast was prudent enough to protect itself with insurance coverage should not result in an unfair advantage to Fisher. On the contrary, Fisher should be required to satisfy its obligations and reimburse these legitimate expenses, regardless of whether they were paid by Northeast itself or anyone else on Northeast's behalf.

**B.**     **The Alleged "Fault" of Northeast**

In Section B of its brief, Fisher argues that St. Paul and Northeast should not be entitled to recover their counsel fees and expenses because Northeast was not "free from wrongdoing." Here, Fisher has returned to its familiar argument that Northeast was negligent.

Once again, Fisher has missed, or avoided, the point. No negligence of Northeast has ever been established in any Court or by any fact finder. Even if it is assumed that Northeast was negligent, however, defendant Fisher's own evidence proved that this negligence (or "wrongdoing") had nothing to do with causing the damages at issue in the Underlying Litigation. Thus, there was no "wrongdoing" by Northeast as Fisher's indemnitee. Northeast did not cause the Losses that gave rise to this entire litigation.

The very cases relied upon by defendant Fisher undermine its position. As quoted by Fisher itself, the Supreme Court of Delaware said that "where the indemnitee is free from actual wrongdoing, the indemnitee is entitled to be made whole for all losses suffered due to the conduct of the indemnitor, *even those attributable to unfounded allegations of the indemnitee's independent negligence.*" *Pike Creek Chiropractic Center v. Robinson*, 637 A.2d 418 (Del. 1994) (emphasis added).This language could have been written about our case. There were many *allegations* that negligence on the part of Northeast caused the explosion and its resulting damages, but these allegations proved to be unfounded. Fisher's own evidence, along with that of Northeast, proved that the damages resulted from the acts of others.

Fisher is correct when it says that the *Delle Donne* Court relied upon the case of *Pike Creek Chiropractic Center v. Robinson*, 637 A.2d 418 (Del. 1994). The *Pike Creek* Court strongly reaffirmed the principal that in order to be held truly harmless, an indemnitee must be reimbursed not only for its expenses in the underlying litigation, but also for those incurred in the

6

action brought to enforce the right of indemnity.  This is precisely what plaintiffs are seeking now.

The *Pike Creek* Court stated as follows:

> [Indemnitee] will not be held harmless from [indemnitor's] acts or omissions unless it receives *all* legal expenses and attorneys' fees it has incurred, including those incurred in enforcing the Indemnification Clause.  [Indemnitor] could have avoided this result by accepting [indemnitee's] tender of the defense or paying the amount due without forcing [indemnitee] to bring suit.  Accordingly, we read the Indemnification Clause as requiring [indemnitor] to indemnify [indemnitee] for its attorneys' fees and expenses incurred in enforcing the provision.

637 A.2d at 423 (emphasis in original).

### C.  Reasonableness of Plaintiffs' Expenses

In Section C of its argument, defendant Fisher challenges the reasonableness of plaintiffs' fees and expenses.

Plaintiffs have already submitted a complete statement of the expenses incurred, along with two Affidavits establishing those amounts and their reasonableness.  In light of defendant's challenge, however, plaintiffs hereby submit the following as part of the appendix:

1. Curriculum Vitae of Thomas P. Wagner, lead counsel for plaintiffs.

2. Detailed invoices from Rawle & Henderson for all counsel fees incurred in this action.

3. Detailed invoices from Marshall, Dennehey, Warner, Coleman & Goggin for all counsel fees incurred in this action.

4. Amended Affidavit of Thomas P. Wagner, Esquire

For the reasons set forth above, plaintiffs submit that the objections of Defendant Fisher should be overruled and plaintiffs should be awarded their full counsel fees and other expenses incurred in this litigation.

7

## II. CONCLUSION

Plaintiffs request that the Court enter judgment in favor of the plaintiffs in the amount of $1,665,358.20, plus any additional prejudgment interest which continues to accrue at the rate of 9% per annum ($9,058.78 per month).

        MARSHALL, DENNEHEY, WARNER,
           COLEMAN & GOGGIN

By: /s/ *Thomas P. Wagner*
    Thomas P. Wagner, Esquire
    1845 Walnut Street
    Philadelphia, PA  19103
    tel: 215-575-4562
    email:  tpwagner@mdwcg.com
    *Counsel for Plaintiffs*

MARSHALL DENNEHEY WARNER
    COLEMAN & GOGGIN

By: */s/Joseph Scott Shannon*
    Joseph Scott Shannon, Esquire (I.D. 3434)
    1220 North Market Street, 5th Floor
    P.O. Box 8888
    Wilmington, DE 19899 – 8888
    tel.: 302.552.4329
    e-mail: jsshannon@mdwcg.com
    *Counsel for Plaintiffs*

01/4311660.v1

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| NORTHEAST CONTROLS, INC. | : | CIVIL ACTION – LAW |
| and | : | |
| ST. PAUL MERCURY INSURANCE COMPANY | : | |
| | : | |
| v. | : | |
| | : | |
| FISHER CONTROLS INTERNATIONAL, LLC | : | NO. 1:06-CV-00412 (SLR) |

**<u>CERTIFICATE OF SERVICE</u>**

      Joseph Scott Shannon, Esquire, hereby certifies that on February 15, 2008, he caused a true and correct copy of Plaintiffs' Reply Brief in Support of Motion for Entry of Money Judgment and Supplemental Motion to Alter or Amend Judgment and Appendix C to be served upon the following by electronic filing and mail:

| | |
|---|---|
| Paul A. Bradley, Esquire | Daniel Gunter, Esquire |
| Maron & Marvel, P.A. | Riddell Williams, P.S. |
| 1201 N. Market Street - Suite 900 | 1001 Fourth Avenue Plaza - Suite 4500 |
| Wilmington, DE 19899 | Seattle, WA 98154-1065 |

      MARSHALL DENNEHEY WARNER
         COLEMAN & GOGGIN

<u>/s/ Joseph Scott Shannon</u>
JOSEPH SCOTT SHANNON, ESQUIRE
Delaware Bar I.D. No. 3434
1220 North Market Street, 5th Floor
P.O. Box 8888
Wilmington, DE 19899 – 8888
tel.: 302.552.4329
e-mail: jsshannon@mdwcg.com
*Counsel for Plaintiffs*